UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

# RECEIVED

MAR 2 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Amer Iqbal
17648 Tedler Circle
Roundhill, Virginia 20141
Phone 571-277-6216

VS                                Case No: 07- 408 RMU

City of the District of Columbia
Superior Court of District of Columbia
500 Indiana Ave, N.W.
Washington D.C. 20001
Case # 2007 CA 113B

Tricia Anne Riley
3800 Reservoir Road, N.W.
Cober Kogan Hall #101
Washington D.C. 20007

## RESPONSE TO MR. ROEGGE DISMISSAL MOTION and RECORDS FOR THE USDC COURT

Attached is the response to Mr. Roegge's dismissal motion filed on behalf of Tricia Anne Riley for USDC Case:07-408 RMU. Petitioner has also attached further evidence and records for this court to justify his complaint and requests this court to "Not Grant the Dismissal", so the justice can be served on this matter.

Sincerely,

Amer Iqbal 3/28/07

17648 Tedler Cir
Roundhill, Virginia 20141
Phone 571-277-6216

(A copy of this letter is also mailed Mr. Bradford J. Roegge 101 South Washington St, Rockville MD 20850)

# ADDITIONAL POINTS TO THIS CASE WITH RECORDS

## &

# RESPONSE TO MR. ROEGGE'S DISMISSAL MOTION

See supplement information regarding this case and more records for the review of the court and the jury:

## 1. Jurisdiction of this Court & Judge Tignor's Letter

The main reason to request to transfer and move my case from superior court to the USDC is because of the Judge Tignor's Feb 16, 2007 letter, denying the fact that he never spoke those vows in this TRO hearing on Jan 18, 2007.

The fact of the matter is that he did say those vows and did pronounce me and Tricia Riley as husband and wife, which constitutes the marriage bond between me and her by the law of this country, per my understanding. Still I was careful in asking him in my Feb 06, 2007 letter, if he could do the both (TRO+marriage) in the same hearing. My request for the transcript was for the same reason to put that in the record, and subsequent application for the marriage certificate was also for the same reason.

**The person at his position denying the fact that he never spoke those words does constitutes "Federal Jurisdiction". I am not an attorney but with my past conversations with the superior court personal, I have no doubt that I will not be able to receive justice in the superior court because they are constantly trying to cover up their mistakes. Therefore, my request to transfer and move this case in the USDC is completely justified and I request this court to not grant the dismissal filed by Mr. Roegge, so the truth can be heard!**

(Exhibit A)

## 2. Damages:

To clarify the matter of seeking the damages, I am not suing Tricia Riley in this case and not pursuing any damages from her.

The request to this court for damages is solely from superior court based on their incorrect records, their harassment behavior, Judge Tignor's Feb 16, 07 letter denying the fact that these vows were not part of this hearing and superior courts continuously and intentionally denying my right for a rehearing on transcripts, and TRO after my repeated requests in person or by phone.

The amount that I am seeking from City of District of Columbia (Superior Court) is **more than $ 75,000 and not less than $ 10 Millions** or whatever this court and jury feels reasonable and fair for the hardship and the stress, I have suffered. Therefore, this court has jurisdiction to hear this matter.

To be honest, my reason to move this case in this court is not money. I really want this court and jury to know the truth!

3. **Different Versions of Transcripts:**

The attached are the three different versions of the transcripts, I received on February 06, February 08, 2007and Court Tag Report printed on February 12, 2007 with my hand written notes on the same day from the computer screen showing different case as mentioned in my previous motions. The request for the **Emergency Hearing** was well within time and justified to address those inconsistencies.

As it is understandable to any common person that a consent order is of less legal significance than a restraining order, especially if no inappropriate behavior is involved. I had no reason to file for a transcript if those vows were not said in this hearing. I even showed this portion to the Chief Judge on our first meeting on February 12, 2007. After hearing the recording and viewing the recording screen, I got this tag report from the recording division clerk.

I am unable to understand why the earlier transcribers could not pick this inconsistency in the recording.

Secondly, the only reason to file for a rehearing was to clarify the misunderstanding caused by Tricia's administrators. If these vows were not said then there was no reason for me to even apply for a transcript.

(Exhibit B)

4. **Details of Meeting and Phone Conversation with the Superior Court Chief Judge**

(Exhibit C)

5. **Tricia Riley's TRO Petition**

Enclosed is Tricia Riley's petition in the superior court for a restraining order. As I have stated in my previous motion that she appeared as a "Pro Se" and I considered the people joining her as her friends.

Mr. Roegge's address appeared as Washington D.C. in the transcripts and then I received motions with an address of Rockville Maryland, something that I am still not able to understand.

(Exhibit D)

## 6. Marriage Certificate Application

The reason to apply for the marriage certificate was after those inconsistencies were found in the transcript of the TRO hearing. My application to the superior court to issue me a marriage license is not a justifiable reason for contempt or constitutes any grounds for the violation of the consent order, since those vows were said in this hearing and we both were pronounced as husband and wife.

I had mailed the application to Chief Judge court clerk Helen Stinney, who told me that she will forward it to the Marriage Bureau. That's the last conversation we had, I never spoke to anyone in the marriage bureau about this application or received any calls either. So the contact by the superior court clerk to Tricia Riley as mentioned in the contempt petition by Mr. Roegge is solely by the courts.

In his dismissal motion, Mr. Roegge is stating that "she received a call from marriage bureau about a marriage license for which she had apparently applied." is really strange, because the post mail letter bears my name and address, and was mailed with the marriage bureau envelop. At this point, I am not aware of the discussion between the courts and Tricia.

**The returned application from marriage bureau came back with detailed requirements to process the application. If superior court clerk had talked to her and there was no marriage record then why the superior court did not clarify it, something that will sound strange to anyone especially after the marriage bureau had spoken to Tricia.**

**On the other side, I am only stating the facts and don't know the rules and regulations of District of Columbia. It's the result of these vows that I filed for the transcript or the marriage license, because Judge Tignor did pronounce us as husband and wife after these vows in this hearing.**

(Exhibit E)

## 7. Serving the Court Proceedings

The process used for serving is similar to as Mr. Roegge has used for serving me. I am not an lawyer and I have been told by the courts that using mail (first class, certified.....), process servers, or a friend or a relative is a proper method of serving the papers.

I am a bit surprised to know that I can serve Tricia in person when I am in consent order with her. I have heard though that a husband can do even when he is in restraining order, but I have not confirmed it yet. Mr. Roegge is an attorney and definitely knows the rules and regulations more than I do. I was under the impression that since I am in consent order with her, so serving the papers by myself will violate the consent order.

**I don't see a reason why this should be the basis to dismiss this case from this court, when I have followed the proper procedure told by the courts. I have received the returned receipts and even copies of the my posted envelops from other parties.**

Mr. Roegge is being mailed the correspondences since I came to know about his address.

## 8. February 19, 2007 Process Serving and Service of Appearance

The service of appearance on Feb 19, 2007 was an honest mistake since I was not aware of the upcoming holiday. I had asked the superior court CJ court clerk Helen Stinelly that if it was ok to ask Tricia Riley to appear on Feb 19, 2007 and also discussed the method of serving i.e. "Process Server".

**That's my another reason to pray this court to dismiss the contempt case, since I had informed the courts and had discussed with them about serving her, that I will be asking her to appear in Chief Judge's open court. I have not contacted Tricia Riley directly or indirectly other than mailing or serving the court records. So the basis for contempt case is not justified. By that time I was not even aware of Mr. Roegge, since his name appeared with only Washington D.C. in the transcripts, and there is no mentioning of his name in the TRO petition by her.**

(Exhibit F)

## 9. Letters and fax transmittals to the Superior Court.

(Exhibit G)

To correct the records, Chief Judge Superior Court may have said "hearing" instead of meeting for our March 05, 2007 open court meeting, as stated in my February 25, 07 letter. Since there were no summons and its an open court where the CJ meets with people in his chamber, that's why I have called it meeting in my letter.

## 10. The Records of the Denied Motions by Superior Court.

These two motions were never filed in JM170 room and were rejected and mailed after my requests to set up a hearing date for 01/31/07 filed motion.

The motion filed on 01/31/07 was filed in person in JM 170 room with fee, completed certificate of service forms; and envelops with addresses of the parties. I had requested many times in person and by phone for a hearing date on this motion, until I received a letter denying this motion on the basis of the not providing the proof of service to her.

I have spoken many times to the clerk's of the superior court and no one asked me if this was the requirement to setup a hearing date. Every time you call them, you hear "you need to stay in your word", you need to cum up a little bit, you need to chad with us. It's just been unbelievable trying to work with superior court and that was my reason to finally think to file for rehearing in Virginia.

Also, couples of my conversations with the superior court clerk's they have specifically asked me to tell them about Aurie, the administrator. I am like, I like to tell them but they need to set up a hearing date first rather than asking me on the phone.

(Exhibit H)

## 11. Motion of TRO Rehearing in Circuit Court Alexandria, Virginia

Copy of my rehearing motion in Alexandria, Virginia Circuit Court. The case has been withdrawn after I filed the case of removal from the Superior Court to USDC. The only purpose to file the case was to have a rehearing on the TRO, since superior court was intentionally rejecting all my requests for a hearings.

(Exhibit I)

## 12. Details of my Three Meetings with Tricia Riley

(Exhibit J)

## 13. Details of My Conversations with Tricia's Administrators

(Exhibit K)

## 14. Response to 09/26/2007 letter of Susan Morgan and Tricia Riley

(Exhibit L)

## 15. Letters from Georgetown Hospital and my Response

(Exhibit M)

## 16. Receipts of the Served Summons to the Parties

Superior court has a hard time in acknowledging that they received any of my summons of USDC case, took me more than half day and they kept saying that they don't see it in their records. Finally I had to fax the receipts with docket information and then response came as now we have it. The attitude of the superior court employees is phenomenal in acknowledging or providing any information.

**I am still trying to understand why it took so long for the certified mail to be delivered to the Superior Court as compared to Georgetown Hospital, when it usually takes 1-3 days for the first class mail.**

(Exhibit N)

## 17. Phone Records

Attached are the phone records of my calls to the superior court.

(Exhibit O)

## 18. Contempt Case Hearing

(Exhibit P)

## 19. Greeting card and Email

(Exhibit Q)

# EXHIBIT A

# Superior Court of the District of Columbia
## Washington, D.C. 20001

Chambers of
**Robert S. Tignor**
Senior Judge

February 16, 2007

Mr. Amer Iqbal
17648 Tedler Cir.
Roundhill VA 20141

Re: Riley v. Iqbal, 2007 CA 113

Dear Mr. Iqbal,

This is written in response to your letters of February 6, 2007 and February 8, 2007.

In your letter of February 6, 2007, you state, with reference to the hearing of January 18, 2007,

"In this court proceeding, besides the temporary restraining order, I was married with this woman 'Tricia Anne Riley' by Your Honor. I still remember yours and mine words during the proceedings, when I first said 'I want her well being and goodness' and your Honor continued with 'in happiness, sickness and health, and till death to not apart' and I said I do your Honor! And then Your Honor looked at her and asked her, and then her attorney as a witness and then looked at me and said "by District of Columbia Law you both are husband and wife, and you may kiss or hug your bride'."

Mr. Iqbal, no such words were spoken. The transcript appended to your letters accurately reflects what was said during the hearing, hence your request for an "emergency hearing on tampering of transcript" is denied.

I take this opportunity to remind you that if you violate the directives of the court's order of January 18, 2007, you would therefore be subject to imprisonment for contempt of court.

Sincerely,

Robert S. Tignor, Senior Judge

Copy:

Bradford J. Roegge, Esquire

Superior Court of the District of Columbia
Chambers of Senior Judge Robert S. Tignor
Washington, D.C. 20001

20041462174 R009

Amer Iqbal
17648 Tedler Circle
Roundhill, VA 20141

UNITED STATES POSTAGE
02 1A
000433804   FEB 20
MAILED FROM ZIP CODE
$ 00.39°

# EXHIBIT B

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

```
- - - - - - - - - - - - - - - x
                              :
RILEY,                        : Docket Number: 2007 CA 113
          Plaintiff.          :
                              :
          vs.                 :
                              :
IQBAL,                        :
                              :
          Defendant.          :
                              : Thursday, January 18, 2007
- - - - - - - - - - - - - - x Washington, D.C.
```

    The above-entitled action came on for a hearing
before the Honorable ROBERT S. TIGNOR, Senior Judge, in
Courtroom Number JIC, commencing at 2:57 p.m.


          APPEARANCES:

          On Behalf of the Plaintiff:

          BRADFORD J. ROEGGE, Esquire
          Washington, D.C.

          On Behalf of the Defendant:

          PRO SE


                                        07-00177

**Deposition Services, Inc.**
6245 Executive Boulevard
Rockville, MD 20852
Tel: (301) 881-3344  Fax: (301) 881-3338
info@DepositionServices.com  www.DepositionServices.com

lt

```
 1                    P R O C E E D I N G S
 2              DEPUTY CLERK:  Your Honor, recalling Civil
 3    Action 113-07 in the matter of Riley versus Iqbal.  Please
 4    state your names for the record.  Spell your first and
 5    last name.
 6              THE COURT:  All right.  Ms. Riley, beginning
 7    with you, ma'am, state your full name.
 8              MS. RILEY:  Tricia Anne Riley.  Last name R-I-L-
 9    E-Y.
10              THE COURT:  Thank you.  Yes.
11              MR. ROEGGE:  Brad Roegge, Your Honor.  I
12    represent Ms. Riley.
13              THE COURT:  And spell your last name.
14              MR. ROEGGE:  R-O-E-G-G-E.
15              THE COURT:  Thank you.  Sir, state your name
16    please.
17              MR. IQBAL:  Amer Iqbal.
18              THE COURT:  Thank you.
19              MR. IQBAL:  A-M-E-R and last name is I-Q-B-A-L.
20              THE COURT:  All right.
21              DEPUTY CLERK:  Please raise your right hand.
22         Thereupon,
23                      TRICIA ANNE RILEY
24    having been called as a witness for and on behalf of the
25    plaintiff, and having been first duly sworn by the Deputy
```

lt

1  Clerk, was examined and testified as follows:

2  Thereupon,

3  **AMER IQBAL**

4  having been called as a witness for and on behalf of the

5  defendant, and having been first duly sworn by the Deputy

6  Clerk, was examined and testified as follows:

7  DEPUTY CLERK:  Thank you.

8  THE COURT:  Now, Mr. Iqbal, as I understand this

9  matter, Ms. Riley is asking for a Court Order which I·

10  suppose would direct that you keep your distance from Ms.

11  Riley, that you not communicate with her in any way either

12  directly or indirectly, and that you essentially have no

13  contact or communication with her, and that you not be in

14  her presence at any time.  Is that what your client is

15  asking?

16  MR. ROEGGE:  Yes, Your Honor, as well as

17  contacting family members or anyone that Ms. Riley knows.

18  THE COURT:  I see.  Now --

19  MR. IQBAL:  May I, may I say something, sir?

20  THE COURT:  Well, let me, let me finish

21  explaining to you how this type of hearing proceeds.

22  MR. IQBAL:  Okay.

23  THE COURT:  She's asking for what's called a

24  Temporary Restraining Order.  Typically, these hearings

25  are resolved in one of two ways.  We can have a hearing at

3

lt

1    which both parties testify.  Ms. Riley would testify and

2    you would have an opportunity to testify under oath if you

3    so desire.  At the end of the hearing, I would determine

4    whether the prerequisites for a Temporary Restraining

5    Order have been established.  And, essentially, what I

6    would have to determine is this: Is there reason to

7    believe, am I satisfied that, without a Temporary

8    Restraining Order, some type of irreparable harm would

9    occur?  And other considerations would be whether I

10   thought it was likely Ms. Riley would prevail ultimately

11   in her request for preliminary injunction whether the

12   public interest was affected or not.  But generally, I'd

13   have to determine, the most important thing would be

14   whether I thought that some type of irreparable harm might

15   occur without an order.  If I believe that that was the

16   case, then I'd issue a Temporary Restraining Order.  That

17   order would restrain you from doing certain things from

18   the things I mentioned before and it would be in effect

19   for 14 days or until the next court hearing in this case,

20   until you'd come back to court.  Now, typically, you'd

21   then come back to court in about two weeks for a further

22   hearing on the issue of a preliminary injunction.  So

23   that's one way in which we could proceed -- have a

24   hearing, Ms. Riley would testify, you would testify, I

25   would at the end either find that there was reason to

lt

1   believe that some harm might occur and grant the request
2   for an order or if I was not satisfied, if I didn't think
3   there was any basis for an order, I'd simply say request
4   for a Temporary Restraining Order is denied and then it
5   would be continued for further hearing on the request for
6   preliminary injunction.  That's one way of proceeding.  On
7   the other hand, often when someone is simply asking for an
8   order saying that the other person not communicate with
9   them, don't come near them, the other person says, well,
10  if that's the way you feel, that's fine with me.  I don't
11  have any desire or intention to force my presence upon
12  you.  And so in those instances, the parties often agree
13  to the entry of an order and it would be a consent order.
14  The order would say that this doesn't include any findings
15  one way or the other as to the allegations, but it would
16  direct that the defendant is not to communicate with or go
17  near the plaintiff or her family or communicate with her
18  family.  Do you understand what I've said thus far, sir?
19          MR. IQBAL:  Yes, as far as the consent, Your
20  Honor.  Do the parties have to come to an agreement, they
21  can talk to each other and come to an agreement or will it
22  be by you, sir?
23          THE COURT:  Well, the agreement would be reached
24  right here, now.
25          MR. IQBAL:  Right.

1t

1    THE COURT:  And, and what I would do is simply

2    grant a proposed order --

3    MR. IQBAL:  Mm-hmm.

4    THE COURT:  Review it with both of you and see

5    if you both agree to it.  If you agree to it, you'd sign

6    it and then I would sign it, you'd each get a copy of it,

7    and then you'd be bound by it.  Now any order that's

8    issued, whether it's by consent or whether it's after a

9    hearing, if I issue an order, the parties are bound by it.

10   So if the order directed that you stay away from the

11   plaintiff or that you not communicate with her, if you

12   violated that order, that would be cause to have you

13   imprisoned for up to 180 days for contempt of court for

14   violating the order.  Does that answer your question?  Do

15   you have any questions about it?

16   MR. IQBAL:  Yes.  I have a couple of questions

17   to ask and then I think there's a couple of things.  You

18   know, first of all, I think everybody's listening.  So I

19   don't intend you any harm or any, any problems, you know,

20   to hurt her, her family in any case or form.  As far as

21   the, I, I, that's my belief, you know?  I don't know how

22   she --

23   THE COURT:  Well, let me ask you this.

24   MR. IQBAL:  -- will proceed.  You know, right.

25   THE COURT:  Obviously, at this point, it's clear

1t

1  that regardless of how innocent your intentions have been

2  and are now, at this point, I think it's clear that she

3  just doesn't want you to communicate with her or her

4  family and, and she just doesn't want to have any contact

5  with you whatsoever.  Now are you agreeable to consenting

6  to that or do you --

7          MR. IQBAL:  If that's what she wants, I think,

8  you know, that my word is good enough.  I won't contact

9  her.

10          THE COURT:  Well, is that what your client

11  wants?  No contact?

12          MR. ROEGGE:  Well, no contact, but, obviously,

13  we'd want that in the terms of a consent form, yes.

14          THE COURT:  I understand she wants an order.

15          MR. ROEGGE:  Yes.

16          THE COURT:  That's why we're here.

17          MR. ROEGGE:  No, no contact with her, no contact

18  with her family, no calls to her work, her co-workers,

19  continued attempts to try to communicate with her.

20          THE COURT:  That's what you want, ma'am?

21          MS. RILEY:  Yes.

22          THE COURT:  There's no doubt in your mind that

23  that, that is what you want?

24          MS. RILEY:  That's correct.

25          THE COURT:  All right.  So that is what Ms.

lt

1    Riley wants.  Do you have any objection to that?

2              MR. IQBAL:  Can you (indiscernible) on the

3    consent order how it will be shaped or implicated and the

4    timeframe?  One more thing which I'd like to ask actually.

5              THE COURT:  The timeframe is if you, in a

6    consent order would be in effect for one year.

7              MR. IQBAL:  Or upon whenever she wants to remove

8    it.

9              THE COURT:  No, once it's an order --

10             MR. IQBAL:  I believe --

11             THE COURT:  -- once it's signed by the court,

12   the only way you can remove it is to have Ms. Riley come

13   back to court and have the order rescinded.  In other

14   words, if a consent order is entered between the parties -

15             MR. IQBAL:  Right.

16             THE COURT:  -- and then a week from now the

17   parties decide they want to be friends or they want to

18   have contact, they can't do that unless and until they

19   come back to the court --

20             MR. IQBAL:  Mm-hmm.

21             THE COURT:  -- to get the order terminated or

22   vacated or rescinded.

23             MR. IQBAL:  Well --

24             THE COURT:  Once it's signed by a judge --

25             MR. IQBAL:  Mm-hmm.

lt

1          THE COURT:  -- it's, it's the court's order and

2     the court would be inclined to imprison anyone that

3     violates the order.

4          MR. IQBAL:  I understand, Your Honor.

5          THE COURT:  So you should expect that if you,

6     and her consent order will remain in effect for a year and

7     you'll be bound by it.

8          MR. IQBAL:  I have a question and, for Ms. Riley

9     (indiscernible.)

10         THE COURT:  Well, you present the question to me

11    and if I think it's appropriate, I'll present it to Ms.

12    Riley.

13         MR. IQBAL:  Sure.

14         THE COURT:  What is your question?

15         MR. IQBAL:  My son is, goes into the same

16    hospital she works in and --

17         THE COURT:  How old is your son?

18         MR. IQBAL:  He's about two and a half years old.

19         THE COURT:  I see.  And so your question is?

20         MR. IQBAL:  Right now, he's going to a

21    (indiscernible) Hospital in North Carolina for treatment.

22    If he, after six months, most likely he will come back.

23    He's going for a bone marrow transplant.

24         THE COURT:  I see.

25         MR. IQBAL:  If he comes back and he needs

lt

1    treatment in the Georgetown University Hospital for the

2    hematology oncology, I hope that it's no restraint on his

3    visitation.  I believe that it's no restraint on his

4    visitation or my taking him to the hospital.

5              THE COURT:  Well, well, the order could provide

6    that you could attend and be at the hospital, but only as

7    is necessary to tend to your son.  So, of course, if you

8    need to take your son to the hospital or pick him up or to

9    visit him at the hospital, then that would be permitted,

10   but during such visit, you would still be required to stay

11   away from Ms. Riley.  So that if you happened to see her

12   in the hallway, you'd have to go the other direction.

13             MR. IQBAL:  That's fine.

14             THE COURT:  You could say nothing to her, you

15   could have no communication with her because I take it,

16   it's not necessary that Ms. Riley treat your son, is it?

17   Is that, are you anticipating that?

18             MR. IQBAL:  She's in a different department.

19             THE COURT:  I see.  So that's not an issue.

20   You're just concerned that, well, maybe I'll be taking my

21   son to the hospital or bringing him back --

22             MR. IQBAL:  Yes.

23             THE COURT:  -- and if I see Ms. Riley, if --

24             MR. IQBAL:  Yes.

25             THE COURT:  -- that happens, you simply have to,

lt

1    to walk in the other direction and avoid her and say

2    nothing to her.  As soon as you see her, you make a turn

3    and go the other direction.

4              MR. IQBAL:  That's fine.

5              THE COURT:  All right.  Well, what I will do is

6    draft a proposed order.  I'll review it with both of you

7    and --

8              MR. IQBAL:  I'd still like to (indiscernible) to

9    Your Honor that even during the time, (indiscernible) I

10   got a chance to read the points in this, I am not going

11   to, I don't think it would be appropriate to go into a lot

12   more detail.  A lot of it is true.

13             THE COURT:  Yes, sir.  Well, certainly if we

14   resolve this by way of consent or I'll say on the consent

15   order that the Court makes no findings whatsoever as to

16   whether or not any inappropriate conduct has occurred.  In

17   other words, I'll make it clear that the order is entered

18   solely because the parties are in agreement with the

19   consent to it.

20             MR. IQBAL:  Right, and that's basically my

21   intent too that to convey the message that I, I only want

22   her well-being or, you know, the goodness because if

23   there's a problem because of me.

24             THE COURT:  All right.  Now this is what the

25   order would say.  It would say on consideration of the

lt

1  plaintiff's application for Temporary Restraining Order
2  and the record hearing and the consent of the parties, it
3  is ordered as follows:  First, that the defendant, you,
4  Mr. Iqbal, shall stay and typically these orders say at
5  least 100 feet away from the plaintiff's person, that
6  means wherever she is and from her home and from her
7  workplace.  That's at Georgetown Hospital.  And I would
8  add language that says except that defendant may be
9  present at Georgetown University Hospital when necessary
10  to assist his two-year-old son or his son, his minor son
11  in connection with treatment at the hospital.  I would say
12  at such times though, defendant is to stay at least or as
13  far away from the plaintiff as is practically possible.
14  So that would mean that, as I said before, if you see her
15  in the hallway, you have to go in a different direction.
16  Stay as far away from her as practically possible.
17         MR. IQBAL:  Can I ask a question to you to Ms.
18  Riley that I will, I will do it anyway.  I don't think,
19  you know, we will need a Court Order for that.
20         THE COURT:  All right.  Yes, sir.  Well, I, you
21  know, I, I have no reason to doubt that, but I think at
22  this point, Ms. Riley's position is, while it may very
23  well be that your word is sufficient in this regard, for
24  her peace of mind, she wants a Court Order.  So that's,
25  that's her position.

lt

1          MR. IQBAL:  Well, I still believe that there's

2   no need as far as there to be a hearing.

3          THE COURT:  All right.

4          MR. IQBAL:  I believe, you know, we are on the

5   same page.  So --

6          THE COURT:  All right.

7          MR. IQBAL:  -- if she can agree to it.

8          THE COURT:  All right, fine.  Well, let me, let

9   me finish describing to you what the order would say.  You

10  have to stay at least 100 feet away from plaintiff's

11  person, home, and workplace.  And as I said, I'll add this

12  language.  All right.  Ms. Riley, Mr. Iqbal, this is what

13  the agreement would say if you were both in agreement with

14  it.  Upon consideration of the plaintiff's application for

15  a Temporary Restraining Order and the record herein and

16  the consent of the parties, it is by the court, this 18th[h]

17  day of January, ordered:  One, defendant, Mr. Iqbal, shall

18  stay at least 100 feet away from the plaintiff's, that is

19  Ms. Riley's, person, home, and workplace, except that the

20  defendant may be present at Georgetown University

21  Hospital whenever necessary to assist with the treatment

22  of his minor child.  At such times, the defendant, Mr.

23  Iqbal, will stay as far away from the plaintiff as is

24  practically possible.  Two, defendant shall not contact --

25  and then I put in parenthesis, that means communicate with

13

lt

1    -- the plaintiff in any manner including, but not limited

2    to, by telephone or in writing or in any other manner

3    either directly or indirectly through a third party.  And

4    in that connection, I put parenthetically, defendant is

5    not to communicate with or go within 100 feet of any

6    relative or known friend or associate of the plaintiff's.

7    So that means you can't communicate with her directly or

8    indirectly, and indirectly would mean through third

9    parties including Ms. Riley's relatives or friends or

10   associates.

11             MR. IQBAL:  Can I ask a question, Your Honor?

12             THE COURT:  Yes.

13             MR. IQBAL:  Well, I believe, you know, there's

14   some, I understand, you know, the language on the court

15   order and --

16             THE COURT:  Well, let me, let me finish, finish

17   reading and then, just jot, make a mental note of whatever

18   question you had and then I'll answer all the questions

19   you have.  All right.  Third, it says the court makes no

20   findings whatsoever as to whether any inappropriate

21   conduct has occurred.  Fourth, this order shall remain in

22   effect until January 17th, 2008.  That's a year from now.

23   All right.  So, I'm sorry, what was your question?

24             MR. IQBAL:  I just had a question that I believe

25   we have common, because my son is sick, so I communicate

14

lt

1  with the doctors.

2           THE COURT:  Mm-hmm.

3           MR. IQBAL:  I believe, you know, I will, I

4  understand the care and not have discussion about her or

5  because, but in any case, I believe that the regular talk

6  and that is any (indiscernible) or something, it's not

7  considered, you know, prohibited.

8           THE COURT:  Well, as long as you don't mention

9  Ms. Riley's name or refer to her, she is, is there any

10  reason to think that Ms. Riley will in the future be

11  involved in the treatment of your son?  Because you can --

12           MR. IQBAL:  I will, considering the nature and

13  the situation right now, I will still care if my son will

14  go to Georgetown and he has to go to her department, then

15  I will try to make some other arrangements that --

16           THE COURT:  If you can, but I mean this is in no

17  way intended to interfere with your care and assistance to

18  your son.  As long as you keep whatever you say or do

19  focused on what is necessary to help your son, then this

20  order has nothing to do with that.

21           MR. IQBAL:  That's fine.

22           THE COURT:  All right.  So it says no

23  communication directly or indirectly through third,

24  through a third party and then in parenthesis I put,

25  defendant shall stay away from and not communicate with

lt

1  plaintiff's friends and relatives.  Yes, sir?

2          MR. IQBAL:  Relatives is, friends means, you

3  know, that like I mean common doctors or they can also

4  come into the same (indiscernible)?

5          THE COURT:  Well, yes, but you can communicate -

6          MR. IQBAL:  I mean I don't have to, I don't have

7  to talk about her, but I believe, you know, I can have

8  some other discussion or because I have some family

9  friends, I visit them and I believe that they --

10         THE COURT:  So relatives there's no problem, but

11 friends you're concerned that perhaps someone that you

12 need to talk to at the hospital unrelated to Ms. Riley

13 might also be a friend of Ms. Riley's?

14         MR. IQBAL:  Right.

15         THE COURT:  Okay, fine.  Well, I'll cross out

16 friends.

17         MR. ROEGGE:  Or you could just say, Your Honor,

18 in an effort to communicate.

19         THE COURT:  No, I think that's a little, I'll

20 cross out friends, but I'll just say that --

21         MR. IQBAL:  I know we are going deep.  I don't

22 think, you know, there will be, like I already said, you

23 know, I don't have any --

24         THE COURT:  But, but the thing that you need to

25 keep in mind is --

lt

| | |
|---|---|
| 1 | MR. IQBAL:  Right. |
| 2 | THE COURT:  -- that any conversation you have |
| 3 | with anyone, make sure that you don't mention or refer in |
| 4 | any way to Ms. Riley.  So I think that will be sufficient. |
| 5 | Make sure you don't do anything that might be interpreted |
| 6 | as an indirect way to communicate with Ms. Riley. |
| 7 | MR. IQBAL:  Right.  I understand. |
| 8 | THE COURT:  All right.  Now in just a moment, |
| 9 | I'll give this proposed order to each of you to review. |
| 10 | If you agree to it, there's a place for each of you to |
| 11 | sign on this form.  Now if the two of you sign it, I'll |
| 12 | sign it and it becomes an order of the court.  From that |
| 13 | moment on, until a year from now, Mr. Iqbal, you are bound |
| 14 | by it.  And if you violate it in any way, you should |
| 15 | expect that to cause you to be imprisoned for contempt of |
| 16 | court.  All right.  Do you understand what I just said, |
| 17 | Mr. Iqbal? |
| 18 | MR. IQBAL:  Yes, Your Honor, I do. |
| 19 | THE COURT:  All right. |
| 20 | MS. RILEY:  That's fine, Your Honor. |
| 21 | THE COURT:  All right.  Sign where it says |
| 22 | plaintiff.  All right.  You can give it to Mr. Roegge.  He |
| 23 | can, all right.  All right, and as much as the parties |
| 24 | agree to it, I will sign it and it now becomes an order of |
| 25 | the court.  If you'll wait outside, you'll each be given a |

lt

1    copy of the order.  Keep that with you.  It's a very

2    important thing for you to have for the next year.

3              MR. IQBAL:  Is it possible, Your Honor, that it

4    can be mailed to my home address?

5              THE COURT:  Mailed to your --

6              MR. IQBAL:  I can, I can pick it up, that's

7    fine.

8              THE COURT:  No, I prefer you just wait here.

9    It'll just take a moment.

10             MR. IQBAL:  Okay.

11             THE COURT:  And, it'll just take a moment.  All

12   right.  As a matter of fact, Ms. Reed, if you could, if

13   you could just make copies for them right here while we

14   wait here.

15             (Thereupon, the hearing was concluded.)

16

17

18

19

20

21

22

23

24

25

√  Digitally signed by Lori A. Tackett

### ELECTRONIC CERTIFICATE

I, Lori A. Tackett, transcriber, do hereby certify that I have transcribed the proceedings had and the testimony adduced in the case of RILEY vs. IQBAL, Case No. CA 113-07 in said Court, on the 18th day of January 2007.

I further certify that the foregoing 18 pages constitute the official transcript of said proceedings as transcribed from audio recording to the best of my ability.

In witness whereof, I have hereto subscribed my name, this 26th day of January 2007.

*Lori A. Tackett*

Transcriber

19

B1

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

```
- - - - - - - - - - - - - - x
                            :
RILEY,                      : Docket Number: 2007 CA 113
         Plaintiff.         :
                            :
    vs.                     :
                            :
IQBAL,                      :
                            :
         Defendant.         :
                            : Thursday, January 18, 2007
- - - - - - - - - - - - - - x Washington, D.C.
```

The above-entitled action came on for a hearing

before the Honorable ROBERT S. TIGNOR, Senior Judge, in

Courtroom Number JIC, commencing at 2:57 p.m.

*Hold for:*

*MR. IQBAL*

*5·11· 2·7·7· 6216*

*4/10/08*
*from 2/8/07*

APPEARANCES:

On Behalf of the Plaintiff:

BRADFORD J. ROEGGE, Esquire
Washington, D.C.

On Behalf of the Defendant:

PRO SE

07-00177

## Deposition Services, Inc.
6245 Executive Boulevard
Rockville, MD 20852
Tel: (301) 881-3344  Fax: (301) 881-3338
info@DepositionServices.com  www.DepositionServices.com

1                    P R O C E E D I N G S

2            DEPUTY CLERK:  Your Honor, recalling Civil

3    Action 113-07 in the matter of Riley versus Iqbal.  Please

4    state your names for the record.  Spell your first and

5    last name.

6            THE COURT:  All right.  Ms. Riley, beginning

7    with you, ma'am, state your full name.

8            MS. RILEY:  Tricia Anne Riley.  Last name R-I-L-

9    E-Y.

10           THE COURT:  Thank you.  Yes.

11           MR. ROEGGE:  ·Brad Roegge, Your Honor.  I

12   represent Ms. Riley.

13           THE COURT:  And spell your last name.

14           MR. ROEGGE:  R-O-E-G-G-E.

15           THE COURT:  Thank you.  Sir, state your name

16   please.

17           MR. IQBAL:  Amer Iqbal.

18           THE COURT:  Thank you.

19           MR. IQBAL:  A-M-E-R and last name is I-Q-B-A-L.

20           THE COURT:  All right.

21           DEPUTY CLERK:  Please raise your right hand.

22           Thereupon,

23                    **TRICIA ANNE RILEY**

24   having been called as a witness for and on behalf of the

25   plaintiff, and having been first duly sworn by the Deputy

lt

1    Clerk, was examined and testified as follows:

2        Thereupon,

3                    **AMER IQBAL**

4    having been called as a witness for and on behalf of the

5    defendant, and having been first duly sworn by the Deputy

6    Clerk, was examined and testified as follows:

7        DEPUTY CLERK:  Thank you.

8        THE COURT:  Now, Mr. Iqbal, as I understand this

9    matter, Ms. Riley is asking for a Court Order, which I

10   suppose would direct that you keep your distance from Ms.

11   Riley, that you not communicate with her in any way either

12   directly or indirectly, and that you essentially have no

13   contact or communication with her, and that you not be in

14   her presence at any time.  Is that what your client is

15   asking?

16       MR. ROEGGE:  Yes, Your Honor, as well as

17   contacting family members or anyone that Ms. Riley knows.

18       THE COURT:  I see.  Now --

19       MR. IQBAL:  May I, may I say something, sir?

20       THE COURT:  Well, let me, let me finish

21   explaining to you how this type of hearing proceeds.

22       MR. IQBAL:  Okay.

23       THE COURT:  She's asking for what's called a

24   Temporary Restraining Order.  Typically, these hearings

25   are resolved in one of two ways.  We can have a hearing at

1t

1   which both parties testify.  Ms. Riley would testify and
2   you would have an opportunity to testify under oath if you
3   so desire.  At the end of the hearing, I would determine
4   whether the prerequisites for a Temporary Restraining
5   Order have been established.  And, essentially, what I
6   would have to determine is this:  Is there a reason to
7   believe, am I satisfied that, without a Temporary
8   Restraining Order, some type of irreparable harm would
9   occur?  And other considerations would be whether I
10  thought it was likely Ms. Riley would prevail ultimately
11  in her request for preliminary injunction whether the
12  public interest was affected or not.  But generally, I'd
13  have to determine, the most important thing would be
14  whether I thought that some type of irreparable harm might
15  occur without an order.  If I believe that that was the
16  case, then I'd issue a Temporary Restraining Order.  That
17  order would restrain you from doing certain things from
18  the things I mentioned before and it would be in effect
19  for 14 days or until the next court hearing in this case,
20  until you'd come back to court.

21          Now, typically, you'd then come back to court in
22  about two weeks for a further hearing on the issue of a
23  preliminary injunction.  So that's one way in which we
24  could proceed -- have a hearing, Ms. Riley would testify,
25  you would testify, I would at the end either find that

lt

1  there was reason to believe that some harm might occur and

2  grant the request for an order or if I was not satisfied,

3  if I didn't think there was any basis for an order, I'd

4  simply say request for a Temporary Restraining Order is

5  denied and then it would be continued for further hearing

6  on the request for preliminary injunction.  That's one way

7  of proceeding.

8         On the other hand, often when someone is simply

9  asking for an order saying that the other person not

10 communicate with them, don't come near them, the other

11 person says, well, if that's the way you feel, that's fine

12 with me.  I don't have any desire or intention to force my

13 presence upon you.  And so in those instances, the parties

14 often agree to the entry of an order and it would be a

15 consent order. The order would say that this doesn't

16 include any findings one way or the other as to the

17 allegations, but it would direct that the defendant is not

18 to communicate with or go near the plaintiff or her family

19 or communicate with her family.

20         Do you understand what I've said thus far, sir?

21         MR. IQBAL:  Yes.  As far as the consent, Your

22 Honor, do the parties have to come to an agreement?  They

23 can talk to each other and come to an agreement or will it

24 be by you, sir?

25         THE COURT:  Well, the agreement would be reached

5

lt

1    right here, now.   Today.

2            MR. IQBAL:   Right.

3            THE COURT:   And, and what I would do is simply

4    grant a proposed order --

5            MR. IQBAL:   Mm-hmm.

6            THE COURT:   -- review it with both of you and

7    see if you both agree to it.   If you agree to it, you

8    would sign it and then I would sign it, you'd each get a

9    copy of it, and then you'd be bound by it.

10            Now any order that's issued, whether it's by

11    consent or whether it's after a hearing, if I issue an

12    order, the parties are bound by it. So if the order

13    directed that you stay away from the plaintiff or that you

14    not communicate with her, if you violated that order, that

15    would be cause to have you imprisoned for up to 180 days

16    for contempt of court for violating the order.

17            Does that answer your question?  Do you have any

18    more questions about it?

19            MR. IQBAL:   Yes.   I have a couple of questions

20    to ask and then I think, you know, there's a couple of

21    things.  You know, first of all, that I think everybody's

22    listening.  So I don't intend you any harm or any, any

23    problems, you know, to her or her family in any case or

24    form.  As far as the, I, I, that's my belief, you know?   I

25    don't know how she --

1          THE COURT:  Well, let me ask you this.

2          MR. IQBAL:  -- will proceed.  You know, right.

3          THE COURT:  Obviously, at this point, it's clear

4   that regardless of how innocent your intentions have been

5   and are now, at this point, I think it's clear that she

6   just doesn't want you to communicate with her or her

7   family and, and she just doesn't want to have any contact

8   with you whatsoever.  Now are you agreeable to consenting

9   to that or do you --

10         MR. IQBAL:  If that's what she wants, I think,

11  you know, that my word is good enough.  I won't contact

12  her.

13         THE COURT:  Well, is that what your client

14  wants?  No contact?

15         MR. ROEGGE:  Well, no contact, but, obviously,

16  we'd want that in the terms of a consent form, yes.

17         THE COURT:  I understand she wants an order.

18         MR. ROEGGE:  Yes.

19         THE COURT:  That's why we're here.

20         MR. ROEGGE:  No, no contact with her, no contact

21  with her family, no calls to her work, her co-workers,

22  continued attempts to try to communicate with her.

23         THE COURT:  That's what you want, ma'am?

24         MS. RILEY:  Yes.

25         THE COURT:  All right.  There's no doubt in your

1    mind that that, that is what you want?

2              MS. RILEY:   That's correct.

3              THE COURT:   All right.  So that is what Ms.

4    Riley wants.  Do you have any objection to that?

5              MR. IQBAL:   Can you please explain to me the --

6    on the consent order, how it will be shaped or implicated

7    and the timeframe?  One more thing which I'd like to ask,

8    actually.

9              THE COURT:   The timeframe is if you, in a

10   consent order would be in effect for one year.

11             MR. IQBAL:   Or upon whenever she wants to remove

12   it.

13             THE COURT:   No, once it's an order --

14             MR. IQBAL:   I believe --

15             THE COURT:   -- once it's signed by the court,

16   the only way you can remove it is to have Ms. Riley come

17   back to court and have the order rescinded.  In other

18   words, if a consent order is entered between the parties

19   --

20             MR. IQBAL:   Right.

21             THE COURT:   -- and then a week from now the

22   parties decide they want to be friends or they want to

23   have contact, they can't do that unless and until they

24   come back to the court --

25             MR. IQBAL:   Mm-hmm.

                                                              8

1          THE COURT:  -- to get the order terminated or

2     vacated or rescinded.

3          MR. IQBAL:  Well --

4          THE COURT:  But once it's signed by a judge --

5          MR. IQBAL:  Mm-hmm.

6          THE COURT:  -- it's, it's the Court's order and

7     the Court would be inclined to imprison anyone that

8     violates the order.

9          MR. IQBAL:  I understand, Your Honor.

10         THE COURT:  So you should expect that if you

11    enter a consent order, it will remain in effect for a year

12    and you'll be bound by it.

13         MR. IQBAL:  I have a question and, for Ms. Riley

14    and that's --

15         THE COURT:  Well, you present the question to me

16    and if I think it's appropriate, I'll present it to Ms.

17    Riley.

18         MR. IQBAL:  Sure.

19         THE COURT:  What is your question?

20         MR. IQBAL:  My son is, goes into the same

21    hospital she works in and --

22         THE COURT:  How old is your son?

23         MR. IQBAL:  He's about two and a half years old.

24         THE COURT:  I see.  And so your question is?

25         MR. IQBAL:  Right now, he's going to the Duke

1    Hospital in North Carolina for treatment. If he, after six
2    months, most likely he will come back.  He's going for a
3    bone marrow transplant.
4         THE COURT:  I see.
5         MR. IQBAL:  If he comes back and he needs
6    treatment in the Georgetown Hospital for the hematology
7    oncology, I hope that it's no restraint on his visitation.
8    I believe that it's no restraint on his visitation or my
9    taking him to the hospital.
10        THE COURT:  Well, well, the order could provide
11   that you could attend and be at the hospital, but only as
12   is necessary to tend to your son.  So, of course, if you
13   need to take your son to the hospital or pick him up or to
14   visit him at the hospital, then that would be permitted,
15   but during such visits, you would still be required to
16   stay away from Ms. Riley.  So that if you happened to see
17   her in the hallway, you'd have to go the other direction.
18        MR. IQBAL:  That's fine.
19        THE COURT:  You could say nothing to her, you
20   could have no communication with her, because I take it,
21   it's not necessary that Ms. Riley treat your son, is it?
22   Is that, are you anticipating that?
23        MR. IQBAL:  She's in a different department.
24        THE COURT:  I see.  So that's not an issue.
25   You're just concerned that, well, maybe I'll be taking my

lt

1  son to the hospital or bringing him back --

2         MR. IQBAL:  That's correct.

3         THE COURT:  -- and if I see Ms. Riley, if --

4         MR. IQBAL:  Yes.

5         THE COURT:  -- that happens, you simply have to,

6  to walk in the other direction and avoid her and say

7  nothing to her.  As soon as you see her, you make a turn

8  and go in the other direction.

9         MR. IQBAL:  That's fine.

10        THE COURT:  All right.  Well, what I will do is

11 draft a proposed order.  I'll review it with both of you

12 and --

13        MR. IQBAL:  I'd still like to enter it, you

14 know, to Your Honor that even during the time, the

15 (indiscernible) of this, I got a chance to read the points

16 in this, I rather not going to in to it, I don't think it

17 would be appropriate to go into a lot more detail.  A lot

18 of it is true.

19        THE COURT:  Yes, sir.  Well, certainly if we

20 resolve this by way of consent or I'll say on the consent

21 order that the Court makes no findings whatsoever as to

22 whether or not any inappropriate conduct has occurred.  In

23 other words, I'll make it clear that the order is entered

24 solely because the parties are in agreement with the

25 consent to it.

11

lt

1           MR. IQBAL:  Right, and that's basically my
2  intent too that to convey the message that I, I only want
3  her well-being or, you know, the goodness, but if there's
4  a problem because of me --

5           THE COURT:  All right.  Now this is what the
6  order would say.  It would say upon consideration of the
7  plaintiff's application for Temporary Restraining Order
8  and the record herein and the consent of the parties, it
9  is ordered as follows:  First, that the defendant, you,
10  Mr. Iqbal, shall stay, and typically these orders say at
11  least 100 feet away from the plaintiff's person, that
12  means wherever she is, and from her home and from her
13  workplace.  That's at Georgetown Hospital.  And I would
14  add language that says except that defendant may be
15  present at Georgetown University Hospital when necessary
16  to assist his two-year-old son or his son, his minor son
17  in connection with treatment at the hospital.  I would say
18  at such times though, defendant is to stay at least or as
19  far away from the plaintiff as is practically possible.
20  So that would mean that, as I said before, if you see her
21  in the hallway, you have to go in a different direction.
22  Stay as far away from her as practically possible.

23           MR. IQBAL:  Can I ask a question through you to
24  Ms. Riley that I will, I will do it anyway.  I don't
25  think, you know, we will need a Court Order for that.

lt

1          THE COURT:  All right.  Yes, sir.  Well, I, you

2    know, I, I have no reason to doubt that, but I think at

3    this point, Ms. Riley's position is that -- while it may

4    very well be that your word is sufficient in this regard,

5    for her peace of mind, she wants a Court Order.  So

6    that's, that's her position.

7          MR. IQBAL:  Well, I still believe that there's

8    no need as far as, you know, we are here and --

9          THE COURT:  All right.

10          MR. IQBAL:  -- I believe, you know, we are on

11    the same page.  So --

12          THE COURT:  All right.

13          MR. IQBAL:  -- if she can agree to it.

14          THE COURT:  All right, fine.  Well, let me, let

15    me finish describing to you what the order would say.  You

16    have to stay at least 100 feet away from plaintiff's

17    person, home, and workplace.  And as I said, I'll add this

18    language.

19          (Pause.)

20          THE COURT:  All right.  Ms. Riley, Mr. Iqbal,

21    this is what the order would say if you are both in

22    agreement with it.  Upon consideration of the plaintiff's

23    application for a Temporary Restraining Order and the

24    record herein and the consent of the parties, it is by the

25    Court, this 18th[h] day of January, ordered:  One,

lt

1    defendant, Mr. Iqbal, shall stay at least 100 feet away

2    from the plaintiff's, that is Ms. Riley's, person, home,

3    and workplace, except that the defendant may be present at

4    Georgetown University  Hospital whenever necessary to

5    assist with the treatment of his minor child.  At such

6    times, the defendant, Mr. Iqbal, will stay as far away

7    from the plaintiff as is practically possible.

8         Two, defendant shall not contact -- and then I

9    put in parenthesis, that means communicate with the

10   plaintiff in any manner including, but not limited to, by

11   telephone or in writing or in any other manner either

12   directly or indirectly through a third party.  And in that

13   connection, I put parenthetically, defendant is not to

14   communicate with or go within 100 feet of any relative or

15   known friend or associate of the plaintiff's. So that

16   means you can't communicate with her directly or

17   indirectly, and indirectly would mean through third

18   parties, including Ms. Riley's relatives or friends or

19   associates.

20        MR. IQBAL:  Can I ask a question, Your Honor?

21        THE COURT:  Yes.

22        MR. IQBAL:  Well, I believe, you know, there's

23   some -- I understand, you know, the language on the court

24   order and --

25        THE COURT:  Well, let me, let me finish, finish

14

1   reading and then, just jot, make a mental note of whatever
2   question you had and then I'll answer all the questions
3   you have.
4            MR. IQBAL:  Sure.
5            THE COURT:  All right.  Third, it says the Court
6   makes no findings whatsoever as to whether any
7   inappropriate conduct has occurred.  Fourth, this order
8   shall remain in effect until January 17th, 2008.  That's a
9   year from now.  All right.
10           So, I'm sorry, what was your question?
11           MR. IQBAL:  I just had a question that I believe
12  we have common, because my son is sick, so I communicate
13  with the doctors.
14           THE COURT:  Mm-hmm.
15           MR. IQBAL:  I believe, you know, I will -- I
16  understand the care and not have, you know, discussion
17  about her or because, but in any case, I believe that the
18  regular talking, if there is any friends or something,
19  it's not considered, you know, prohibited.
20           THE COURT:  Well, as long as you don't mention
21  Ms. Riley's name or refer to her, I mean, she is, is there
22  any reason to think that Ms. Riley will in the future be
23  involved with the treatment of your son?  Because you can
24  --
25           MR. IQBAL:  I will -- considering the nature,

lt

1  you know, and the situation right now, I will still care

2  if my son will go to Georgetown and he has to go to her

3  department, then I will try to make some other

4  arrangements that --

5          THE COURT:  If you can, but I mean this is in no

6  way intended to interfere with your care and assistance to

7  your son.  So as long as you keep whatever you say or do

8  focused on what is necessary to help your son, then this

9  order has nothing to do with that.

10          MR. IQBAL:  That's fine.

11          THE COURT:  All right.  So it says no

12  communication directly or indirectly through third,

13  through a third party and then in parenthesis I put,

14  defendant shall stay away from and not communicate with

15  plaintiff's friends and relatives.

16          Yes, sir?

17          MR. IQBAL:  Relatives is -- friends mean, you

18  know, that like, I mean, common doctors or they can also

19  come into the same area.

20          THE COURT:  Well, yes, but you can communicate

21  --

22          MR. IQBAL:  I mean I don't have to, I don't have

23  to talk about her, but I believe, you know, I can have

24  other discussion or because I have some family friends, I

25  visit them and I believe that they --

1    THE COURT: Okay. All right. So relatives,

2    that's no problem, but friends -- you're concerned that

3    perhaps someone that you need to talk to at the hospital,

4    unrelated to Ms. Riley, might also be a friend of Ms.

5    Riley's?

6        MR. IQBAL: Right.

7        THE COURT: Okay, fine. Well, I'll cross out

8    friends.

9        MR. ROEGGE: Or you could just say, Your Honor,

10   in an effort to communicate.

11       THE COURT: No, I think that's a little, I'll

12   cross out friends, but I'll just say that --

13       MR. IQBAL: I know we are going deep. I don't

14   think, you know, there will be, like I already said, you

15   know, I don't have any --

16       THE COURT: But, but the thing that you need to

17   keep in mind is --

18       MR. IQBAL: Right.

19       THE COURT: -- that any conversation you have

20   with anyone, make sure that you don't mention or refer in

21   any way to Ms. Riley. So I think that will be sufficient.

22   You have to make sure you don't do anything that might be

23   interpreted as an indirect way to communicate with Ms.

24   Riley.

25       MR. IQBAL: Right. I understand.

lt

1       THE COURT:  All right.  Now in just a moment,

2   I'll give this proposed order to each of you to review.

3   If you agree to it, there's a place for each of you to

4   sign on this form.  Now if the two of you sign it, I'll

5   sign it and it becomes an order of the Court.  From that

6   moment on, until a year from now, Mr. Iqbal, you are bound

7   by it.  And if you violate it in any way, you should

8   expect that would cause you to be imprisoned for contempt

9   of court.

10      All right.  Do you understand what I just said,

11  Mr. Iqbal?

12      MR. IQBAL:  Yes, Your Honor, I do.

13      THE COURT:  All right.

14      (Pause.)

15      MS. RILEY:  That's fine, Your Honor.

16      THE COURT:  All right.  Sign where it says

17  plaintiff.  All right.  You can give it to Mr. Roegge.  He

18  can, all right.  All right.  And as much as the parties

19  agree to it, I will sign it and it now becomes an order of

20  the Court.  If you'll wait outside, you will each be given

21  a copy of the order.  Keep that with you.  It's -- it

22  would be a very important thing for you to have for the

23  next year.

24      MR. IQBAL:  Is it possible, Your Honor, that it

25  can be mailed to my home address?

18

1        THE COURT:  Mailed to your --

2        MR. IQBAL:  I can, I can pick it up, that's

3  fine.

4        THE COURT:  No, I prefer -- if you'd just wait

5  here, it'll just take a moment.

6        MR. IQBAL:  Okay.  That's fine.

7        THE COURT:  And, it'll just take a moment.

8        MR. IQBAL:  Sure.

9        THE COURT:  All right.  As a matter of fact, Ms.

10  Reed, if you could, if you could just make copies for them

11  right here while we wait here.

12        DEPUTY CLERK:  Okay.

13        (Pause.)

14        MR. ROEGGE:  Thank you very much.

15        MR. IQBAL:  Thank you.

16        THE COURT:  Okay.  Fine.  So the record will

17  reflect that everyone has a copy.  And as the record now

18  stands, there's no finding that anyone has done anything

19  inappropriate, anything wrong, but the record is clear

20  that Ms. Riley has made very clear her desire that you

21  just have no more contact with her.  And so, I accept your

22  word that you will honor that request and that's been

23  formalized by the order and so, hopefully that will end

24  the matter.  All right.

25        MR. IQBAL:  Yes, sir.

1          THE COURT:  Thank you.  And I wish the best for

2    your son, sir, in all of --

3          MR. IQBAL:  Thank you very much.

4          THE COURT:  -- his treatment.

5          MR. IQBAL:  That's good.  He's in good care.

6          THE COURT:  Well, I'm sure Georgetown is a fine

7    institution and so he --

8          MR. IQBAL:  They've been -- actually they are

9    the ones to start the procedure and actually we were at

10   Duke a couple of days back and --

11         THE COURT:  I see.

12         MR. IQBAL:  We have good news.  So it's --

13         THE COURT:  Well, that's really good.

14         All right.  Thank you very much.

15         MR. ROEGGE:  Thank you, Your Honor.

16         MR. IQBAL:  Thank you.

17         MR. ROEGGE:  I appreciate that.

18         THE COURT:  Um-hmm.

19         (Thereupon, the hearing was concluded.)

20

21

22


√   Digitally signed by Lori A. Tackett

ELECTRONIC CERTIFICATE

I, Lori A. Tackett, transcriber, do hereby certify that I have transcribed the proceedings had and the testimony adduced in the case of RILEY vs. IQBAL, Case No. CA 113-07 in said Court, on the 18th day of January 2007.

I further certify that the foregoing 20 pages constitute the official transcript of said proceedings as transcribed from audio recording to the best of my ability.

In witness whereof, I have hereto subscribed my name, this 26th day of January 2007.

*Lori A. Tackett*

Transcriber

(Transcript Reviewed by Lori Edley, 2-7-07)

21

B2

**Started:** 1/18/2007 10:22:45 AM
**Ends:** 1/18/2007 4:43:01 PM          **Length: 06:20:17**

**Room:** JIC                                    **Case:**                                              **Type:**
**Caption:** Tignor/Byrd - Reid
**2:58:17 PM**          CASE NUMBER : 07' ca 113
**2:58:40 PM**          CASE NAME :  riley tricia anne v. iqbal amer
**2:58:52 PM**          all parties have been sworn in
**2:59:01 PM**          bradford j. roegge  attorney for plaintiff
d

*per Kevin Hurd, he is only allowed to print*
*portion of this case pertaing to 07CA113*
*by James Holland.*
                          02/12/07

out Record Division  02/12/07

*  recording is broken and interrupted.
(paused)

*

<u>Recordings Descriptions</u>

2:58:17   CASE NUMBER   07 CA 113

2:58:40   CASE NAME   Riley Tricia Anne vs Ishal
aner

2:58:52   all parties have been sworn in

2:59:01   Bradford J. Roegge   attorney for plaintiff.

3:17:58   06 CA 8215 correction

3:19:17   CASE Number   06 CA 8215

3:19:30   CASE Number:

3:26:02   Case Number   06 CA 8615 incorrect number

should read 06 CA 8215

3:31:01   Consent order for one year granted

3:31:48    recording paused

9:33:43    recording resumed

3:33:51    Copies have been given in
           open court to all parties;

3:34:46    recording paused.

---

( Not a tape, through computer)
2/12/07      10 Am ———— 11 Am.

[ Computer Right window Reads
       4:43:02 PM

KEVIN HURD

06'CA 8615

is for felecia heiskell

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
COURT REPORTING & RECORDING DIVISION
500 INDIANA AVENUE, N.W. ROOM 5500.
WASHINGTON, D.C. 20001
PHONE NUMBER (202) 879-1009

DATE: ~~1/10~~? CLERK: ~~NG~~ NON-APPEAL

*Courtview*
202 879 1090

4201

## REQUEST FOR TRANSCRIPT

NAME OF CASE: TRICIA ANNE RILEY VS AMER IQBAL CASE NUMBER: CA 000113-07
(1/18/07)

PRESIDING JUDGE: _____ REPORTER (TAPE) ✓ COURTROOM: JIC

PROCEEDING DATE(S): 1/18/07 TIME OF PROCEEDINGS: 2:30PM

REQUESTED PORTION/BLOCK: ~~INMATE~~ All

NAME AND ADDRESS OF ORDERING PARTY:

First Name AMER Last Name IQBAL
E-mail address: iqbalamer@hotmail.com
Company _____ Telephone Number 571-277-6216
Street Address 17652 TEDLER CIR
City ROUNDHILL State VA ZIP 20141

*************************************************************

## TO BE COMPLETED BY COURT REPORTING & RECORDING DIVISION STAFF
APPROXIMATE LENGTH OF PROCEEDINGS: _____ x 40pph = Estimate of Pages _____
### COSTS ARE ESTIMATED

| TYPES OF ORDER | | | PAGES | COST | DEPOSIT |
|---|---|---|---|---|---|
| REGULAR | 30 (appeal 60) calendar days | $3.30 per page x | | $ | $ |
| INTER | 15 calendar days | $3.55 per page x | 20 = | $ 71 | $ 35.50 |
| EXPEDITE | 7 calendar days | $4.40 per page x | | $ | $ |
| EXPRESS | 3 calendar days | $4.65 per page x | | $ | $ |
| DAILY | 9:00 am following business day | $5.50 per page x | | $ | $ |
| COPY* | Regular or Expedite Delivery | $ .83 per page x | | $ | $ |
| 2nd COPY* | Regular or Expedite Delivery | $ .55 per page x | | $ | $ |
| COPY* | Daily Delivery | $1.10 per page x | | $ | $ |
| 2nd COPY* | Daily Delivery | $ .83 per page x | | $ | $ |
| *Paper_____ ASCII_____ CONDENSE PAGE_____ | | | | $ | $ 35.50 |

NOTES:
1. You must pay for any portion of a transcript that was completed prior to your written notice of cancellation.
2. Appeal transcripts will not be filed with the Court of Appeals until payment is made in full.
3. You will be asked for a deposit of one half the estimated cost, based upon the time length of proceedings.
4. Failure to order a transcript in a timely fashion may result in the transcript not being available for your hearing date.
5. Payments to Court Reporters may be in the form of cash, money order, or check (made payable directly to the Court Reporter for transcripts produced by Court Reporters. Payments for transcripts produced by the Transcription Branch can be made in Room _____ and are to be made payable to the Clerk of the Court. Payment can be made by check (attorneys only; include bar number on the check money order, or cash. Balances must be paid before picking up transcripts.
6. Transcript requests received after 4:00 p.m. are considered a transaction of the next business day.

Customer Name: AMER IQBAL

Customer ID: 07CA113

Receipt Number:            1433

Date:            1/19/07

Reference:            011907

| ITEM / INVOICE | DESCRIPTION | QUANTITY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | TRANSCRIPTS | 1.00 | 35.50 | 35.50 |

Payment Method:    Check

Subtotal:            35.50

Sales Tax:            0.00

35.50

Receipt Number:            1433

Date:            1/19/07

Reference:            011907

| ITEM / INVOICE | DESCRIPTION | QUANTITY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | TRANSCRIPTS | 1.00 | 35.50 | 35.50 |

Payment Method:    Check

Subtotal:            35.50

Sales Tax:            0.00

35.50

**DISTRICT OF COLUMBIA**
**NOTICE OF INFRACTION**
CITATION # 3605755530

3B0575S530 60 25

| DATE | TIME ISSUED | OWNER |
|---|---|---|
| Tue 02/06/2007 | 4:30pm | X |

| LICENSE NUMBER | STATE | TAG YEAR |
|---|---|---|
| XZZ3628 | VA | 2007 |

| VEHICLE MAKE | BODY | TOW REQ. |
|---|---|---|
| HONDA | 4 DR | NO |

VEHICLE IDENTIFICATION NUMBER

LOCATION OF VIOLATION
4400 15TH 2ND ST NW EAST SIDE

VIOLATION
P039 EXPIRED METER

| METER # | OBSERVED TIME |
|---|---|
| 020403NW | |

FINE AMOUNT DUE
$25.00

COMMENTS
2 HOUR METER

| OFFICER | DEPT. | BADGE # |
|---|---|---|
| WEAVER An | 15 | 00293 |

I swear or affirm under penalty of perjury that I observed or investigated the commission of this violation and served this notice of infraction as provided for by law.

**ASSAULTS ON PARKING ENFORCEMENT PERSONNEL ARE FULLY PROSECUTED**
96397

SEE REVERSE SIDE FOR IMPORTANT INSTRUCTIONS

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## COURT REPORTING DIVISION - 500 INDIANA AVENUE N.W.
### ROOM No: 5500 - TELEPHONE No.: 879-1757

Date: _2/6/07_

Control No.: _7-177_

Appeal:_____ Non-Appeal _✓_

Anus Iqbal

## TAPE ORDER STATEMENT

| NAME OF CASE: Riley | | VS. | Iqbal |
|---|---|---|---|
| CASE NUMBER: CA 113-07 | DATE: 1-18-07 | | PRESIDING JUDGE: Tignor |

The Transcript (indicated above), which you requested from our Central Recording System on ____Jan, 19____, 20 _07_ is ready for pick up.

There were _19_ pages at $ _3.30_ per page.

The total cost is $ _63.70_ minus your deposit of $ _35.50_, making the balance due $ _27.30_. Refund of $_____ will be made payable to you by the Court, which will be forthcoming from the Court Registry.

FORMS OF PAYMENT:
The Finanace Office accepts checks from attorneys with a Bar number. All other ordering parties must pay in the form of cash or money order made payable to the Clerk of the Court, Transcripts.

Payment to be made in Room JM-170.

If a refund is due, please allow 4 to 6 weeks for your refund to be processed.

Thank you,

James Holland

James Holland, Director
Court Reporting and Recording Division

Transcript may be picked up in this office between the hours of 8:30 a.m. and 5:00 p.m., Monday through Friday.

CR-1147 Aug. 03

# EXHIBIT C

## <u>Some Details of My Meeting with the Superior Court Chief Judge and Phone Conversation</u>

I met with the Chief Judge on Feb 12, 07 to discuss the incorrectness of the transcripts. I showed him the vows portion that was eliminated and also pointed out that his reporting clerk had told me to correct the mistakes in the transcript. I asked him if I could get a tape, but he let me review the recording. While reviewing the recording, I found mistakes and brought the tag report to show it to the CJ. He looked at it and said the only first three lines were the correct transcripts of this case. He also told me to do the 3 first and it will come up. He also told me to work with the clerks.

On Feb 19, 07 when I was unable to get in the court house. I made few calls to the CJ and around 9:30 am he himself picked the phone and we discussed about our case. He also mentioned that they are here and he could hear the matter in one to two hearings. He told me that he could meet me on March 05, 2007. After an hour or so I was driving by the courthouse and thought to meet with CJ. I went up stairs but the marshall told me that my hearing is in two weeks. I also heard Tricia from inside, I believe it was her voice.

From this day onwards, I received Judge Tignor's letter, marriage bureau letter, rejection of my hearing request, Judge Tignor's letter with contempt complaint by Mr. Roegge and finally filing of the contempt case.

I was just overwhelmed with all this and decided to transfer my case to USDC. After receiving the second package of the contempt case, I filed a notice of removal of my case from superior court, which is under 07-452 in USDC.

# EXHIBIT D

TEST:

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Superior Court of
the District of Columbia

*[signature]*

Deputy Clerk

*Tricia Anne Riley*
_____
**Plaintiff**

**vs.**

C.A. No._____

*Amer Iqbal*
_____
**Defendant**

## CONSENT ORDER

Upon consideration of the plaintiff's application for a Temporary Restraining Order, and the record herein, and the consent of all parties, it is by the Court this *17* day of *January*, 2007, hereby **Ordered,** that;

~~1. Defendant shall not assault, threaten, harass, or~~ *RST*

~~physically abuse Plaintiff in any manner.~~ *RST*

2. Defendant shall stay at least 100 feet away from the

Plaintiff's X person, X home, X workplace, *except that Defendant may be present at Georgetown University Hospital whenever necessary to assist with the treatment of his minor child.* ~~and~~ *At such times Defendant will stay as far away from Plaintiff as is practicably possible.*

3. Defendant shall not contact the Plaintiff in any manner, *(communicate with)* including but not limited to: X telephone, X in writing,

1

_X_ in any other manner either directly or indirectly,

*(Defendant shall stay away from and not communicate with Plaintiff's [illegible] relatives)*

through a third party.

*5 The court makes no findings whatsoever as to whether any inappropriate conduct has occurred.*

_____
**JUDGE**

*4. This order shall remain in effect until 1/17/08*

_____
Plaintiff

_____
Defendant     1/18/07

2

# Superior Court of the District of Columbia
## CIVIL DIVISION

Tricia Anne Riley

_Plaintiff_

vs.

_Defendant_

Anver Iqbal
5021 Seminary Road #1202
Alexandria, VA 22311

RECEIVED
Civil Clerk's Office
JAN 0 8 2007
Superior Court of the
District of Columbia
Washington, D.C.

No. __0000113-07__

## MOTION - (Pro-Se)

MOTION OF: Tricia Anne Riley          for TRO

(State briefly what you want the Court to do)

Stop harassing behavior at work, home, & home of relatives

| | |
|---|---|
| Printed name:<br>Tricia Anne Riley | Signature: _[signature]_ |
| Address: 3800 Reservoir Rd NW | Home phone no. |
| Kober Cogan Hall #101 | Business phone no. 202-637-5176 |
| Washington, DC 20007 | |

## CERTIFICATE OF SERVICE

On __January 8__ 20 07 I mailed this motion to all the lawyers in the case, the plaintiff(s) and the defendant(s) who do not have lawyers, as listed below:

| | |
|---|---|
| Name:<br>Anver Iqbal | Name: |
| Address:<br>5021 Seminary Rd #1202<br>Alexandria, VA 22311 | Address: |
| | _[signature]_<br>Signature |

## POINTS AND AUTHORITIES

(Write the reasons why the Court should grant your motion and include Court rules, laws and cases, if any, that support your reasons.)

The defendant's behavior has caused disruption at work, in my department and in other department. It has also caused distress to myself, my family, and my co-workers.

_[signature]_
Signature

Form CV-393/Dec 00

# Superior Court of the District of Columbia

## CIVIL DIVISION

Ticia Anne Riley

      Plaintiff

      vs.

Anner Iqbal
5021 Seminary Road #1202
Alexandria, VA 22311

      Defendant

RECEIVED
Civil Clerk's Office
JAN 0 8 2007
Superior Court of the
District of Columbia
Washington, D.C.

No. ___0000113-07___

## MOTION - (Pro-Se)

MOTION OF: _____ for P I

**(State briefly what you want the Court to do)**

Stop harassing behavior at work, home & home of relatives

Printed name: Tricia Anne Riley

Address: 3800 Reservoir Rd NW
Kober Cogan Hall #101
Washington, DC 20007

Signature: _____

Home phone no. _____

Business phone no. 202-687-5176

## CERTIFICATE OF SERVICE

On __January 8__, 2007. I mailed this motion to all the lawyers in the case, the plaintiff(s) and the defendant(s) who do not have lawyers, as listed below:

| Name: | Name: |
|---|---|
| Anner Iqbal | |
| **Address:** | **Address:** |
| 5021 Seminary Road #1202 | |
| Alexandria, VA 22311 | |

Signature

## POINTS AND AUTHORITIES

**(Write the reasons why the Court should grant your motion and include Court rules, laws and cases, if any, that support your reasons.)**

The defendant's behavior has caused disruption at the hospital where I work - in my department and in other departments. It has also caused distress to myself, my family, and my co-workers.

Signature

Form CV-303/Dec 00

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Tricia Anne Riley
3800 Reservoir Rd NW
Leber Logan Hall #S101
Washington, DC 20007

*Plaintiff*

0000113-07

CIVIL ACTION NO. _____

mer Iqbal
021 Seminary Road #1202
Lexandria, VA 22311

*Defendants*

**COMPLAINT**

RECEIVED
Civil Clerk's Office
JAN 0 8 2007
Superior Court of the
District of Columbia
Washington, D.C.

. **Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.**

Saw Mr. Amer Iqbal's son for a hearing test on 6/5/06 at Georgetown University hospital. In July, he called about the test results, and at that time asked me out. I sked that I was not interested. Over the next 6 wks, he called our clinic several times a week, invited me to a dinner & a luncheon, dropped food off at the clinic on 3 occasions & asked in the waiting room to see me one afternoon. On 9/6/06, the department administrator talked to him and told him to stop trying to contact me. On 9/23/06, I received a call from the administrator of another department. She stated that the defendant had placed numerous calls to our staff asking them to contact me on his behalf. He was contacted by hospital security that if not he was told he was not to have any contact with our clinic or the DC Police would be contacted. 4/5/07 the defendant arrived at the home of my parents looking for me.

**Wherefore, Plaintiff demands judgment against Defendant in the sum of $ _____**
ith interest and costs.

Phone: _____

STRICT OF COLUMBIA, SS

Tricia Anne Riley _____, being first duly sworn on oath deposes and says that the
regoing is a just and true statement of the amount owing by defendant to the plaintiff, exclusive of all
-off and just grounds of defense.

_____
(Plaintiff                                    Agent)

bscribed and sworn to before me this ___ day of ___ 20_7.

_____
(Notary Public/Deputy Clerk)

M CV-4013, Nov. 00

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## OFFICE OF THE JUDGE IN CHAMBERS

TO: _Amer IQBAL_                              CASE NO.: _07CA113_

## NOTICE OF HEARING

You are hereby notified that there will be a hearing on Plaintiff's request for

a Temporary Restraining Order (T.R.O.) against you, on

_____1/18/07_____ , at _____230_____ ~~a.m.~~/(p.m.) at
        *(date)*                  *(time)*

D.C. SUPERIOR COURT, 500 Indiana Avenue, N.W., Room 4220, 4th floor.

If you wish to be heard, your presence is required.

WHITE - DEFENDANT        CANARY - PLAINTIFF        PINK - COURT FILE

FORM SO-2064/Jul. 98

CA Form 1

# Superior Court of the District of Columbia

## CIVIL DIVISION

### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001  Telephone: 879-1133

*Tricia Anne Riley*                     *Plaintiff*                              **0000113-07**

vs.                                                                Civil Action No. _____

*Amer Iqbal*                          *Defendant*
*5021 Seminary Road #1202*
*Alexandria, VA  22311*

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Tricia Anne Riley*
Name of Plaintiff's Attorney

*3800 Reservoir Road NW*
Address
*Kober Cogan Hall #101*
*Washington, DC 20007*

Telephone *202-687-5176*

*Clerk of the Court*

By _____
Deputy Clerk

Date    *11 8 07*

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 03

# EXHIBIT E

## THE MISSION OF THE MARRIAGE BUREAU

The mission of the Marriage Bureau, which is in the Family Court of the Superior Court of the District of Columbia, is to issue marriage licenses, maintain accurate and complete records of all marriage licenses, and to issue minister authorizations in the District of Columbia.

The goal of the Marriage Bureau is to provide quality service to all customers in a courteous and expeditious manner. The Marriage Bureau officiates and schedules all civil wedding ceremonies in the District of Columbia.

## HISTORY OF THE MARRIAGE BUREAU

Until 1966, the Marriage Bureau was a division within the U.S. District Court. In 1967, the Marriage Bureau became a part of Superior Court. In November 1987, the Marriage Bureau joined the Family Court of the Superior Court of the District of Columbia. In April 2006, the Marriage Bureau was incorporated into the Domestic Relations Branch of Family Court.

In January 1998, the Marriage Bureau automated the marriage license process. minister application civil wedding calendar and correspondence database to provide quality service to the people of the District of Columbia.

## RESPONSIBILITIES OF THE MARRIAGE BUREAU

The Bureau's responsibilities include:

- receiving and reviewing applications for marriage licenses;

- receiving and reviewing applications for authorization to celebrate marriages in the District of Columbia;

- filing, docketing and maintaining District of Columbia marriage records from 1811 to the present and

- assisting the public in the review of marriage records;

- officiating civil marriages within the Court;

- processing inquiries about Marriage License Search information made in person or through the mail; and

- assisting parties on "How to File A Petition to Correct a Marriage Record"

## THE MARRIAGE BUREAU FEE SCHEDULE

| | |
|---|---|
| Marriage Application And Marriage Certificate | $35.00 $10.00 |
| Minister Registration | $35.00 |
| Certified Marriage Records | $10.00 |
| Record Search (per name/year) | $10.00 |
| Oaths/Affidavits | $1.00 |
| Triple Seal Certificate/Copy | $20.00 |
| Plain Copy per Page | $.50 |

**CASH OR MONEY ORDERS ONLY**

### MARRIAGE BUREAU

OFFICE HOURS

8:30 A.M. TO 5:00 P.M.

MONDAY - FRIDAY
(EXCEPT LEGAL HOLIDAYS)

Information line (202) 879-4840

MARRIAGE BUREAU
D.C. Superior Court
H. Carl MOULTRIE I. Courthouse
500 Indiana Avenue N.W.
Room #4485
Washington, D.C. 20001

# FAMILY COURT
# Marriage Bureau



H. CARL MOULTRIE I COURTHOUSE
SUPERIOR COURT
OF THE
DISTRICT OF COLUMBIA

## MARRIAGE LICENSE INFORMATION

Marriage License Application Cost $35.00 plus and additional $10.00 for certification. Cash or money order: payable to "Clerk of Court."

The minimum age—without the need for consent—to marry in Washington, D.C. is 18 years of age. A 16 year old may marry in Washington, D.C. *only* with the consent of a parent or guardian. *(Proof: driver's license, birth certificate, or passport.)*

Social Security Number, Address, Date of Birth and Home and Work Telephone Numbers of both parties must be provided upon application. Also, previous marriages information, status, city and state.

A blood test for (VDRL) SYPHILIS is required and placed on a DHR 366 form. Must be submitted at application. This premarital blood test is *only good for thirty (30) days*; results can be certified by physicians, clinics, area hospitals, and all military service labs.

*Independent lab results administered outside the District of Columbia should be submitted to D.C. Serology Laboratory, in the John Daly Building (Municipal Center) at 301 "C" Street, N.W., Room 6154, Washington, D.C. 20001, the telephone number is 202 727-8956. ALL BLOOD TEST RESULTS MUST BE ON "BLUE" DHR 366 CARDS,* available at the Serology Laboratory for $10.00 each. Payments must be made by check or money order.

There is a **three-day "Waiting Period"** from the date an application is filed to the date a license is issued (e.g. if one files an application on Monday, the license cannot be issued until Friday)

**YOU MUST HAVE YOUR RECEIPT TO PICK-UP LICENSE. MARRIAGE LICENSES ARE NOT ISSUED BY MAIL.**

## HOW TO SCHEDULE A CIVIL WEDDING CEREMONY

You may request a "CIVIL WEDDING" ten business days from the date of filing the application indicating the date and time you would like to have the civil ceremony performed. Please be mindful that we may not be able to accommodate your request. This request must be given to the Marriage Clerk. The parties should contact the Marriage Clerk by telephone to confirm the requested date.

The Marriage Clerk will make the following arrangements:

- Notify authorized Court-appointed officials who are authorized to perform civil marriages.

- **Schedule** the Marriage Ceremony Room, which holds approximately 10-15 guests.

- Issue a **certified copy** of your marriage license on the day of the ceremony.

A Court-appointed official will perform the marriage ceremony; there is no fee for this service.

## TO RECEIVE A CERTIFIED COPY OF MARRIAGE LICENSE

- You must provide the full names of the groom and bride (Maiden included) and date of marriage.

- Certified Marriage Certificate fee is $10.00, and $.50 for a plain copy. Only cash or money order is accepted. Money orders must be made payable to: Clerk of Court.

- You may either walk-in or request a copy of marriage license by mail.

- Triple Seal Certificate fee is $20.00, payable by cash or money order. If paying by money order, make money order payable to "Clerk of Court." This certificate is generally used for verification of marriage in another country.

## APPLICATION FOR AUTHORIZATION TO CELEBRATE MARRIAGES IN THE DISTRICT OF COLUMBIA

- Application fee of $35.00 (cash or money order).

- Authorization is only good in Washington, D.C.

- Social security number, address, date of birth, home and work telephone numbers must be provided on the application.

- You must have an endorser who is of the same religious society as the applicant and who is currently registered with the Marriage Bureau of Washington, D.C. If there is no endorser, the applicant must request the written procedures for "The Registration of Clergy Without Endorser".

- Authorization is indefinite for District of Columbia marriage ceremonies.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**MARRIAGE BUREAU**
**INFORMATION FOR MARRIAGE LICENSE APPLICATION**

| | | | |
|---|---|---|---|
| License No: _____ | Date: _____ | Book No.: _____ | DISTRICT OF COLUMBIA Page No.: _____ |

Fee Paid: _____ Date on Premarital Blood Test Cards: _____ 2007 FEB 23 A 7:46  Civil Wed.: _____
Y/N       (Blood test results are good for 30 days from date taken.)

Consent Date: _____/_____ Waiver Date: _____
RECEIVED
OFFICE OF THE
MARRIAGE BUREAU DIVISION

I, (Applicant) _____ AMER _____ IQBAL _____
Prefix    First                              MI    Last
do solemnly swear (affirm) that the answers to the following questions true, correct and complete.

Officiant Name: _____ ROBERT     S.     TIGNOR _____
Prefix    First                              MI    Last

Groom's
Name: AMER _____ IQBAL _____ DOB: 01/02/1975 Age: 32
First            MI    Last

Groom's S.S. No: 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 Telephone Nos. (H) 5712776216 (W) _____

Former Marriages # 1   Status: DIVORCED if Divorced, Where was Decree Obtained? PUNJAB/PAKISTAN
City/State

Do you have any pending criminal matters?  Yes _____  No ✓

Legal Residence 17648 TEDLER CIR     ROUNDHILL     VA     20141
Street Address            City            State        Zip Code

Bride's
Name: TRICIA     A     RILEY _____ DOB: 05/07/1974 Age: 33
First            MI    Last

Bride's S.S. No: _____ Telephone Nos. (H) _____ (W) 202-687-5176

Former Marriages # _____ Status: _____ if Divorced, Where was Decree Obtained? _____
City/State

Do you have any pending criminal matters?  Yes _____  No _____

Legal Residence 3800 RESERVOIR ROAD, NW.  KOBER COGAN HALL #101 WASHINGTON D.C. 20007
Street Address            City            State  Zip Code

Kinship Between Bride and Groom: _____ NONE _____
(Blood Relationship)

I understand that any intentional misrepresentation and/or omission of the above information is subject to criminal sanction for perjury pursuant to D.C. Code Section 46-410.

APPLICANT SIGNATURE (S):

_____ 02/20/07

TO REPORT WASTE, FRAUD, OR ABUSE
BY ANY D.C. GOVERNMENT OFFICE OR
OFFICIAL, CALL THE D.C. INSPECTOR
GENERAL AT 1-800-521-1639.

Subscribed and sworn to before me this _____ day of _____

Clerk of the Court,
by Deputy Clerk _____

POSTAL MONEY ORDER

15-800
000

UNITED STATES POSTAL SERVICE®

SERIAL NUMBER
07624 01904

YEAR, MONTH, DAY
2007-02-20

POST OFFICE
201320

U.S. DOLLARS AND CENTS
$****45.00¢

AMOUNT
FORTY FIVE DOLLARS & 00¢    ***********

NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS
SEE REVERSE WARNING

PAY TO
MARRIAGE BUREAU (Superior Court)

ADDRESS 500 Indiana Ave NW
WASHINGTON DC 20001

FROM AMER IQBAL
ADDRESS 17646 Tedler Cir
Dandy VA 20141

CLERK
0009

C.O.D. NO. OR
USED FOR

⑆00000800⑈    076240⑈904⑆

Amer Iqbal
17648 Tedler Cir
Roundhill VA 20141

*Marriage Bureau*

Att. Helen Stinney
Court Clerk

Honary Chief Judge Rufus G. King III, Clerk
Room 3500
Superior Court of District of Columbia
500 Indiana Ave. N.W.
Washington D.C. 20001

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

WASHINGTON, D.C. 20001

OFFICIAL BUSINESS
PENALTY FOR MISUSE

Mr. Amer Iqbal
17048 Tedler Circle
Roundhill, VA. 20141



# EXHIBIT F

### AFFIDAVIT OF SERVICE

Case No: 2007 CA 0000113

Case: Tricia Anne Riley vs Amer Iqbal

The undersigned hereby certifies as follows:

1.  That I am a competent private person over 18 yeas of age and not a party to the above action.

2.  That on the day of _February 16TH 2007_ Time _4:00_ AM/PM, I served on

Description:   Tricia Anne Riley

Location:  Georgetown University Hospital, 3800 Reservoir Road, N.W, Kober Cogan Hall, #101 (Audiology Department) Washington D.C. 20007

**By delivering and leaving the following:**

Attached are the record documents including the Motion of Dismissal for TRO, print out of the transcript by record division at floor 2 dated 02/12/07, letters dated 02/08/07 and 02/06/07 to Hon'ary Sr. Judge Robert S. Tignor with attached copies of the court transcripts, and other proceedings for Case 2007 CA 0000113.

I do solemnly declare and affirm under the penalties of perjury that the matters and facts set forth herein are true and correct to the best of my knowledge, information and belief.

_____
Private Process Server

Subscribed and sworn to me before on this _16TH_ day of _February 2007_

Notary Public _____

My commission expires on _12-14-2011_

B. Tony Snesko
Notary Public, District of Columbia
My Commission Expires 12/14/2011
(Service provided after consultation with Mr. Ricky Malik, attorney at law)

# SERVICE OF APPEARANCE

In the Open Court of Hon'ary Chief Judge Rufus G. King III

Superior Court of District of Columbia
500 Indiana Ave, N.W, Room 3500
Washington D.C. 20001

Time of Appearance: February 19, 2007 @ 8:00 A.M., Room 3500

Case No: 2007 CA 0000113

Tricia Anne Riley vs Amer Iqbal

I will be appearing infront of the Hon'ary Chief Judge to discuss this matter. You are also welcome to appear, if you like to participate in the discussion.

# EXHIBIT G

February 6, 2007


Hon'ary Judge Robert S. Tignor
Superior Court of District of Columbia
500 Indiana Ave, N.W.
Washington D.C. 20001


Dear Sir,


I like to bring your attention to a very sensitive and important matter of "Tempering with the Court Transcripts". I believe you can understand that someone has to be very careful and sure before making this statement. I would not had sent you this letter if I was not sure more than anything about this proceeding or what I am going to state in this letter especially since its only 2 weeks old. I am sending this letter with my trust in you that you will personally look into this matter.

There are sentences, which are changed in the transcript, and an important portion of the proceeding is deleted. I was told by the court reporting desk clerk room 5500 that "she has two versions of the transcripts and she is been paid for it". I considered it as a joke but now after going through the whole transcript I am really concerned about what she said. I called her earlier to check the status on it and she told me that "she is doing it herself and slowly".

When I applied for the transcript, I asked the reporting front desk clerk, if I could get a "Tape" as I had circled the tape, but she told me, I can not. When I called her today to see if the transcripts were ready, the administrator told me to call the transcript office and gave me the contact number for Lori 202-879-1090, who didn't give me any set date or time of pickup. So I came to Courtroom by myself to check today afternoon. After couple of attempts, the court reporting desk clerk gave me the transcript. After reviewing, I went back to the 5500 Room and she was not on the front desk. Another woman came and I asked her for their Supervisor and she told me that it was "Lori Edley". She dialed the number and I mentioned her that a portion of the proceeding is not in the transcript. I also asked her that I wanted to see her but she didn't want to meet me, even when I told her that's its really important. Then she told me " to highlight the portions of the incorrect transcripts and write what was missing and she will add it". I said "You have the tape and you should know it rather than myself telling you what is incorrect or missing" and then she said she will look into this and will call me tomorrow. I don't think its appropriate for the Transcript Supervisor "Lori"?, who sounded like front desk clerk to me, to ask anyone to add /or tell her what's missing in the transcripts, because I believe it's a legal document and tempering with it is a crime. Then a male showed up for few minutes and he was also not so cooperative. This tells me that something is seriously wrong here.

In this court proceeding, besides the temporary restraining order, I was married with this woman "Tricia Anne Riley" by Your Honor. I still remember yours and mine words during the proceedings, when I first said " I want her well being and goodness" and your Honor continued with "in happiness, sickness and health, and till death to not apart" and I said I do your Honor! And then Your Honor looked at her and asked her, and then her attorney as a witness and then

looked at me and said "by District of Columbia Law you both are husband and wife, and you may kiss or hug your bride".

This above portion of the hearing is totally eliminated from the transcript. Also there are other sentences which are changed or omitted. You can imagine that this is a really serious matter for anyone, and so is for me. But seeing this so important portion eliminated and non-cooperation by the court reporter clerks worries me. I think I am in serious trouble if this issue is not addressed promptly. But I also have my full faith in Your Honor and the Judges of this country and that's why I am writing this letter to inform you of this situation. I also like your Honor to look at her attorney's name in the transcript; as for as I remember it was Brad Upshaw or Brad Upshur?

I was told by the Judge that I have 14 days to file an appeal/motion on this case. I have filed a motion for dismissal. When I called to check if there was any hearing date assigned, I was told that "The Judge is sitting on it". I was surprised to hear the words of the phone attendant. I don't mean to complain on everything but there are certain things that don't make sense to any civilized person.

I have worked in the E. Barrett Prettyman Courthouse and have assisted in building the new Annex building. The Judges in this building and also other workers know my work and me very well. You can also contact JD Court Alexandria Virginia Judges, Hon'ary Judge Nolan Dawkins and Hon'ary Judge Constance Frogale and they will also tell you about my character.

I am a very responsible person who understands the legal system, especially after working in the Courthouse for sometime. Same time, I am an ordinary citizen who likes to have his normal life and exercise his rights. I am very well aware of the implications of this letter and its consequences. But I also can not ignore what I have experienced in the past few days and especially today, which I have never experienced before. I have my faith and trust in the legal system. Especially, I am trusting Your Honor and the Clerk who were present in this proceeding. I would have never written this letter to you, if I was not sure by my heart and soul about my marriage. I believe your Honor has the authority to exercise both matters at the same time, which did happen in this proceeding.

I humbly request your Honor to immediately look into this matter and help me getting the correct transcripts. Also, I request a meeting with yourself or Hon'ary Judge Rufus G. King III to discuss this matter in person on your earliest convenience. I am hoping to hear from you soon and also hoping that this matter will be resolved soon and in an amicable manner.

Best Regards,

Amer Iqbal

17648 Tedler Cir
Roundhill, Virginia 20141
Phone 571-277-6216

February 08, 2007


Hon'ary Sr. Judge Robert S. Tignor
Superior Court of District of Columbia
500 Indiana Ave, N.W.
Washington D.C. 20001


Re: Revised Incorrect Transcript


Dear Sir,


I hope you have received my previous letter dated 02-06-2007, regarding the incorrect transcript. I was called today at 10:53 AM by an unknown number, which went to the voice mail. When I checked the message it was by Lori Edley, the court reporting administrator. She said that I can pick up the revised transcript from Room 5500 and that she was sorry for the inconvenience. Also she mentioned that the error was due to my "heavy accent".

When I went to the Room 5500, the same male showed up which I have mentioned in the previous letter. I asked him that I am here to pick up the transcript. He went back and brought the transcript with a yellow tab on the front page, signed dated by Lori. He told me that his name was "Brian" and then he laughed at me. He also said, "we are still doing you". I kept quiet and took the transcript and left.

When I reached home and reviewed it, I noted many changes "especially in the format", which doesn't make sense to me. I have attached a copy of the transcript for your review and you can compare it with the previous copy attached with my 02-06-2007 letter. Still, this is not the complete transcript and has omitted with an important portion of the proceeding, which I have mentioned in my previous letter. The expression (Indiscernible) is deleted from new transcript. New words and a big portion is added, which per Lori's message was not clear due to my heavy accent are both by myself and the Hon'orable Sr. Judge, and the plaintiff. I don't see a reason why it was not clear to her in her first attempt.

Your Ho'nor, this matter is getting really serious. Your court reporting department doesn't seem serious and are tempering with the court records. This new version clearly confirms my earlier complain.

This matter seriously worries me now, and that's the reason why I called your office today and requested your presence in the court of Hon'ary Chief Judge Rufus G. King III on Monday morning at 8:00 AM. I will appreciate if you can come and assist me in my following requests:

• I request your Hon'or to have an <u>Emergency Hearing</u> on tempering of transcript where I can identify the court reporting personal who have made these statements. I have checked the court reporting name's listing on court's web site with no name as Brian. The male who came both times appears to be of Korean Ethnicity. Some how I have a feeling that he is "James

Holland", and I can easily identify him. And I am sure now that this person is behind all the problems.

- Also, I request you to provide me with a copy of <u>"Tape Recording"</u>. If there is a <u>"Video Recording"</u> of this proceeding, I will appreciate if you will allow me to have that too. I can also provide my own transcriber to review/ confirm the recordings, if Your Honor wishes me to do that.

- I will also appreciate if you can please setup an <u>Emergency Hearing date on my Motion</u> as soon as possible, with all the previous attendants, so we can resolve this matter amicably. I have my full faith in your Honor and hoping that you will assist me with fairness in this matter.


Your Honor, my son is seriously sick and is going for a bone marrow transplant soon. I don't like to send these letters but can not ignore the errors in the court records. This whole matter is hurting my work and I have to drive for 3 hours every time I come to the court. I hope Your Honor will understand the situation and will help me in resolving it in a nice manner.


Regards,

Amer Iqbal

17648 Tedler Cir
Roundhill, Virginia 20141
Phone 571-277-6216


CC: Hon'ary Chief Judge Rufus G. King III

February 25, 2007

Hon'ary Chief Judge Rufus G King III
Superior Court of District of Columbia
500 Indiana Ave, N.W.
Washington D.C. 20001

Dear Sir,

I like to bring into your knowledge the attached letter; dated 02/16/2007 and post marked 02/20/2007 by Senior Judge Robert S. Tignor. If you remember our meeting on Monday 02/12/07, when I gave a copy to your Honor both of my letters dated Feb 06 and Feb 08, 2007 with two different versions of transcripts, and a portion of the missing hearing included in Feb 06, 2007 letter. Your Honor allowed me to review the recordings of the hearing and after listening, I showed your Honor the Tag Report print, which only shows few minutes of my case recording. I also told your Honor 06CA8215 case starting after these recordings. And your Honor acknowledged that the tag report reflects the only true transcript of my case.

I am in grave concern by Senior Judge's letter, because I was told otherwise by the court clerk about my Feb 06, 2007 letter and that he was on vacation until April 2007. I also thought that the problem in the transcripts was understood in our last meeting; where as this letter says otherwise.

Also, I received two letters rejecting my motion of rehearing/dismissal, a copy of one was faxed to your Honor on 02/15/2007. None of the two notices bear any date on their cover sheets. After sending your Honor the fax with the attached certificates of service with correctly filed motion, your Honor agreed to see me on 03/05/2007. I have been switched back and forth between the two offices many times in an attempt to setup a hearing date.

I think its time for me to start thinking to move my case to some other court, where I am properly heard. I still like to meet with your Honor as per our discussion on 03/05/2007.

Also, I like to bring into your knowledge some of my personal responsibilities. I have a 2-1/2 years old son who looks like 1 year old, because of a serious blood disorder. I am going for his bone marrow transplant starting next month, so he can have a normal future life and don't have to be blood transfused on monthly basis. I have been doing this for more than 2 years now. I have old parents back home that I have to look for. I would be the last person to get into any situation that can harm the future of my son.

Any sensible person if reviews her complaint for the restraining order and my motion; can make sense that it's merely a misunderstanding caused by her department administrators and can be resolved easily with a sincere effort. I don't think any person would like to get into the habit of complaining about the transcript problems or the other court records without any genuine reason.

As for as complying with the consent order is concerned, I am in full compliance with it and wish to do the same; until I have a new written revised court order.

Best Regards,

Amer Iqbal
17648 Tedler Cir
Roundhill, Virginia 20141

Attachments: Senior Judge Robert S. Tignor letter dated Feb 16, 2006
Court Tag Report on Feb 12, 2007 recordings review

```
        FRIENDSHIP POST OFFICE
   WASHINGTON, District of Columbia
              200169998
          1050050234 -0094
/27/2007   (202)523-2130    01:24:55 PM
```

```
              Sales Receipt
oduct          Sale  Unit        Final
scription      Qty   Price       Price

SHINGTON DC 20002                $4.05
iority Mail
.50 oz.
                              ========
ssue PVI:                        $4.05

 6x9 Env -      1    $0.39       $0.39

SHINGTON DC 20001                $0.39
rst-Class
.00 oz.
onmach First-Class               $0.13
                              ========
ssue PVI:                        $0.52

                              ========
:al:                             $4.96

d by:
;a                               $4.96
ccount #:        XXXXXXXXXXXX0012
pproval #:       264913
ransaction #:    928
3 902891811

ler stamps at USPS.com/shop or call
00-Stamp24.  Go to
S.com/clicknship to print shipping
els with postage.  For other
ormation call 1-800-ASK-USPS.
1#: 1000603079921
rk: 08

All sales final on stamps and postage.
Refunds for guaranteed services only.
     Thank you for your business.
          Customer Copy
```

# Fax

| | | | |
|---|---|---|---|
| **To:** | Hon'ary Chief Judge Rufus King | **From:** | Amer Iqbal |
| **Fax:** | 202-879-7830 | **Pages:** | 11 |
| **Phone:** | 202-879-1600 | **Date:** | 02/15/07 |
| **Re:** | | **Phone:** | 571-277-6216 |

x **Urgent**    ☐ **For Review**    ☐ **Please Comment**    x **Please Reply**    ☐ **Please Recycle**

Please review this rejection letter for not providing the certificate of service and the proposed order. I was not aware of the procedure and had mailed a copy of the motion earlier, without anything attached with it.

The complete motion was filed on March JAN 31, 2007 with certificate of service and envelopes and mailing labels, please see attached.

I will appreciate if you can please help me in setting up an Emergency Hearing with Hon'ary Sr. Judge Robert S. Tignor, as he is fully aware of this matter.


Thanks

```
***  ACTIVITY REPORT  ***
****************************
```

| ST. TIME | DESTINATION NUMBER | DESTINATION ID | NO. | MODE | | PGS. | RESULT | |
|---|---|---|---|---|---|---|---|---|
| *03/13 11:53 | 12026860050 | | | | | | | |
| *03/13 15:32 | | | 0107 | TRANSMIT | ECM | 3 | OK | 00'24 |
| *03/16 13:35 | 13154374508 | | 5027 | AUTO RX | ECM | 2 | OK | 00'51 |
| | | | 0108 | TRANSMIT | | 0 | NG | 00'00 |
| *03/16 13:37 | 13154374508 | | | | | 0 | STOP | |
| *03/16 13:47 | | | 0109 | TRANSMIT | ECM | 12 | OK | 04'14 |
| *03/16 14:51 | 12026860050 | | 5028 | AUTO RX | ECM | 1 | OK | 00'38 |
| 03/18 12:01 | 12022721922 | | 0110 | TRANSMIT | ECM | 2 | OK | 00'39 |
| | | | 0111 | TRANSMIT | | 0 | NG | 00'00 |
| 03/18 12:07 | 13012721922 | | | | | 0 | STOP | |
| 03/18 12:08 | 12022727449 | | 0113 | TRANSMIT | ECM | 6 | OK | 01'24 |
| | | | 0112 | TRANSMIT | | 0 | NG | 00'00 |
| 03/18 20:56 | 2 | | | | | 0 | STOP | |
| | | | 0114 | TRANSMIT | | 0 | NG | 00'00 |
| 03/21 10:45 | | | | | | 0 | STOP | |
| 03/22 10:09 | 17044276652 | | 5029 | AUTO RX | ECM | 8 | OK | 01'38 |
| 03/22 10:10 | 17044276652 | | 0115 | TRANSMIT | ECM | 1 | OK | 00'25 |
| 03/22 10:45 | | | 0116 | TRANSMIT | ECM | 1 | OK | 00'25 |
| | | | 5030 | MANUAL RX | | 0 | NG | 00'44 |
| 03/22 15:30 | 13012727449 | | | | | 0 | #005 | |
| 03/22 16:09 | 13012721922 | | 0117 | TRANSMIT | ECM | 1 | OK | 00'18 |
| 03/22 17:08 | 12027890444 | Transfer of case + docket info | 0118 | TRANSMIT | ECM | 1 | OK | 00'22 |
| | | | 0119 | TRANSMIT | | 0 | NG | 00'00 |
| 03/22 17:09 | 12028790444 | | | | | 0 | #018 | |
| 03/23 11:00 | | | 0120 | TRANSMIT | ECM | 3 | OK | 01'15 |
| 03/26 14:01 | 12028790444 | | 5031 | AUTO RX | ECM | 1 | OK | 00'20 |
| | | | 0121 | TRANSMIT | ECM | 7 | OK | 02'02 |

*(handwritten)* Notice of Removal
docket info & Notice

Faxed to Natalie
Judge Lynn Chambers Clerk
Leibbitz

# EXHIBIT H

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## WASHINGTON, D.C. 20001-2131

Civil Actions Branch
Clerk's Office JM-170
(202) 879-1133  (1134)
1400

# NOTICE OF MOTION REJECTION

Date:

To: *Amer Iqbal*

Civil Actions Number: *07CA113*

Calendar No./ Judge: Calendar No. *Cal #11 / J. Leibovitz*

THE ATTACHED MOTION IS HEREWITH REJECTED FOR THE FOLLOWING REASON(S):

☐ $20.00 filing fee was not included with your motion.

☐ Non-compliance with Rule 5(e).

☒ Other: *Party failed to include a certificate of service, and proposed order for the judge's signature.*

A copy of this *NOTICE* was sent to the Judge to whom the case is assigned, and to all of the parties listed in your certificate of service.

**A new certificate of service and a courtesy copy for the Judge (including mailing labels/envelopes) are *REQUIRED* upon re-submission of a rejected motion for filing with the clerk.**

Duane B. Delaney
Clerk of the Court

By:     Jamila Colaire
        Deputy Clerk

# IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

MOTION OF APPEAL FOR THE DISMISSAL OF THE TEMPORARY RESTRAINING ORDER

Case No: CA 0000113-07

Petitioner:

Tricia Anne Riley

Defendant:

Amer Iqbal

      This Motion of Appeal/Rehearing is brought to your Court for the appeal from the decision of the Court entry of the Temporary Restraining Order dated January 18, 2007. This Motion is made for the following reasons:

1. The Defendant was served with the papers just few hours before this hearing; that he only had time to drive in to the courthouse; that he did not have time to seek the advise of legal counsel or prepare for his defense; and he was not ready to address the complaints by the petitioner.

2. Despite the fact that the defendant agreed to the order requested by the Petitioner, the Defendant was initially concerned that the Petitioner was either in trouble by her family or by the security and the Defendant thought that agreeing to the consent order would assist the Petitioner; the Defendant failed to have proper legal advise as to the impact of the Order on him.

3. We both showed interest in each other the day we met. Her response was "I don't know" in the beginning but in the very few phone calls we had, I told her that I was looking for a life long relationship and her answer was Yes. Then there was continuous encouragement from her administrators for the food and the phone calls.

4. After couple of weeks, I received a call from the security. The next day on my son's appointment, I left a message to the director of her department to clear this misunderstanding. But she didn't come or return my call. When the security arrived, I asked them for the same but they didn't cooperate in this matter. After explaining some of the situation they showed some cooperation.

5. Few days prior to 1/5/07, I was tipped by one of the known friend about where she lives and was told that she was interested in meeting with me. I was a bit concerned but then considered it an opportunity to clear the past misunderstanding before going to North Carolina. I was cordial with the person who opened the door for me and overall he was also understanding.

6. The Defendant was lip tight from the beginning in order to mitigate the situation in a nicely manner. I am conservative, professional and an educated person, who understands the work ethics. The reason why I have to come back was that after putting some thought I came to the conclusion that my silence was causing more harms than benefiting anyone.

7.  The Defendant was also under duress about this whole situation since he was contacted by the security of the hospital. The Defendant's 2-1/2 year son goes to the same hospital for treatment and the Defendant was concerned for the welfare of his son. The Defendant did not consider the legal impact the Order may have on his attendance and to the medical needs of his son. The crew of the hospital including all doctors and nurses has been very professional and caring to his son. The Defendant does not want to have anything effect his ability to continue the hospital care of his son, in future.


    Due to the Defendant being unable to timely seek legal advise or to understand the significance of the Temporary Restraining Order and its restrictive requirements; the Defendant respectfully requests an appeal/rehearing of the issuance of the Order.


Respectfully,

Amer Iqbal

17652 Tedler Cir
Roundhill, Virginia 20141

A TRUE COPY
TEST:

*Superior Court of the District of Columbia*
*Deputy Clerk*

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

*Tricia Anne Riley*
_____
**Plaintiff**

vs.

*Amer Iqbal*
_____
**Defendant**

C.A. No._____

## CONSENT ORDER

Upon consideration of the plaintiff's application for a Temporary Restraining

Order, and the record herein, and the consent of all parties, it is by the Court

this _12_ day of _January_, 2007, hereby **Ordered,** that;

~~1. Defendant shall not assault, threaten, harass, or~~ *RST*

~~physically abuse Plaintiff in any manner.~~ *RST*

**2.** Defendant shall stay at least 100 feet away from the

Plaintiff's _X_ person, _X_ home. _X_ workplace, *except that Defendant*
*may be present at Georgetown University Hospital whenever*
*necessary to assist with the treatment of his minor child.*
~~and~~ *Defendant will stay as far away from Plaintiff*
*At such times as is practicably possible.*

**3.** Defendant shall not contact the Plaintiff in any manner,
*(communicate with)*

including but not limited to: _X_ telephone, _X_ in writing,

1

__X__ in any other manner either directly or indirectly,

(Defendant shall stay away from and not relatives')
through a third party. communicate with Plaintiff's friends

5 The court makes no findings whatsoever as to whether any
inappropriate conduct has occurred.

_Robert C. Tignor_

**JUDGE**

4. This order shall remain in effect until 1/17/08

_____
Plaintiff

_____ 1/18/07
Defendant

2

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL CLERKS OFFICE

500 INDIANA AVE., N.W.

ROOM 170

WASHINGTON, D.C. 20001 - 9976

OFFICIAL BUSINESS

PENALTY FOR MISUSE



Amer elqbal
17648 Dedler Circle
Bound Hill, VA 20141

 

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001
(202) 879-1133

**REJECTION SHEET**

RE: Riley vs Iqbal _____ C.A. No._____

The ___Motion_____ received/filed on _____

cannot be accepted for filing and is returned herewith for the following reason(s):

☐ U.S. Marshals Service Form not included.

☐ Pleading not signed as required by court rule.

☐ Required number of summonses/complaints were not included.

☐ Default/Default Judgment was entered on _____ , see SCR-Civ. 55(a)-60(b).

☐ Time for filing answer expired on _____.

☐ Check # _____ for payment of _____ was
made
out incorrectly _____.

☑ Fee (Check) not included for : _X_____.

☐ Not timely filed.

☐ Locational information of attorney not reflected (SCR-Civ. 101-(c)).

☐ Unified bar number not included as required by court rule.

☐ Leave of Court required for filing: _____.

☐ Incorrect case number on pleading.

☐ No certificate of service/mailing.

☐ Civil Division lacks jurisdiction — should be filed with _____
_____ ____.

☐ Requires signatures of all parties who have appeared.

☐ Non-compliance with SCR- Civ.-33.

☐ _____
_____
_____
_____

**NOTICE:** New certificate of service is required when resubmitting a rejected pleading.
**RETURN TO ABOVE ADDRESS:**
**RETURNED TO:** _____

**DATE:** _____        **DEPUTY CLERK** _____

Form CV-625/Aug. 00

WHITE—PLAINTIFF        CANARY—DEFENDANT        PINK—COURT FILE

# IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

### MOTION OF APPEAL FOR THE DISMISSAL OF THE TEMPORARY RESTRAINING ORDER

Petitioner:

Case No: CA 0000113-07

Tricia Anne Riley

**REJECTED & RETURNED**

FEB 7 2007

Defendant:

Civil Clerk's Office
Superior Court of the
District of Columbia

Amer Iqbal

     This Motion of Appeal/Rehearing is brought to your Court for the appeal from the decision of the Court entry of the Temporary Restraining Order dated January 18, 2007. This Motion is made for the following reasons:

1. The Defendant was served with the papers just few hours before this hearing; that he only had time to drive in to the courthouse; that he did not have time to seek the advise of legal counsel or prepare for his defense; and he was not ready to address the complaints by the petitioner.

2. Despite the fact that the defendant agreed to the order requested by the Petitioner, the Defendant was initially concerned that the Petitioner was either in trouble by her family or by the security and the Defendant thought that agreeing to the consent order would assist the Petitioner; the Defendant failed to have proper legal advise as to the impact of the Order on him.

3. We both showed interest in each other the day we met. Her response was "I don't know" in the beginning but in the very few phone calls we had, I told her that I was looking for a life long relationship and her answer was Yes. Then there was continuous encouragement from her administrators for the food and the phone calls.

4. After couple of weeks, I received a call from the security. The next day on my son's appointment, I left a message to the director of her department to clear this misunderstanding. But she didn't come or return my call. When the security arrived, I asked them for the same but they didn't cooperate in this matter. After explaining some of the situation they showed some cooperation.

5. Few days prior to 1/5/07, I was tipped by one of the known friend about where she lives and was told that she was interested in meeting with me. I was a bit concerned but then considered it an opportunity to clear the past misunderstanding before going to North Carolina. I was cordial with the person who opened the door for me and overall he was also understanding.

6. The Defendant was lip tight from the beginning in order to mitigate the situation in a nicely manner. I am conservative, professional and an educated person, who understands the work ethics. The reason why I have to come back was that after putting some thought I came to the conclusion that my silence was causing more harms than benefiting anyone.

7.  The Defendant was also under duress about this whole situation since he was contacted by the security of the hospital. The Defendant's 2-1/2 year son goes to the same hospital for treatment and the Defendant was concerned for the welfare of his son. The Defendant did not consider the legal impact the Order may have on his attendance and to the medical needs of his son. The crew of the hospital including all doctors and nurses has been very professional and caring to his son. The Defendant does not want to have anything effect his ability to continue the hospital care of his son, in future.

    Due to the Defendant being unable to timely seek legal advise or to understand the significance of the Temporary Restraining Order and its restrictive requirements; the Defendant respectfully requests an appeal/rehearing of the issuance of the Order.

Respectfully,

Amer Iqbal

17652 Tedler Cir
Roundhill, Virginia 20141

A TRUE COPY
TEST:
Superior Court of
the District of Columbia
Deputy Clerk

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

_Tricia Anne Riley_
_____
**Plaintiff**

vs.

C.A. No._____

_Amer Iqbal_
_____
**Defendant**

## CONSENT ORDER

Upon consideration of the plaintiff's application for a Temporary Restraining Order, and the record herein, and the consent of all parties, it is by the Court this _12_ day of _January_____, 200_7_ hereby **Ordered,** that;

1. ~~Defendant shall not assault, threaten, harass, or~~ _RST_
~~physically abuse Plaintiff in any manner.~~ _RST_

**1.** Defendant shall stay at least 100 feet away from the

Plaintiff's _X_ person, _X_ home. _X_ workplace, _except that Defendant may be present at Georgetown University Hospital whenever necessary to assist with the treatment of his minor child. and At such times Defendant will stay as far away from Plaintiff as is practicably possible._

**3.** Defendant shall not contact the Plaintiff in any manner, _(communicate with)_

including but not limited to: _X_ telephone, _X_ in writing,

1

_X_ in any other manner either directly or indirectly,

*Defendant shall stay away from and not*

through a third party. *communicate with Plaintiff's ~~friends~~ + relatives";*

*5 The court makes no findings whatsoever as to whether any*
*inappropriate conduct has occurred.*

_____

**JUDGE**

*4. This order shall remain in effect until 1/17/08*

_____

Plaintiff

_____

Defendant

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL CLERKS OFFICE**
500 INDIANA AVE., N.W.
ROOM 170
WASHINGTON, D.C. 20001-9976

OFFICIAL BUSINESS
PENALTY FOR MISUSE



AMER IQBAL
17652 TEDLER Cir
Roundhill, VA. 20141



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

**TRICIA ANN RILEY**         :
Plaintiff                   :          **Civil Action No.  2007 CA 000113B**
                            :
        v.                  :
                            :
**AMER IQBAL**               :
Defendant                   :          **Judge Lynn Leibovitz**
_____ :

## **ORDER**

This matter is before the court on Defendant's Motion to Dismiss Temporary

Restraining Order, filed on January 31, 2007.

The Defendant failed to file proof of service of her motion as required by Rule 5-I

of the D.C. Superior Court Rules of Civil Procedure.  Therefore, it is this 28ᵗʰ day of

February 2007,

**ORDERED** that the Defendant's Motion to Dismiss Temporary Restraining

Order is **DENIED** without prejudice.

_____
**Lynn Leibovitz**
**Associate Judge**
**(signed in chambers)**

cc:

Amer Iqbal
17648 Tedler Circle
Roundhill, VA 20141

Bradford J. Roegge
101 South Washington Street
Rockville, MD 20850



Tricia Ann Riley
3800 Reservoir Road, NW
Kober Cogan Hall #101
Washington, DC

Superior Court of the District of Columbia
Chambers of Judge Lynn Leibovitz
Washington, D.C. 20001

2014142171 R0004

Amer Iqbal
17648 Tedler Circle
Roundhill, VA 20141



**Superior Court of the District of Columbia**

**Washington, D.C. 20001**

Chambers of
**Robert S. Tignor**
Senior Judge

February 16, 2007

Mr. Amer Iqbal
17648 Tedler Cir.
Roundhill VA 20141

Re: Riley v. Iqbal, 2007 CA 113

Dear Mr. Iqbal,

This is written in response to your letters of February 6, 2007 and February 8, 2007.

In your letter of February 6, 2007, you state, with reference to the hearing of January 18, 2007,

"In this court proceeding, besides the temporary restraining order, I was married with this woman 'Tricia Anne Riley' by Your Honor. I still remember yours and mine words during the proceedings, when I first said 'I want her well being and goodness' and your Honor continued with 'in happiness, sickness and health, and till death to not apart' and I said I do your Honor! And then Your Honor looked at her and asked her, and then her attorney as a witness and then looked at me and said "by District of Columbia Law you both are husband and wife, and you may kiss or hug your bride'."

Mr. Iqbal, no such words were spoken. The transcript appended to your letters accurately reflects what was said during the hearing, hence your request for an "emergency hearing on tampering of transcript" is denied.

I take this opportunity to remind you that if you violate the directives of the court's order of January 18, 2007, you would therefore be subject to imprisonment for contempt of court.

Sincerely,

Robert S. Tignor, Senior Judge

Copy:

Bradford J. Roegge, Esquire

# Superior Court of the District of Columbia
## CIVIL DIVISION

TRICIA ANNE RILEY

Plaintiff

vs.

AMER IQBAL

Defendant

RECEIVED
Civil Clerk's Office
JAN 31 2007
Superior Court of the
District of Columbia
Washington, D.C.

No. 2007 CA 000113 B

AMER IQBAL

## MOTION - (Pro-Se)

MOTION OF: DISMISSAL APPEAL    for    TEMPORARY RESTRAINING ORDER

(State briefly what you want the Court to do)

DISMISS THE TEMPORARY RESTRAINING
ORDER DATED 1/8/07

| Printed name: AMER IQBAL | Signature: |
|---|---|
| Address: 17648 TEDLER CIR, ROUNDHILL VA 20141 | Home phone no. |
| | Business phone no. 571-277-6216 |

## CERTIFICATE OF SERVICE

On 31ST OF JANUARY , 20 06 , I mailed this motion to all the lawyers in the case, the plaintiff(s) and the defendant(s) who do not have lawyers, as listed below:

| Name: AMER IQBAL | Name: |
|---|---|
| Address: 17648 TEDLER CIR ROUNDHILL VA 20141 | Address: |
| | Signature |

## POINTS AND AUTHORITIES

(Write the reasons why the Court should grant your motion and include Court rules, laws and cases, if any, that support your reasons.)

PLEASE SEE ATTACHED MOTION OF APPEAL

Signature

Form CV-393/Dec 00

# Superior Court of the District of Columbia
## CIVIL DIVISION

TRICIA ANNE RILEY
Plaintiff

vs.

AMER IQBAL
Defendant

No. 2007 CA 000113 B

RECEIVED
Civil Clerk's Office
JAN 3 2007
Superior Court of the
District of Columbia
Washington, D.C.

AMER IQBAL

## MOTION - (Pro-Se)

MOTION OF: DISMISSAL APPEAL    for    TEMPORARY RESTRAINING ORDER

(State briefly what you want the Court to do)

DISMISS THE TEMPORARY RESTRAINING
ORDER DATED 1/16/07

| Printed name: AMER IQBAL | Signature: |
|---|---|
| Address: 17648 TEDLER CIR, ROUNDHILL VA 20141 | Home phone no. |
| | Business phone no. 571-277-8216 |

## CERTIFICATE OF SERVICE

On _____, 20__, I mailed this motion to all the lawyers in the case, the plaintiff(s) and the defendant(s) who do not have lawyers, as listed below:

| Name: AMER IQBAL | Name: |
|---|---|
| Address: | Address: |

Signature

## POINTS AND AUTHORITIES

(Write the reasons why the Court should grant your motion and include Court rules, laws and cases, if any, that support your reasons.)

PLEASE SEE ATTACHED MOTION OF APPEAL

Signature

Form CV-392/Dec 00

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

MOTION ~~OF APPEAL~~ FOR THE DISMISSAL OF THE TEMPORARY RESTRAINING ORDER

Petitioner:                                          Case No: CA 0000113-07

Tricia Anne Riley


Defendant:

Amer Iqbal


        This Motion of Appeal/Rehearing is brought to your Court for the appeal from the decision of the Court entry of the Temporary Restraining Order dated January 18, 2007. This Motion is made for the following reasons:

1.  The Defendant was served with the papers just few hours before this hearing; that he only had time to drive in to the courthouse; that he did not have time to seek the advise of legal counsel or prepare for his defense; and he was not ready to address the complaints by the petitioner.

2.  Despite the fact that the defendant agreed to the order requested by the Petitioner, the Defendant was initially concerned that the Petitioner was either in trouble by her family or by the security and the Defendant thought that agreeing to the consent order would assist the Petitioner; the Defendant failed to have proper legal advise as to the impact of the Order on him.

3.  We both showed interest in each other the day we met. Her response was "I don't know" in the beginning but in the very few phone calls we had, I told her that I was looking for a life long relationship and her answer was Yes. Then there was continuous encouragement from her administrators for the food and the phone calls.

4.  After couple of weeks, I received a call from the security. The next day on my son's appointment, I left a message to the director of her department to clear this misunderstanding. But she didn't come or return my call. When the security arrived, I asked them for the same but they didn't cooperate in this matter. After explaining some of the situation they showed some cooperation.

5.  Few days prior to 1/5/07, I was tipped by one of the known friend about where she lives and was told that she was interested in meeting with me. I was a bit concerned but then considered it an opportunity to clear the past misunderstanding before going to North Carolina. I was cordial with the person who opened the door for me and overall he was also understanding.

6.  The Defendant was lip tight from the beginning in order to mitigate the situation in a nicely manner. I am conservative, professional and an educated person, who understands the work ethics. The reason why I have to come back was that after putting some thought I came to the conclusion that my silence was causing more harms than benefiting anyone.

7.  The Defendant was also under duress about this whole situation since he was contacted by the security of the hospital. The Defendant's 2-1/2 year son goes to the same hospital for treatment and the Defendant was concerned for the welfare of his son. The Defendant did not consider the legal impact the Order may have on his attendance and to the medical needs of his son. The crew of the hospital including all doctors and nurses has been very professional and caring to his son. The Defendant does not want to have anything effect his ability to continue the hospital care of his son, in future.


        Due to the Defendant being unable to timely seek legal advise or to understand the significance of the Temporary Restraining Order and its restrictive requirements; the Defendant respectfully requests an appeal/rehearing of the issuance of the Order.



Respectfully,

Amer Iqbal

17648
17652 Tedler Cir
Roundhill, Virginia 20141

# EXHIBIT I

# IN THE CIRCUIT COURT OF ALEXANDRIA, VIRGINIA

Petitioner:

Amer Iqbal

Case # CL 07001469

Respondent:

Tricia Anne Riley

## NOTICE OF WITHDRAWL

After discussion with the Alexandria Circuit Court, that since this case is moved from Superior Court to USDC 333 Constitution Ave, N.W. Washington D.C 20001, I am sending this notice to withdraw and close this case in Alexandria, Circuit Court.

Sincerely,

3/21/07

Amer Iqbal
17648 Tedler Cir
Roundhill, Virginia 20141
Phone  571-277-6216

(A copy of this letter is also mailed to USDC 333 Constitution Ave Washington D.C 20001, Tricia Anne Riley 3800 Reservoir Road, N.W. Washington D.C. 20007 and Bradford J. Roegge 101 South Washington St. Rockville, MD 20850)

**IN THE CIRCUIT COURT OF ALEXANDRIA, VIRGINIA**

FILED
CLERK OF COURTS
ALEXANDRIA

MOTION OF APPEAL FOR THE REHEARING/ DISMISSAL OF THE
TEMPORARY CONSENT RESTRAINING ORDER

FEB 26   11 07 AM   07

EDWARD SEMONIAN. CLERK

BY _____

DEPUT CLERK

Case No: 2007 CA 113

CL0700 1469

~~Petitioner~~  RESPONDENT:

Tricia Anne Riley
3800 RESERVOIR RD, N.W.
KOBER COGAN HALL #101, WASHINGTON D.C. 20007
~~Defendant:~~  PETITIONER:

Amer Iqbal


       This Motion of Appeal/Rehearing is brought to your Court for the appeal from the decision of the Court entry of the Temporary Restraining Order dated January 18, 2007. This Motion is made for the following reasons:

1. The Defendant was served with the summons just few hours before this hearing; that he only had time to drive in to the courthouse; that he did not have time to seek the advise of legal counsel or prepare for his defense; and he was not ready to address the complaints by the petitioner.

2. Despite the fact that the defendant agreed to the order requested by the Petitioner, the Defendant was initially concerned that the Petitioner was either in trouble by her family or by the security and the Defendant thought that agreeing to the consent order would assist the Petitioner; the Defendant failed to have proper legal advise as to the impact of the Order on him.

3. We both showed interest in each other the day we met. Her response was "I don't know" in the beginning but in the very few phone calls we had, I told her that I was looking for a life long relationship and her answer was Yes. Then there was continuous encouragement from her administrators for the food and the phone calls.

4. After couple of weeks, I received a call from the security. The next day on my son's appointment, I left a message to the director of her department to clear this misunderstanding. But she didn't come or return my call. When the security arrived, I asked them for the same but they didn't cooperate in this matter. After explaining some of the situation they showed some cooperation.

5. Few days prior to 1/5/07, I was tipped by one of the known friend about where she lives and was told that she was interested in meeting with me. I was a bit concerned but then considered it an opportunity to clear the past misunderstanding before going to North Carolina. I was cordial with the person who opened the door for me and overall he was also understanding.

6. The Defendant was lip tight from the beginning in order to mitigate the situation in a nicely manner. I am conservative, professional and an educated person, who understands the work ethics. The reason why I have to come back was that after putting some thought I came to the conclusion that my silence was causing more harms than benefiting anyone.

**IN THE CIRCUIT COURT OF ALEXANDRIA, VIRGINIA**

FILED
CLERK OF COURTS
CITY OF ALEXANDRIA

MOTION OF APPEAL FOR THE REHEARING/ DISMISSAL OF THE
TEMPORARY CONSENT RESTRAINING ORDER

FEB 26   11 07 AM   07

EDWARD SEMONIAN, CLERK

BY _____
DEPUTY CLERK

~~Petitioner:~~ RESPONDENT:

Case No: 2007 CA 113

CL07001469

Tricia Anne Riley
3800 RESERVOIR RD, N.W.
KOBER COGAN HALL #101, WASHINGTON D.C. 20007
~~Defendant:~~ PETITIONER:

Amer Iqbal


      This Motion of Appeal/Rehearing is brought to your Court for the appeal from the decision of the Court entry of the Temporary Restraining Order dated January 18, 2007. This Motion is made for the following reasons:

1.  The Defendant was served with the summons just few hours before this hearing; that he only had time to drive in to the courthouse; that he did not have time to seek the advise of legal counsel or prepare for his defense; and he was not ready to address the complaints by the petitioner.

2.  Despite the fact that the defendant agreed to the order requested by the Petitioner, the Defendant was initially concerned that the Petitioner was either in trouble by her family or by the security and the Defendant thought that agreeing to the consent order would assist the Petitioner; the Defendant failed to have proper legal advise as to the impact of the Order on him.

3.  We both showed interest in each other the day we met. Her response was "I don't know" in the beginning but in the very few phone calls we had, I told her that I was looking for a life long relationship and her answer was Yes. Then there was continuous encouragement from her administrators for the food and the phone calls.

4.  After couple of weeks, I received a call from the security. The next day on my son's appointment, I left a message to the director of her department to clear this misunderstanding. But she didn't come or return my call. When the security arrived, I asked them for the same but they didn't cooperate in this matter. After explaining some of the situation they showed some cooperation.

5.  Few days prior to 1/5/07, I was tipped by one of the known friend about where she lives and was told that she was interested in meeting with me. I was a bit concerned but then considered it an opportunity to clear the past misunderstanding before going to North Carolina. I was cordial with the person who opened the door for me and overall he was also understanding.

6.  The Defendant was lip tight from the beginning in order to mitigate the situation in a nicely manner. I am conservative, professional and an educated person, who understands the work ethics. The reason why I have to come back was that after putting some thought I came to the conclusion that my silence was causing more harms than benefiting anyone.

7.  The Defendant was also under duress about this whole situation since he was contacted by the security of the hospital. The Defendant's 2-1/2 year son goes to the same hospital for treatment and the Defendant was concerned for the welfare of his son. The Defendant did not consider the legal impact the Order may have on his attendance and to the medical needs of his son. The crew of the hospital including all doctors and nurses has been very professional and caring to his son. The Defendant does not want to have anything effect his ability to continue the hospital care of his son, in future.

   Due to the Defendant being unable to timely seek legal advise or to understand the significance of the Temporary Restraining Order and its restrictive requirements; also that the court transcripts are not correct and non-cooperation of the DC Court Clerk's in assigning a rehearing date, the Defendant respectfully requests an appeal/rehearing of the issuance of the Order in this court.

Respectfully,

Amer Iqbal

17648 Tedler Cir
Roundhill, Virginia 20141
Phone    571-277-6216

**A TRUE COPY**

TEST:

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

PLAINTIFF'S
EXHIBIT
1

_Tricia Anne Riley_
_____
**Plaintiff**

**vs.**

_Amer Iqbal_
_____
**Defendant**

C.A. No. _CL0700469_

## CONSENT ORDER

Upon consideration of the plaintiff's application for a Temporary Restraining Order, and the record herein, and the consent of all parties, it is by the Court this _18_ day of _January_____, 200_7_, hereby **Ordered,** that;

~~1. Defendant shall not ___assault, ___threaten, ___harass, or~~ _RSI_

~~_____ physically abuse Plaintiff in any manner.~~_____ _RSI_

**1.** Defendant shall stay at least 100 feet away from the

Plaintiff's _X_ person, _X_ home, _X_ workplace, _except that Defendant may be present at Georgetown University Hospital whenever necessary to assist with the treatment of his minor child. At such times Defendant will stay as far away from Plaintiff as is practicably possible._

**2.** Defendant shall not~~and~~ contact the Plaintiff in any manner,

_(communicate with)_

including but not limited to: _X_ telephone, _X_ in writing,

or _X_ in any other manner either directly or indirectly *(Defendant shall stay away from and not*

through a third party. *communicate with Plaintiff's ~~friends~~ + relatives*

*as to whether any.*

3. *The court makes no findings whatsoever as to whether any inappropriate conduct has occurred.*

*Robert E. _____*

_____
**JUDGE**

4. *This order shall remain in effect until 1/17/08*

_____
Plaintiff

_____
Defendant     *1/18/07*

2

# Superior Court of the District of Columbia
## CIVIL DIVISION

PLAINTIFF'S
EXHIBIT
2

Tricia Anne Riley

Plaintiff

vs.

Anner Iqbal
5021 Seminary Road #1202
Alexandria, VA 22311

Defendant

RECEIVED
Civil Clerk's Office
JAN 08 2007
Superior Court of the
District of Columbia
Washington, D.C.

No. 0000113-07

## MOTION - (Pro-Se)

MOTION OF: Tricia Anne Riley          for TRO

**(State briefly what you want the Court to do)**

Stop harassing behavior at work, home, & home of relatives

Printed name: Tricia Anne Riley

Address: 3800 Reservoir Rd NW
Kober Cogan Hall #101
Washington, DC 20007

Signature: [signature]

Home phone no.

Business phone no. 202-687-5176

## CERTIFICATE OF SERVICE

On January 8 _____, 20 07. I mailed this motion to all the lawyers in the case,
the plaintiff(s) and the defendant(s) who do not have lawyers, as listed below:

| Name: Anner Iqbal | Name: |
|---|---|
| Address: 5021 Seminary Rd #1202 Alexandria, VA 22311 | Address: |

Signature: [signature]

## POINTS AND AUTHORITIES

**(Write the reasons why the Court should grant your motion and include Court rules, laws and cases, if any, that support your reasons.)**

The defendant's behavior has caused disruption at work,
in my department and in other department. It has also
caused distress to myself, my family, and my co-workers.

Signature: [signature]

Form CV-393(Dec '00)

# Superior Court of the District of Columbia
## CIVIL DIVISION

PLAINTIFF'S
EXHIBIT
3

PENGAD 800-631-6989

Tricia Anne Riley

Plaintiff

vs.

Defendant

Anver Iqbal
5021 Seminary Road #1202
Alexandria, VA 22311

RECEIVED
Civil Clerk's Office
JAN 0 8 2007
Superior Court of the
District of Columbia
Washington, D.C.

No. 0000113-07

## MOTION - (Pro-Se)

for PI

MOTION OF:

(State briefly what you want the Court to do)

Stop harassing behavior at work, home & home of relatives

Printed name: Tricia Anne Riley
Address: 3800 Reservoir Rd NW
Kober Cogan Hall #101
Washington, DC 20007

Signature: _____
Home phone no. _____
Business phone no. 202-687-5176

## CERTIFICATE OF SERVICE

On January 8 _____, 2007, I mailed this motion to all the lawyers in the case, the plaintiff(s) and the defendant(s) who do not have lawyers, as listed below:

| Name: Anver Iqbal | Name: |
|---|---|
| Address: 5021 Seminary Road #1202 Alexandria, VA 22311 | Address: |

Signature _____

## POINTS AND AUTHORITIES

(Write the reasons why the Court should grant your motion and include Court rules, laws and cases, if any, that support your reasons.)

The defendant's behavior has caused disruption at the hospital where I work - in my department and in other departments. It has also caused distress to myself, my family, and my co-workers.

Signature _____

Form CV-399/Dec 00

PLAINTIFF'S
EXHIBIT
4

PENGAD 800-631-6989

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Tricia Anne Riley
3800 Reservoir Rd NW
Kober-cogan Hall #S101
Washington, DC 20007—

*Plaintiff*

Imar Iqbal
5021 Seminary Road #1202
Alexandria, VA 22311

*Defendants*

0000113-0

CIVIL ACTION NO. _____

RECEIVED
Civil Clerk's Office
JAN 0 8 2007
Superior Court of the
District of Columbia
Washington, D.C.

**COMPLAINT**

1. **Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.**

I saw Mr. Amir Iqbal's son for a hearing test on 6/5/06 at Georgetown University Hospital. In July, he called about the test results, and at that time asked me out. I asked that I was not interested. Over the next 6 wks, he called our clinic several times a week, invited me to a dinner & a luncheon, dropped food off at the clinic on 3 occasions & waited in the waiting room to see me one afternoon. On 9/6/06, the department administrator talked to him and told him to stop trying to contact me. On 9/23/06, I received a call from the administrator of another department. She stated that the defendant had placed numerous calls to her staff asking them to contact me on his behalf. He was contacted by hospital security that day, & was told he was not to have any contact with our clinic or the DC Police would be contacted. 1/5/07 the defendant arrived at the home of my parents looking for me.

**Wherefore, Plaintiff demands judgment against Defendant in the sum of $ _____**
with interest and costs.

DISTRICT OF COLUMBIA, SS

Tricia Anne Riley _____, being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendant to the plaintiff, exclusive of all set-off and just grounds of defense.

_____ (Plaintiff          Agent)

Phone: _____

Subscribed and sworn to before me this ___ day of ___ 20_7_.

_____
(Notary Public/Deputy Clerk)

CM CV-1013/ Nov. 00

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## OFFICE OF THE JUDGE IN CHAMBERS

PLAINTIFF'S EXHIBIT
5

TO: _Amer Iqbal_        CASE NO.: _07 CA 113_

## NOTICE OF HEARING

You are hereby notified that there will be a hearing on Plaintiff's request for

a Temporary Restraining Order (T.R.O.) against you, on

_____ _1/18/07_ _____ , at _____ _230_ _____ a.m./**p.m.** at
      (date)                       (time)

D.C. SUPERIOR COURT, 500 Indiana Avenue, N.W., Room 4220, 4th floor.

If you wish to be heard, your presence is required.

        WHITE - DEFENDANT      CANARY - PLAINTIFF      PINK - COURT FILE

FORM SO-2064/Jul. 98

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

TRICIA ANNE RILEY
Vs.
AMER IQBAL

C.A. No.        2007 CA 000113 B

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge LYNN LEIBOVITZ
Date:  January 8, 2007
Initial Conference: 9:30 am, Friday, April 20, 2007
Location:  Courtroom 312
            500 Indiana Avenue N.W.
            WASHINGTON, DC 20001

PLAINTIFF'S
EXHIBIT

7

CA Form 1

# Superior Court of the District of Columbia

## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

*Tricia Anne Riley*        *Plaintiff*                    0000113-'07
vs.                                          Civil Action No. C10

*Amer Iqbal*        *Defendant*
*5021 Seminary Road #1202*
*Alexandria, VA 22311*

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Tricia Anne Riley*                                    *Clerk of the Court*
Name of Plaintiff's Attorney

*3800 Reservoir Road NW*                By _____
Address                                              Deputy Clerk
*Kober Cogan Hall #101*
*Washington, DC 20007*
Telephone *202-687-5176*              Date ___11/8/07___

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

# Commonwealth of Virginia



Case No. CL07001469

# SUMMONS

## TO THE SHERIFF: YOU ARE HEREBY COMMANDED TO SERVE:

Serve:  Tircia Anne Riley
        3800 Reservoir Rd NW     *Kober Cogan Hall # 101*
        Washington, DC  20007

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

**Appearance in person is not required by this summons.**

Done in the name of The Commonwealth of Virginia, the 27th day of February, 2007.

*[signature]*

Jampa Sharchok
Deputy Clerk

Edward Semonian
Clerk, Circuit Court
520 King Rm 307
Alexandria, VA  22314
(703) 838-4044

Private

Copy to Return

# EXIHBIT J

## DETAILS OF MEETINGS BETWEEN MYSELF AND TRICIA RILEY

1st Meeting:

Our first meeting was at the Audiology Department, Georgetown Hospital where she works. My son was going in Oncology department for his blood transfusions. He has a serious blood disorder and needed transfusions on monthly basis. We were there for his hearing test. Now a days, he is in Duke hospital, Durham NC going through his bone marrow transplant.

Tricia and Miranda Adams one of her colleague took us to a consultation room and then we went to the hearing test room. My son was tested with different level of sounds with a word "Bear", also she was getting her attention through different building blocks and stickers. The test lasted for almost an hour and I stayed silent mostly and spoke only few sentences with my son or a small conversation at the end with Tricia.

During the test, she took my attention and bent on the right side. I did not respond to it. After few minutes, she grabbed her right biceps three times and I understood that she means I need to work up. I did not make any expression. Then she looked at my male, I don't know what she meant. But I took it in sexual terms, first time I responded back with my eyes pointing at her heart. She got it right away and pushed her upper body on the back, like it hit her. She also made the blocks like the "deer antler" and bowed her head.

This all happened for few minutes in the whole one hour test. Most of it was my son's test itself and I was mostly unconcerned with her, for some reason! and she pointed it out in our next phone conversation.

3 Phone Conversations:

After this I received a letter with Hannan's test reports and left a message on the front desk of her department to discuss the results. She called back the next day and said "I thought you were cold". I had told Dr. Shad that she is a nice doctor. Our most of the conversation was about the test reports. There was a part of the test that was not done and I asked her if she likes us to reschedule it as my son was cranky that time. She told me to check with his hematologist. Then I told her that I was interested in her and her answer was "no" in the beginning and then "I don't know".

Then I called her back again after a day or two, was transferred to her voice mail by her administrator. I left the message that I was still interested in her and was only looking for a life long relationship. She called back and after some conversation she said "I don't know" and also said "Yea" and "okay" showing her interest. There were total three phone conversations that we had, but we never went out. She is right that I contacted her again few times and was transferred to her voice mail by her administrators, but she did not return my calls.

## 2nd Meeting:

As she has mentioned in her letter, after sometime I went to meet with her. I had told Aurie "her administrator" a day prior and she was ok with it. Her letter says that I waited for an hour, I believe its within range of 20-25 minutes, since she was with a patient. I told her administrator and she went to notify her. Then Aurie came back and told me to wait. After sometime, Tricia came and went to the administrator sitting area. She was with the patient so I waited for few minutes for her to finish. Then she looked at me and with tight lips nodded her head in yes three times. I was sitting few feet away in the waiting area. I bowed my head. Then she went on the front side of the desk and had her head down and worked on her "pad". Then she looked on my side and signaled me to come. I did not move and had thought that she will call me, but she waited for few moments and went back inside her office area.

Then Aurie came back and told me "Not today" and then she sat down and signaled in an inappropriate manner. I believe she could see that I did not like it, so she stood up and pushed the corner of the wall with her right hand "I believe that means push the right side" and I signaled in positive. Then I said I would be in touch and left.

The fact of the matter is that I have been very civil and cordial with her colleagues and with other Georgetown colleagues. Once the security was involved, I did not contact her or anyone from her department, until I was told by a friend that she was interested in meeting with me.

The other fact is that the way we both behaved in our first meeting, it's enough for a person to commit with someone. The problem part has been that my son was going to the same hospital, and I was concerned in starting a relationship with a doctor there.

## 3rd Meeting:

Our third meeting was at the TRO hearing. I had received a call for the summons and the person serving the summons wanted me to come to Northern Virginia. We had planned to meet. Then before a day or two, door bell rang and her friend showed up. He told me his name Brad and raised his ring finger with ring on it and touched it and said "if you are up then we are up" and told me to shave. I asked him in Tricia was coming and he said he will tell her. I went to the Judges Chamber's and saw her and her friend sitting there. I spoke to the court clerk and then sat on the side chairs. Then I looked at her and she looked at me and then told her colleague "I told you that he will come". She also mentioned about my shave. I didn't say anything to them. I sat there for sometime and then left the room. Then I came in and sat on the side chairs. Her friends were sitting on her either side, she was talking to her friend in low voice. She had her head down for sometime, then signaled me with her mufler three times to come to her. I did not move, I think I should had gone to her this time and could had ended it right there!

Then she bowed her head on her right side and joined her hands. I had my head bowed too with her. I was under the impression that she was in trouble either because of the hospital security or her family that she had called me for this hearing.

The truth of the matter is that we both have shown interest in each other, every time we have seen each other. I was committed to her after our meetings at the Georgetown but

knew that it could cause the problem after contacted by security. I believe this court and jury should know the truth, so they can make a right decision. We both need help and sincere people who can bring the truth out. I prefer to be private about my personal life, but because of the complications brought up by the superior court and the contempt case, I have decided not to hide any more.

I have been told some really bad things about her by some of her friends. Before the TRO hearing, she did say "Amer I am also the same as you are inside" and I know what it means! The way I have understood her in our meetings, I have never believed in what her friends said. I have stopped communicating with them after this consent order because I did not want to have any more trouble by contacting them, even though the consent order doesn't forbid us to communicate with mutual friends.

She kept silent in most of the hearing. I had asked her not to do the restraining order and I will not contact her again, but she wanted it. So we agreed on a consent order. When Judge Tignor handed her the restraining order, she looked at it and said "that's what I want", worded differently in the transcripts and recorded as "That's on" in the recording. I did not even read the transcript and signed the order. I was thinking after approx. 1 year, Tricia has asked me one thing: After the hearing was concluded, she spoke few sentences as under and then we aparted.

Amer, now I know how to get you and I am still not through with you. Then she said, I can do "Nikah" with you today. (Nikah is a marriage in islamic manner) While leaving both Brad and Tricia's heads were bowed and so was mine! On the escalator's she made a counter clock wise turn and laughed by saying "I am in round hill by making a left turn"

Since that day I have never contacted her except mailing her the court records or serving her to appear in the open court of the superior court chief judge.


(One thing which I am worried the most is the name of the person I mentioned in my Feb 06 letter, Brad Upshur or Brad Upshaw. I hope Mr. Roegge is not the same person, because I am hundred percent positive that he did not say Roegge when he met me first time, first names are similar and that concerns me)

# EXHIBIT K

## Audiology Administrators and Sep 29, 2006 Letter by Tricia Riley and Susan Morgan

Here are the details of some of my phone conversations with Aurie and Greg (both administrators of the audiology department). The phone conversations are between the months of June and Sep, 2006. I can only remind the portions of the conversations as:

### With Aurie:

- I called her office and told them about finding the donor of my son and that I wanted to share my happiness with them by bringing some sweets, as I had done with other fiends. Their answer was ok. She also told me that everyone from her department was happy to hear this news. So I gave chocolates and cake.
- On the other phone conversation, she told me that they really liked my food and other gifts were also welcome. Ear rings are result of it.
- She was aware that I was interested in Tricia and her response was positive, same time indication to keep it low. I could tell that she was sharing our conversation with her colleagues and Tricia too.
- One time I told her that I wanted to come and see Tricia, her response was ok, also I told her the timing. The next day I went to her department and asked her for Tricia and she told me that she was with the patient and told me to wait in the waiting area. Then Tricia came and what happened is described in our three meetings.

### Greg:

- In one of our conversations, Greg told me that he missed the chocolates and the cake since he was not there. He also showed his interest in bringing more and my answer was in positive. He also told me that girls really liked the food.
- In one of our conversation he told me that all the girls are laughing at me and only one girl is serious.
- He also told me the timings when her colleagues go for lunch in their cafeteria.
- He was also well aware of my interest in Tricia and had told me that she is also with the heart.
- In one of our conversations I asked him if he could ask Tricia for her direct number, he called back and told me that her office number is the contact number and also told me that I live on the other side of the bridge.

The way its described in the letter by Tricia and Susan in 09/26/06, that I was the only one contacting them or pushing for a relationship is incorrect. Both sides were in contact with each other and it was of friendly and welcoming nature, until the time I received a call from the security which is approx. 3 months time frame. Aurie knew and was in consent the day I went to see Tricia. I believe Tricia was aware of it too, so she came.

Also, I like to address some of the statements in their letter, like I invited them for a dinner was actually a lunch, some of my other friends and doctors at the oncology department were also invited. I never told Aurie that I wanted to send food to Tricia's home. I never knew where she lived until a friend told me in December. Both incidents that I went to her clinic and they told me to leave are incorrectly described, their attitude was welcoming and friendly in both cases. I had talked to only Dr. Shad regarding Tricia,

other than my numerous conversations regarding my son's transplant. I never spoke to anyone about Tricia in their department except when Greg called me and I talked to one of the nurses and that's in September probably. Also I never asked security to help me in meeting with Tricia, I did tell them that their was some misunderstanding and I had called her director and if I could meet with her to clarify it. From the day of incident with the security and until I was told by a friend that she wanted to meet and that's in December, I did not discuss about her or her colleagues with anyone.

I have been low with Georgetown hospital and even the day security arrived because of a simple fact that my son was being treated there and that they had helped me a lot in finding a donor for him and in his other treatment.

As for as Tricia and myself are concerned, there was nothing inappropriate in our conversations. In few times, Aurie's conversations were not so inappropriate.

On the other side, I have been mentioned bad things about her character by some of her hospital people, which I never trusted, I have been told that she is in a big mess with me and that she is colorful. Again, you only believe in what you actually know by yourself.

Also, my appearance at her house was not initiated by me. I was told by a friend that she was interested in meeting with me. I have spoken to one of her relatives who has mentioned that they had been waiting for me. There was also mentioning of our Nikah in my conversations with this friend and that's in December 2006.

There are a lot of facts that never surfaced in the TRO hearing. She stayed mostly silent in the TRO hearing and I was not able to tell all this either.


As for as superior court is concerned, they have asked me couple of times about Aurie. Her name was not mentioned in any of our previous proceedings. Also I noticed that they had a clear intention of not giving me a rehearing so I could not clarify all this to Tricia. They have been trying to take advantage of this situation from both sides, instead of playing a positive role in this matter.

# EXHIBIT M

October 3, 2006

Iqbal Amer
5021 Seminary Rd. #1202
Alexandria, VA 22311

Dear Mr. Amer:

The primary concerns of Georgetown University Hospital are the care of our patients and the safety of our staff. Unfortunately, you have recently acted in an erratic and disruptive manner that has caused us concern for the safety of our staff members. As such, we regret to inform you that your future visits to the Georgetown University Hospital Campus will be restricted.

You have been asked on more than one occasion to stop contacting our staff about matters unrelated to medical care. On September 28, 2006, you were informed that if you did not cease and desist in your inappropriate attempts at contacting our employees, Georgetown University Hospital would be forced to take action to protect its staff. Nonetheless, on September 29, 2006, you visited our Campus and once again exhibited disruptive behavior, inappropriately approaching our employees about matters unrelated to the delivery of care.

From this date forward, you will be expected to register with Hospital Protection Services upon entry of any building on our Campus. After registering, you will be escorted to your appointment by a member of Hospital Protection Services. Under no circumstances are you to contact or approach our staff about matters unrelated to the delivery of health care. If you continue to act in a disruptive or abusive manner, you will be escorted off Georgetown University Hospital property and we will be forced to pursue any legal recourse available to us.

Thank you for your cooperation. Please contact me at (202) 444-4729 should you have any questions about this process.

Sincerely,

John J. Bertolotti
Director, Protection Services

cc:    Robyn W. Diaz, Assistant General Counsel, MedStar Health, Inc.
       Gregory M. Gromada, Administrator, Neurosciences, Ophthalmology & Otolaryngology
       Jennifer Kennedy, Operations Administrator, Otolaryngology
       Susan H. Morgan, Director, Audiology
       Janice Oppenheim, Director, Ambulatory Services, Lombardi Cancer Center
       Michael Sachtleben, Vice President & Executive Director, Georgetown Physicians Group

October 9, 2006

Dear John,

I received your letter dated Oct 3, 2006. Being a professional, I concur with you that such incidents are not healthy for any work-place environment. Though sometimes, a small miscommunication can lead to a big misunderstanding.

Everyone at Georgetown involved in the treatment of my son is respectful to me. You may not be aware, but I had lost hope of curing my son and its Georgetown where I got this hope. Even though it's their professional responsibility but same time, I am grateful for all the information and help.

I hope none of us will have to go through this exercise again and I apologize for any inconvenience.

Best Regards,

Amer Iqbal
5021 Seminary Road, Apt 1202
Alexandria, Virginia - 22311



# Georgetown University Hospital

## MedStar Health

**Department of Otolaryngology
Head & Neck Surgery
Division of Audiology and Hearing
Research**

June 6, 2006

Corina Gonzalez, M.D.
Pediatric Hematology/Oncology
Georgetown University Hospital
3800 Reservoir Road, N.W.
Washington, DC 20007

## REPORT OF AUDIOMETRIC EVALUATION

Name:     HANNAN AMER
DOB:      07/01/04

Dear Dr. Gonzalez:

Hannan Amer was evaluated by the Audiology Division on June 5, 2006. Since testing was carried out in a sound field, it is not possible to determine if there is a difference between ears. Results are as follows:

1.  Hannan responded to speech presented in a soundfield down to 10 dB.

2.  Hannan responded to warbled tones or narrow bandnoise presented in a soundfield at the following levels.

        500 Hz:  20 dB
        1000 Hz: 20 dB
        2000 Hz: 20 dB
        4000 Hz: 15 dB
        6000 Hz: 20 dB

3.  Acoustic immittance measures indicate middle ear disorder bilaterally. The tympanograms are type C, with the compliance peak at -195 daPa in the right ear and at -130 daPa in the left ear, indicating significant negative pressure in the middle ear space.

In summary, results are consistent with normal hearing in at least one ear and middle ear disorder bilaterally. We recommend continued monitoring of hearing.

Sincerely,

Tricia Riley, M.A., CCC-A
Audiologist

Enclosures

cc: Parents

# PEDIATRIC SOUNDFIELD TESTING

Name: _Amer_ _Hannan_    Age: _1_  Sex: _M_ Date: _06/05/06_
      Last       First    DoB: _07/01/04_

Audiologist: _T. Riley, M.A. CCC-A_    Method: _VRA_
      _M. Adams, M.S. CCC-A_

### Sound Field Audiogram



**Key To Symbols**

S – Warble Tones
N – Narrowband Noise

**Speech Audiometry**

| | |
|---|---|
| _10_ | SAT |
| _____ | ST |
| _____ | PSI Words |
| _____ | PSI Sentences |

## Informal Testing:

_____
_____

## Earphone Testing:

| | Speech | 500 Hz | 1 KHz | 2 KHz | 4 KHz |
|---|---|---|---|---|---|
| Right Ear | _____ | _____ | _____ | _____ | _____ |
| Left Ear | _____ | _____ | _____ | _____ | _____ |
| Bone | _____ | _____ | _____ | _____ | _____ |

## Interpretation/Recommendations

_____ See attached report _____
_____
_____
_____



Georgetown
University
Hospital ❧
*MedStar Health*

**ADDRESS SERVICE REQUESTED**

**Department of Otolaryngology**
**Head & Neck Surgery**
**Division of Audiology and Hearing Research**
3800 Reservoir Road, NW
Kober Cogan Hall Room 101
Washington, DC 20007-2113

Iqbal Amer
5021 Seminary Rd #202
Alexandria, VA 22311

# EXHIBIT N

```
• • • • • WELCOME • • • • •
        SPRINGFIELD M O
      7051 BROOKFIELD PLAZA
      SPRINGFIELD, VA 22150-9998
         02/28/07 08:01PM

Transaction Number           41
USPS® #              518472-9550


  1. First-Class Mail® service    .63
     Destination:   20001
     Weight:       0 lb. 1.90 oz.
     Total Cost:    .63
     Base Rate:     .63
  2. One $.39 Stamp               .39
  3. First-Class Mail® service    .63
     Destination:   20007
     Weight:       0 lb. 1.90 oz.
     Total Cost:    .63
     Base Rate:     .63

Subtotal                        1.65
Total Charged                   1.65

VISA                            1.65

       <23-902320316-99>
VISA
ACCT. NUMBER      TRANS #   AUTH
XXXX XXXX XXXX 6013  490   004736


          Thanks.
   It's a pleasure to serve you.

ALL SALES FINAL ON STAMPS AND POSTAGE.
REFUNDS FOR GUARANTEED SERVICES ONLY.
```



SUMMONS mailing
RECEIPTS dated 2/28/07

Case # 07-0408 RMU

SUMMONS/RECEIPTS
mailing
dated 3/2/07

 **UNITED STATES POSTAL SERVICE**®

Home | Help | Sign In

Track & Confirm        FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7006 2760 0002 6250 5987**
Detailed Results:

- **Delivered, March 12, 2007, 3:04 pm, WASHINGTON, DC 20001**
- **Arrival at Unit, March 12, 2007, 11:57 am, WASHINGTON, DC 20001**
- **Acceptance, March 02, 2007, 2:41 pm, SPRINGFIELD, VA 22150**

*< Back*                    *Return to USPS.com Home >*

**Track & Confirm**

Enter Label/Receipt Number.

*Go >*

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.    *Go >*

POSTAL INSPECTORS        site map    contact us    government services    jobs    **National & Premier Accounts**
Preserving the Trust                Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

TRICIA ANNE RILEY
3800 Reservoir Rd, N.W,
COBEN BLDG HALL #101
WASHINGTON D.C. 2000 7

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
TRICIA RILEY     3/6/07

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7006 2760 0002 6250 5970

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

COURT CLERK
SUPERIOR COURT OF DIST
OF COLUMBIA
500 INDIANA AVE, N.W,
WASHINGTON D.C. 20001

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
     Thomas     3-13-07

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

AMER IQBAL
17648 Tedler Cir
Roo—dill, VA 2014/

Receipt for 3/2/07 Summons
USDC
*Mailed on 3/9/07

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

AMER IQBAL
17648 Tedler Cir B
Roo—dill, VA 2014/

*Mailed on 3/22/07 Mail

# EXHIBIT O

# Your Statement

Statement For:   **AMER IQBAL**
Mobile Number :   **(571) 277-6216**
Account Number:   **407100683**

## Important Information

Thank you for using EasyPay. Amount
will be forwarded for automatic
processing. Do not pay this bill or
mail remittance.

Page    1  of    15

AT 02 056889 25821H289 A**3DGT

AMER IQBAL
17652 TEDLER CIR
ROUND HILL VA 20141-2171

## Summary of Charges

| | | |
|---|---|---|
| Previous Balance | $ | 123.46 |
| Pmt Rec'd -Thank You | $ | (123.46) |
| Monthly Service Charges | $ | 128.08 |

| | | |
|---|---|---|
| **Total Amount Due** | **$** | **128.08** |
| **Total Amount Due by** | | **3/06/07** |

## Monthly Service Summary

Monthly service charges from  1/10/07  -  2/09/07

| Mobile Number | Monthly Service Charges | Adjustments | Usage Charges | One Time Charges | Other Charges | Taxes & Surcharges | Total Charges |
|---|---|---|---|---|---|---|---|
| 571-277-6216 | $     39.99 | $        - | $      78.47 | $         - | $        - | $      9.62 | $       128.08 |

| Available Service | | | Type | WHENEVER | | | WEEKEND |
|---|---|---|---|---|---|---|---|
| Preferred GM Nts | | Free Minutes | Minutes | 1,000 | | | - |
| | | Use Them Or Lose Them | Minutes | - | | | Unlimited |

| Used Service | | | Type | WHENEVER | PEAK | OFF PEAK | WEEKEND |
|---|---|---|---|---|---|---|---|
| | | Included Plan Minutes | Minutes | - | 1,159 | 118 | 161 |

PLEASE DETACH THIS PORTION AND RETURN WITH YOUR PAYMENT PLEASE MAKE SURE ADDRESS SHOWS THROUGH WINDOW

# **T · ·Mobile·**

Statement For: **AMER IQBAL**
Mobile Number:   (571) 277-6216
Account Number: 407100683

T-MOBILE
PO BOX 742596
CINCINNATI OH 45274-2596

| Amount Due By 3/06/07 | Amount Enclosed |
|---|---|
| $128.08 | EasyPay |

☐ To pay this invoice using your credit card - check box
   and complete the reverse side

☐ For EasyPay Option - check box and complete the
   reverse side

☐ If you have changed your address - check box and
   record new address on the reverse side

0404071006830306070000128083201412171

Statement For:   **AMER IQBAL**
Mobile Number :  **(571) 277-6216**
Account Number:   **407100683**

**Customer Service Number    1-800-937-8997**

Feb 10, 2007

Page    2 of    15

**Taxes, Fees and Surcharges -** This section includes applicable federal, state and local taxes, fees and surcharges that have been imposed on you or us for your service. We collect these taxes, fees and surcharges and, unless otherwise noted, remit them to the appropriate governmental entity.

**Universal Service assessments -** Although not taxes or government assessments imposed directly on the customer, these charges recover contributions we make to federal and state funds related to universal service. These funds generally support telecommunications services in high-cost areas, for low-income customers, or for specialized users such as schools and rural health care providers. These charges change as contributions to the funds change.

**Regulatory Programs Fee -** We elect to collect and retain this Fee to help recover a portion of our costs incurred to satisfy certain federal government mandates and programs related to customers, including, without limit, wireless number pooling, local number portability and E911. We may impose the Fee whether or not all or some services are used, or available to you, or in your location.

**Late Fee -** Pursuant to the T-Mobile Terms and Conditions, we may apply a late fee charge per month of $5 or 1.5%, or the most permitted by law on any past due balance not paid by the date shown on page 1 of your statement. Late fee charges are liquidated damages and are not a penalty.

**Easy Pay Option-Automatic Monthly Payment Terms and Conditions -** With Easy Pay you authorize us to collect payment for your monthly bill by automatically withdrawing the amount due from your bank account or charging a designated credit/debit card. To enroll: 1) visit www.T-Mobile.com; 2) complete and mail the application form below; or 3) call 1-800-937-8997 or 611 from your T-Mobile phone. You agree to review each bill and give us timely notice of any disputed charges. Funds will be transferred from your account or charges will be made to your card 3 days before your bill due date (settlement date). You may stop an electronic fund transfer (EFT) by giving us or your bank or card issuer at least 3 business days notice before the settlement date. We are not liable for losses of any kind as a result of an error in your bill or a delayed transfer or card charge. You must immediately notify us in writing of any changes to your EasyPay information. We are not liable for losses incurred due to your failure to notify us and our only liability to you is to make appropriate changes after we receive your written notice. We may change these EasyPay Terms and Conditions at any time. Notice may be given on or with your bill or by other means. You or we may terminate Easy Pay at any time by giving written notice to the other reasonably in advance of the termination date and of any settlement date. Termination will not reverse a debit transaction authorized before a termination notice. You may be bound by your bank or card issuer rules regarding pre-authorized EFT or card charges. Ask your bank if they charge fees for this type of payment.

**Disputed Charges -** You waive your right to dispute a charge (including taxes, fees and surcharges), unless you notify us within 60 days from the date of the first bill containing the disputed charge.

**Questions about your bill?** Please call (800) 937-8997 or 611 from your T-Mobile phone. You may also write to T-Mobile Customer Relations, PO Box 37380, Albuquerque, NM 87176-7380 or send an email via our website at http://www.t-mobile.com/contact.    **CA customers,** if you have a complaint you cannot resolve with us, write the California Public Utilities Commission at Consumer Affairs Branch, 505 Van Ness Ave., San Francisco, CA 94102, or at www.cpuc.ca.gov, or call 1-800-649-7570 or TDD 1-800-229-6846. If your complaint concerns interstate or international calling, write the FCC at Consumer Complaints, 445 12th Street SW, Washington, D.C. 20554, or at fccinfo@fcc.gov, or call 1-888-225-5322, or TTY 1-888-835-5322. Note: The CPUC handles complaints of both interstate and intrastate unauthorized carrier changes ( slamming ). The California consumer protection rules are available online, at www.cpuc.ca.gov. **NM customers** may also contact the New Mexico Public Regulation Commission at (800) 663-9782.)

**3rd Party Contact Information -**    Asurion Insurance Services, Inc. 866-268-7221 P.O. Box 110656, Nashville, TN 37222-0656.

**Visit us at www.t-mobile.com**

---

**Change Of Address:**

Effective Date ____/____/____

Address
| | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | |

City
| | | | | | | | | | | | | | | | | | | | | |

State | | | |

Zip | | | | | | - | | | | |

Home # ( ) _____

Business # ( ) _____

[ ] **EasyPay Checking**        [ ] **EasyPay Credit Card**
[ ] **EasyPay Saving**          [ ] **One Time Credit Card Charge**

Bank Account Number: | | | | | | | | | | | | | | | | | | |
Routing and Transit Number: | | | | | | | | | |
Credit Card:    [ ] Visa  [ ] Mastercard   [ ] Discover  [ ] American Express
Credit Card No: | | | | | | | | | | | | | | | | |   Expiration ____/____

Name as it appears on your credit card _____

EasyPay Agreement : I hereby agree that I have fully read and understand the Easy Pay account terms and conditions and that I authorize T-Mobile to debit the specified bank account or charge the specified credit card for payment of my T-Mobile bill(s). I understand that my participation in Easy Pay is to remain in effect until cancelled in writing by me, the credit card issuer, financial institution or T-Mobile. I understand that all terms and conditions of my T-Mobile Service Agreement remain in full force and effect.

Please sign and date here for EasyPay :

Signature _____ Date ____/____/____

**·T· ·Mobile·**

Statement For: **AMER IQBAL**
Mobile Number: (571) 277-6216
Account Number: 407100683

Customer Service Number  1-800-937-8997

Feb 10, 2007

Page 4 of 15

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 1/10/07 | Incoming | 8:34 AM | Blocked NBR | | 9 | $ | $ | $ |
| 1/10/07 | Arlington, VA | 11:46 AM | 703-841-5283 | | 2 | $ | $ | $ |
| 1/10/07 | Incoming | 11:54 AM | 281-297-9000 | | 16 | $ | $ | $ |
| 1/10/07 | Incoming | 11:56 AM | 703-841-5200 (A) | | 2 | $ | $ | $ |
| 1/10/07 | Incoming | 2:30 PM | 923338479779 | | 2 | $ | $ | $ |
| 1/10/07 | Washington DC | 4:00 PM | 202-215-6617 | | 7 | $ | $ | $ |
| 1/10/07 | Incoming | 4:05 PM | 703-846-9000 | | 8 | $ | $ | $ |
| 1/10/07 | Incoming | 5:34 PM | 281-297-9000 | | 3 | $ | $ | $ |
| 1/10/07 | Alexandria, VA | 7:36 PM | 703-678-7926 | | 4 | $ | $ | $ |
| 1/10/07 | Incoming | 7:49 PM | 703-678-7926 | | 2 | $ | $ | $ |
| 1/10/07 | Incoming | 7:54 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/10/07 | Alexandria, VA | 7:59 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/10/07 | Incoming | 8:05 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/10/07 | Alexandria, VA | 9:54 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/11/07 | Incoming | 9:57 PM | 703-678-7926 | | 2 | $ | $ | $ |
| 1/11/07 | Bethesda, MD | 8:41 AM | 301-272-8100 | | 1 | $ | $ | $ |
| 1/11/07 | Bethesda, MD | 9:45 AM | 301-272-6877 | | 2 | $ | $ | $ |
| 1/11/07 | Northport, NY | 9:56 AM | 631-261-1498 | | 2 | $ | $ | $ |
| 1/11/07 | Alexandria, VA | 10:05 AM | 703-929-2450 | | 4 | $ | $ | $ |
| 1/11/07 | Incoming | 10:22 AM | 631-253-9277 | | 1 | $ | $ | $ |
| 1/11/07 | Bethesda, MD | 10:28 AM | 301-272-6901 | | 8 | $ | $ | $ |
| 1/11/07 | Bethesda, MD | 10:49 AM | 301-272-6901 | | 4 | $ | $ | $ |
| 1/11/07 | Alexandria, VA | 1:26 PM | 703-929-2450 | | 2 | $ | $ | $ |
| 1/11/07 | Alexandria, VA | 2:03 PM | 703-929-2450 | | 2 | $ | $ | $ |
| 1/11/07 | Incoming | 2:12 PM | 703-841-5200 | | 3 | $ | $ | $ |
| 1/11/07 | Alexandria, VA | 3:01 PM | 703-823-8700 | | 5 | $ | $ | $ |
| 1/11/07 | Incoming | 3:09 PM | 301-464-0704 | | 2 | $ | $ | $ |
| 1/11/07 | Incoming | 3:20 PM | 301-464-0775 | | 5 | $ | $ | $ |
| 1/11/07 | Bowie Gind, MD | 3:27 PM | 301-464-0775 | | 1 | $ | $ | $ |
| 1/11/07 | Incoming | 3:54 PM | 301-770-3092 | | 3 | $ | $ | $ |
| 1/11/07 | Alexandria, VA | 4:24 PM | 571-212-3177 | | 2 | $ | $ | $ |
| 1/11/07 | Incoming | 4:52 PM | 301-272-8346 | | 5 | $ | $ | $ |
| 1/11/07 | Incoming | 5:13 PM | 703-823-8700 | | 5 | $ | $ | $ |
| 1/11/07 | Incoming | 9:41 PM | 923328300507 | | 1 | $ | $ | $ |
| 1/11/07 | Incoming | 9:42 PM | 923328300507 | | 1 | $ | $ | $ |
| 1/12/07 | Incoming | 8:09 AM | 703-929-2450 | | 1 | $ | $ | $ |

Call Type (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

---

Statement For: **AMER IQBAL**
Mobile Number: (571) 277-6216
Account Number: 407100683

Customer Service Number  1-800-937-8997

Feb 10, 2007

Page 5 of 15

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 1/12/07 | Alexandria, VA | 8:25 AM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/12/07 | Bethesda, MD | 10:43 AM | 301-272-6877 | | 1 | $ | $ | $ |
| 1/12/07 | Incoming | 3:42 PM | 301-272-6877 | | 1 | $ | $ | $ |
| 1/12/07 | Bethesda, MD | 4:41 PM | 301-272-6877 | | 10 | $ | $ | $ |
| 1/12/07 | Washington DC | 5:02 PM | 202-215-6617 | | 1 | $ | $ | $ |
| 1/12/07 | Fls Church, VA | 6:25 PM | 703-569-7700 | | 2 | $ | $ | $ |
| 1/12/07 | Incoming | 7:10 PM | 703-569-7700 | | 2 | $ | $ | $ |
| 1/12/07 | Bethesda, MD | 7:12 PM | 301-272-6877 | | 1 | $ | $ | $ |
| 1/13/07 | Incoming | 4:38 AM | 923338479779 | | 2 | $ | $ | $ |
| 1/13/07 | Alexandria, VA | 9:01 AM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/13/07 | Alexandria, VA | 10:13 AM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/13/07 | Alexandria, VA | 10:59 AM | 571-212-3177 | | 1 | $ | $ | $ |
| 1/13/07 | Alexandria, VA | 11:00 AM | 571-212-3177 | | 3 | $ | $ | $ |
| 1/13/07 | Alexandria, VA | 12:26 PM | 703-678-7926 | | 5 | $ | $ | $ |
| 1/13/07 | Alexandria, VA | 12:30 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/13/07 | Alexandria, VA | 1:11 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/14/07 | Alexandria, VA | 10:39 AM | 571-212-3177 | | 1 | $ | $ | $ |
| 1/14/07 | Incoming | 10:41 AM | 571-212-3177 | | 4 | $ | $ | $ |
| 1/14/07 | Alexandria, VA | 5:49 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/14/07 | Incoming | 10:44 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/15/07 | Incoming | 10:47 AM | 985-929-9876 | | 1 | $ | $ | $ |
| 1/15/07 | Incoming | 12:52 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/15/07 | Incoming | 1:22 PM | 919-880-9546 | | 7 | $ | $ | $ |
| 1/15/07 | Alexandria, VA | 5:12 PM | 703-678-7926 | | 5 | $ | $ | $ |
| 1/15/07 | Incoming | 7:05 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/15/07 | Incoming | 7:05 PM | 703-678-7926 | | 6 | $ | $ | $ |
| 1/15/07 | Alexandria, VA | 9:36 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/15/07 | Incoming | 9:58 PM | 703-678-7926 | | 7 | $ | $ | $ |
| 1/15/07 | Incoming | 9:59 PM | 703-678-7926 | | 73 | $ | $ | $ |
| 1/15/07 | Alexandria, VA | 11:58 PM | 703-678-7926 | | 3 | $ | $ | $ |
| 1/16/07 | Incoming | 8:57 AM | NBR Unavail | | 1 | $ | $ | $ |
| 1/16/07 | Durham, NC | 9:32 AM | 919-668-1125 | | 1 | $ | $ | $ |
| 1/16/07 | Incoming | 9:44 AM | NBR Unavail | | 1 | $ | $ | $ |
| 1/16/07 | Washington DC | 3:27 PM | 202-444-2224 | | 1 | $ | $ | $ |
| 1/16/07 | Washington DC | 3:31 PM | 202-444-2224 | | 3 | $ | $ | $ |
| 1/16/07 | Alexandria, VA | 4:06 PM | 703-678-7926 | | 2 | $ | $ | $ |

Call Type (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

Statement For: **AMER IQBAL**
Mobile Number : **(571) 277-6216**
Account Number: **407100683**

**Customer Service Number    1-800-937-8997**

Feb 10, 2007                                                              Page   3 of   15

| Used Service - (Continued) | Type | WHENEVER | PEAK | OFF PEAK | WEEKEND |
|---|---|---|---|---|---|
| My Album | Messages | 3 | - | - | - |
| T-Mobile to T-Mobile | Minutes | - | 23 | 10 | 1 |

### Account Service Detail

| | | Amount | Totals |
|---|---|---|---|
| Previous Balance | | $    123.46 | |
| Payment Received On | 2/04/07 | $    (123.46) | |
| **Monthly Service Charges** | | | $    39.99 |
| Preferred GM Nts | | $    39.99 | |
| **Usage Charges** | | | $    78.47 |
| LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES | | $    77.72 | |
| MESSAGING CHARGES | | $    0.75 | |
| **Taxes, Fees and Surcharges** | | | $    9.62 |
| **Government Fees and Taxes** | | | |
| Federal Universal Service Fund | | $    1.84 | |
| Communications Sales Tax | | $    6.06 | |
| Regulatory Surcharge | | $    0.11 | |
| State 911 | | $    0.75 | |
| Regulatory Programs Fee* | | $    0.86 | |

*Fee we collect and retain to help cover our costs related to funding and complying with government mandates, programs and obligations.

| **Total Charges** | $    128.08 |
|---|---|



Statement For:   AMER IQBAL
Mobile Number:   (571) 277-6216
Account Number:  407100683

Customer Service Number  1-800-937-8997

Feb 10, 2007

Page 6 of 15

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 1/16/07 | Incoming | 4:36 PM | 703-678-7926 | | 5 | $ | $ . | $ |
| 1/16/07 | Washington, DC | 7:59 PM | 202-215-6617 | | 2 | $ | $ . | $ |
| 1/16/07 | Washington, DC | 8:13 PM | 202-215-6617 | | 1 | $ | $ . | $ |
| 1/16/07 | Incoming | 8:24 PM | 571-212-3177 | | 1 | $ | $ . | $ |
| 1/16/07 | Washington, DC | 9:36 PM | 202-215-6617 | | 10 | $ | $ . | $ |
| 1/17/07 | Incoming | 9:55 AM | Blocked NBR | | 1 | $ | $ . | $ |
| 1/17/07 | Alexandria, VA | 10:26 AM | 703-929-2450 | | 6 | $ | $ . | $ |
| 1/17/07 | Incoming | 11:39 AM | 703-678-7926 | | 2 | $ | $ . | $ |
| 1/17/07 | Incoming | 11:47 AM | 703-929-2450 | | 2 | $ | $ . | $ |
| 1/17/07 | Washington, DC | 12:17 PM | 202-215-6617 | | 1 | $ | $ . | $ |
| 1/17/07 | Oscoquan, VA | 12:40 PM | 703-499-2040 | | 1 | $ | $ . | $ |
| 1/17/07 | Alexandria, VA | 4:16 PM | 571-212-3177 | | 2 | $ | $ . | $ |
| 1/17/07 | Incoming | 5:11 PM | 301-282-0706 | | 7 | $ | $ . | $ |
| 1/17/07 | Gathersburg, MD | 5:38 PM | 301-282-0706 | | 7 | $ | $ . | $ |
| 1/17/07 | Alexandria, VA | 5:54 PM | 703-678-7926 | | 1 | $ | $ . | $ |
| 1/17/07 | Incoming | 6:27 PM | 703-678-7926 | | 7 | $ | $ . | $ |
| 1/18/07 | Oscoquan, VA | 7:17 AM | 703-499-2040 | | 1 | $ | $ . | $ |
| 1/18/07 | Incoming | 9:06 AM | 703-678-7926 | | 13 | $ | $ . | $ |
| 1/18/07 | Alexandria, VA | 9:36 AM | 703-678-7926 | | 8 | $ | $ . | $ |
| 1/18/07 | Incoming | 10:03 AM | 703-499-2040 | | 3 | $ | $ . | $ |
| 1/18/07 | Alexandria, VA | 10:35 AM | 703-929-2450 | | 4 | $ | $ . | $ |
| 1/18/07 | Alexandria, VA | 8:22 PM | 703-678-7926 | | 2 | $ | $ . | $ |
| 1/18/07 | Incoming | 8:39 PM | 571-212-3177 | | 3 | $ | $ . | $ |
| 1/18/07 | Alexandria, VA | 9:33 PM | 703-678-7926 | | 1 | $ | $ . | $ |
| 1/19/07 | Incoming | 9:51 PM | 703-678-7926 | | 2 | $ | $ . | $ |
| 1/19/07 | Alexandria, VA | 9:09 AM | 703-929-2450 | | 2 | $ | $ . | $ |
| 1/19/07 | Alexandria, VA | 12:49 PM | 703-678-7926 | | 2 | $ | $ . | $ |
| 1/19/07 | Alexandria, VA | 2:18 PM | 571-212-3177 | | 3 | $ | $ . | $ |
| 1/19/07 | Fls Church, VA | 3:22 PM | 703-451-2080 | | 8 | $ | $ . | $ |
| 1/20/07 | 1-800 # | 9:01 AM | 800-922-4684 | | 5 | $ | $ . | $ |
| 1/20/07 | Alexandria, VA | 9:43 AM | 571-212-3177 | | 1 | $ | $ . | $ |
| 1/20/07 | Oscoquan, VA | 9:58 AM | 703-499-2040 | | 2 | $ | $ . | $ |
| 1/20/07 | Alexandria, VA | 10:19 AM | 703-678-7926 | | 1 | $ | $ . | $ |
| 1/20/07 | Incoming | 10:19 AM | 703-499-2040 | | 2 | $ | $ . | $ |
| 1/20/07 | Oscoquan, VA | 10:38 AM | 703-499-2040 | | 1 | $ | $ . | $ |
| 1/20/07 | Incoming | 10:39 AM | 703-499-2040 | | 3 | $ | $ . | $ |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

---

Statement For:   AMER IQBAL
Mobile Number:   (571) 277-6216
Account Number:  407100683

Customer Service Number  1-800-937-8997

Feb 10, 2007

Page 7 of 15

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 1/2007 | Alexandria, VA | 10:51 AM | 571-212-3177 | | 1 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 11:02 AM | 571-212-3177 | | 1 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 1:44 PM | 703-678-7926 | | 3 | $ | $ . | $ |
| 1/2007 | Mt Gilead, VA | 4:01 PM | 540-338-6310 | | 3 | $ | $ . | $ |
| 1/2007 | Incoming | 4:32 PM | 571-212-3177 | | 1 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 5:48 PM | 571-212-3177 | | 1 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 5:53 PM | 571-212-3177 | | 1 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 7:09 PM | 571-212-3177 | | 1 | $ | $ . | $ |
| 1/2007 | Mt Gilead, VA | 7:20 PM | 540-338-6310 | | 1 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 9:44 AM | 703-929-2450 | | 2 | $ | $ . | $ |
| 1/2007 | Oscoquan, VA | 11:12 AM | 703-499-2040 | | 15 | $ | $ . | $ |
| 1/2007 | Incoming | 11:19 AM | 605-947-9988 | (A) | 1 | $ | $ . | $ |
| 1/2007 | Kensington, MD | 11:46 AM | 301-981-2990 | | 2 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 11:49 AM | 703-929-2450 | | 4 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 11:53 AM | 703-841-7013 | | 3 | $ | $ . | $ |
| 1/2007 | Incoming | 12:04 PM | 301-881-2990 | | 4 | $ | $ . | $ |
| 1/2007 | Newport, Pl | 12:09 PM | 401-842-2509 | | 3 | $ | $ . | $ |
| 1/2007 | Arlington, VA | 12:10 PM | 703-418-1377 | | 2 | $ | $ . | $ |
| 1/2007 | Arlington, VA | 12:12 PM | 703-418-1377 | | 1 | $ | $ . | $ |
| 1/2007 | Kensington, MD | 12:14 PM | 301-981-2990 | | 2 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 2:51 PM | 703-929-2450 | | 1 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 3:46 PM | 703-929-2450 | | 1 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 3:49 PM | 703-823-8700 | | 4 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 3:52 PM | 703-929-2450 | | 2 | $ | $ . | $ |
| 1/2007 | Arlington, VA | 4:40 PM | 703-841-7013 | | 2 | $ | $ . | $ |
| 1/2007 | Oscoquan, VA | 4:55 PM | 703-499-2040 | | 2 | $ | $ . | $ |
| 1/2007 | Arlington, VA | 5:03 PM | 703-841-7013 | | 2 | $ | $ . | $ |
| 1/2007 | Oscoquan, VA | 5:11 PM | 703-499-2040 | | 2 | $ | $ . | $ |
| 1/2007 | Incoming | 6:20 PM | 703-678-7926 | | 2 | $ | $ . | $ |
| 1/2007 | Alexandria, VA | 9:57 PM | 703-678-7926 | | 1 | $ | $ . | $ |
| 1/23/07 | Oscoquan, VA | 8:08 AM | 703-841-7013 | | 1 | $ | $ . | $ |
| 1/23/07 | Bethesda, MD | 8:15 AM | 301-272-8129 | | 2 | $ | $ . | $ |
| 1/23/07 | Incoming | 8:20 AM | 703-929-2450 | | 2 | $ | $ . | $ |
| 1/23/07 | Oscoquan, VA | 10:30 AM | 703-499-2040 | | 2 | $ | $ . | $ |
| 1/23/07 | Oscoquan, VA | 10:30 AM | 703-499-2040 | | 1 | $ | $ . | $ |
| 1/23/07 | Oscoquan, VA | 10:43 AM | 703-499-2040 | | 1 | $ | $ . | $ |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call



Statement For: AMER IQBAL
Mobile Number: (571) 277-6216
Account Number: 407100683

Customer Service Number 1-800-937-8997
Feb 10, 2007

Page 8 of 15

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 1/23/07 | Incoming | 11:22 AM | 703-499-2040 | | 5 | $ | $ | $ |
| 1/23/07 | Occoquan, VA | 12:05 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 1/23/07 | Fls Church, VA | 3:15 PM | 703-451-2080 | | 1 | $ | $ | $ |
| 1/23/07 | Incoming | 5:37 PM | 801-902-2091 | | 1 | $ | $ | $ |
| 1/23/07 | Incoming | 6:38 PM | 801-902-2091 | | 6 | $ | $ | $ |
| 1/23/07 | Vienna, VA | 7:33 PM | 703-620-2060 | | 1 | $ | $ | $ |
| 1/23/07 | Vienna, VA | 7:34 PM | 703-620-2060 | | 2 | $ | $ | $ |
| 1/23/07 | Vienna, VA | 7:36 PM | 703-359-8084 | | 2 | $ | $ | $ |
| 1/23/07 | Alexandria, VA | 9:01 PM | 703-678-7926 | | 2 | $ | $ | $ |
| 1/24/07 | Arlington, VA | 8:23 AM | 703-841-7013 | | 2 | $ | $ | $ |
| 1/24/07 | Vienna, VA | 9:30 AM | 703-359-8084 | | 2 | $ | $ | $ |
| 1/24/07 | Occoquan, VA | 9:38 AM | 703-499-2040 | | 7 | $ | $ | $ |
| 1/24/07 | Occoquan, VA | 9:45 AM | 703-499-2040 | | 4 | $ | $ | $ |
| 1/24/07 | Bethesda, MD | 10:12 AM | 301-272-8129 | | 2 | $ | $ | $ |
| 1/24/07 | Alexandria, VA | 12:03 PM | 703-929-2450 | | 2 | $ | $ | $ |
| 1/24/07 | Bethesda, MD | 2:58 PM | 301-272-8129 | | 2 | $ | $ | $ |
| 1/24/07 | Occoquan, VA | 3:05 PM | 703-499-2040 | | 2 | $ | $ | $ |
| 1/24/07 | Fls Church, VA | 3:18 PM | 703-451-2080 | | 2 | $ | $ | $ |
| 1/24/07 | Incoming | 4:20 PM | 703-455-1804 | | 3 | $ | $ | $ |
| 1/24/07 | Washington, DC | 5:12 PM | 202-879-1133 | | 1 | $ | $ | $ |
| 1/24/07 | Alexandria, VA | 5:19 PM | 703-678-7926 | | 3 | $ | $ | $ |
| 1/24/07 | Occoquan, VA | 6:48 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 1/25/07 | Washington, DC | 8:36 AM | 202-879-1133 | | 5 | $ | $ | $ |
| 1/25/07 | Bethesda, MD | 8:42 AM | 301-272-8346 | | 1 | $ | $ | $ |
| 1/25/07 | Alexandria, VA | 9:08 AM | 703-838-4141 | | 1 | $ | $ | $ |
| 1/25/07 | Alexandria, VA | 9:10 AM | 703-838-4044 | | 2 | $ | $ | $ |
| 1/25/07 | Washington, DC | 9:17 AM | 202-879-4840 | | 3 | $ | $ | $ |
| 1/25/07 | Fls Church, VA | 9:32 AM | 703-451-2080 | | 1 | $ | $ | $ |
| 1/25/07 | Bethesda, MD | 11:54 AM | 301-272-8346 | | 1 | $ | $ | $ |
| 1/25/07 | Incoming | 6:51 PM | 540-338-6310 | | 1 | $ | $ | $ |
| 1/25/07 | Incoming | 7:09 PM | 703-499-2040 | | 2 | $ | $ | $ |
| 1/25/07 | Occoquan, VA | 7:13 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 1/25/07 | Mt Gilead, VA | 7:27 PM | 540-338-6310 | | 1 | $ | $ | $ |
| 1/25/07 | 1-800 # | 10:46 PM | 800-874-4968 | | 1 | $ | $ | $ |
| 1/25/07 | 1-800 # | 8:51 AM | 800-874-4968 | | 5 | $ | $ | $ |
| 1/25/07 | 1-888 # | 9:37 AM | 888-518-8011 | | 2 | $ | $ | $ |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

Statement For: AMER IQBAL
Mobile Number: (571) 277-6216
Account Number: 407100683

Customer Service Number 1-800-937-8997
Feb 10, 2007

Page 9 of 15

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 1/26/07 | Washington, DC | 9:43 AM | 202-775-0971 | | 1 | $ | $ | $ |
| 1/26/07 | Capitol Hts, MD | 9:44 AM | 240-882-5349 | | 3 | $ | $ | $ |
| 1/26/07 | 1-877 # | 9:57 AM | 877-629-0753 | | 1 | $ | $ | $ |
| 1/26/07 | 1-800 # | 10:00 AM | 800-331-5453 | | 9 | $ | $ | $ |
| 1/26/07 | Arlington, VA | 10:22 AM | 703-841-7013 | | 2 | $ | $ | $ |
| 1/26/07 | Fls Church, VA | 10:26 AM | 703-451-2060 | | 2 | $ | $ | $ |
| 1/26/07 | Vienna, VA | 10:48 AM | 703-359-8084 | | 4 | $ | $ | $ |
| 1/26/07 | Bethesda, MD | 11:34 AM | 301-272-8129 | | 2 | $ | $ | $ |
| 1/26/07 | Occoquan, VA | 12:06 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 1/26/07 | Dallas, TX | 1:01 PM | 972-488-1056 | | 7 | $ | $ | $ |
| 1/26/07 | Bethesda, MD | 3:21 PM | 301-272-8346 | | 1 | $ | $ | $ |
| 1/26/07 | Bethesda, MD | 3:21 PM | 301-272-8129 | | 17 | $ | $ | $ |
| 1/26/07 | Arlington, VA | 4:11 PM | 703-841-5200 | | 3 | $ | $ | $ |
| 1/26/07 | Fls Church, VA | 4:39 PM | 703-451-2060 | | 1 | $ | $ | $ |
| 1/26/07 | Fls Church, VA | 6:49 PM | 703-569-7700 | | 1 | $ | $ | $ |
| 1/27/07 | Incoming | 7:21 PM | 703-678-7926 | | 4 | $ | $ | $ |
| 1/27/07 | Alexandria, VA | 9:46 AM | 703-678-7926 | | 2 | $ | $ | $ |
| 1/27/07 | Mt Gilead, VA | 10:07 AM | 540-338-6310 | | 1 | $ | $ | $ |
| 1/27/07 | Incoming | 10:28 AM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/27/07 | Alexandria, VA | 10:49 AM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/27/07 | Occoquan, VA | 7:39 PM | 571-212-3177 | | 3 | $ | $ | $ |
| 1/28/07 | Occoquan, VA | 10:17 AM | 703-499-2040 | | 1 | $ | $ | $ |
| 1/28/07 | Cust Care | 2:38 PM | 800-937-8997 (H) | | 6 | $ | $ | $ |
| 1/28/07 | Occoquan, VA | 3:45 PM | 703-499-2040 | | 4 | $ | $ | $ |
| 1/28/07 | Occoquan, VA | 4:01 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 1/28/07 | Incoming | 11:28 PM | 9230116279796 | | 7 | $ | $ | $ |
| 1/29/07 | Fls Church, VA | 9:09 AM | 703-734-5000 | | 5 | $ | $ | $ |
| 1/29/07 | Vienna, VA | 9:14 AM | 703-288-5606 | | 6 | $ | $ | $ |
| 1/29/07 | Alexandria, VA | 9:25 AM | 703-838-4123 | | 3 | $ | $ | $ |
| 1/29/07 | Incoming | 9:54 AM | 973-443-2421 | | 2 | $ | $ | $ |
| 1/29/07 | Arlington, VA | 10:07 AM | 703-841-7013 | | 2 | $ | $ | $ |
| 1/29/07 | Washington, DC | 10:09 AM | 202-775-0971 | | 4 | $ | $ | $ |
| 1/29/07 | Washington, DC | 10:25 AM | 202-863-4460 | | 4 | $ | $ | $ |
| 1/29/07 | Occoquan, VA | 10:41 AM | 703-499-2040 | | 1 | $ | $ | $ |
| 1/29/07 | Fls Church, VA | 11:40 AM | 703-846-9200 | | 2 | $ | $ | $ |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

**T··Mobile·**

Statement For: AMER IQBAL
Mobile Number: (571) 277-6216
Account Number: 407100683

Customer Service Number 1-800-937-8997

Feb 10, 2007

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 1/25 | Fls Church, VA | 12:19 PM | 703-451-2080 | | 2 | $ - | $ - | $ - |
| 1/25 | Fls Church, VA | 2:29 PM | 703-298-5645 | | 2 | $ | $ | $ |
| 1/25 | Fls Church, VA | 2:30 PM | 703-846-9000 | | 3 | $ | $ | $ |
| 1/25 | Cust Care | 2:59 PM | 800-937-8997 (H) | | 3 | $ | $ | $ |
| 1/25 | Incoming | 4:20 PM | 541-969-9876 | | 1 | $ | $ | $ |
| 1/25 | Arlington, VA | 5:07 PM | 703-841-7013 | | 1 | $ | $ | $ |
| 1/25 | Arlington, VA | 5:46 PM | 703-841-7013 | | 2 | $ | $ | $ |
| 1/25/07 | Cust Care | 5:49 PM | 800-937-8997 (H) | | 7 | $ | $ | $ |
| 1/25/07 | Incoming | 5:52 PM | 703-359-8084 (A) | | 1 | $ | $ | $ |
| 1/25/07 | Incoming | 8:49 PM | 703-935-1865 | | 4 | $ | $ | $ |
| 1/25/07 | Fls Church, VA | 9:16 AM | 703-734-5000 | | 53 | $ | $ | $ |
| 1/26/07 | Bethesda, MD | 11:05 AM | 301-272-8259 | | 4 | $ | $ | $ |
| 1/26/07 | Fls Church, VA | 11:36 AM | 703-734-5000 | | 7 | $ | $ | $ |
| 1/26/07 | Incoming | 12:32 PM | 703-499-2040 | | 3 | $ | $ | $ |
| 1/26/07 | Occoquan, VA | 12:56 PM | 703-499-2040 | | 2 | $ | $ | $ |
| 1/26/07 | Martinsbg, WV | 1:07 PM | 304-260-0347 | | 2 | $ | $ | $ |
| 1/26/07 | Vienna, VA | 1:37 PM | 703-268-5606 | | 2 | $ | $ | $ |
| 1/26/07 | Alexandria, VA | 1:41 PM | 703-628-8953 | | 2 | $ | $ | $ |
| 1/26/07 | Incoming | 1:48 PM | 703-734-3871 | | 2 | $ | $ | $ |
| 1/26/07 | Arlington, VA | 1:55 PM | 703-841-5200 | | 6 | $ | $ | $ |
| 1/26/07 | Alexandria, VA | 2:12 PM | 703-929-2450 | | 6 | $ | $ | $ |
| 1/26/07 | Fls Church, VA | 2:45 PM | 703-734-5000 | | 4 | $ | $ | $ |
| 1/26/07 | Incoming | 2:56 PM | 281-287-9000 | | 6 | $ | $ | $ |
| 1/26/07 | Virginabch, VA | 3:15 PM | 757-494-7900 | | 2 | $ | $ | $ |
| 1/26/07 | Incoming | 3:17 PM | 757-480-3900 | | 1 | $ | $ | $ |
| 1/26/07 | Occoquan, VA | 3:18 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 1/26/07 | Norfolk, VA | 3:21 PM | 757-545-4613 | | 10 | $ | $ | $ |
| 1/26/07 | Incoming | 3:21 PM | 703-499-2040 (A) | | 1 | $ | $ | $ |
| 1/26/07 | Occoquan, VA | 3:28 PM | 703-499-2040 | | 2 | $ | $ | $ |
| 1/26/07 | Fls Church, VA | 3:30 PM | 703-734-5000 | | 1 | $ | $ | $ |
| 1/26/07 | Fls Church, VA | 3:36 PM | 703-451-2080 | | 1 | $ | $ | $ |
| 1/26/07 | Fls Church, VA | 4:23 PM | 703-734-5000 | | 1 | $ | $ | $ |
| 1/26/07 | Capitolhts, MD | 4:24 PM | 240-882-5349 | | 1 | $ | $ | $ |
| 1/26/07 | Incoming | 4:49 PM | 773-935-1865 | | 7 | $ | $ | $ |
| 1/26/07 | Alexandria, VA | 6:31 PM | 703-678-7926 | | 4 | $ | $ | $ |
| 1/26/07 | Mt Gilead, VA | 7:49 PM | 540-338-6310 | | 1 | $ | $ | $ |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) m/Faves Call

---

**T··Mobile·**

Statement For: AMER IQBAL
Mobile Number: (571) 277-6216
Account Number: 407100683

Customer Service Number 1-800-937-8997

Feb 10, 2007

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 1/30/07 | Alexandria, VA | 9:16 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/30/07 | Incoming | 9:33 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/30/07 | Alexandria, VA | 10:08 PM | 703-678-7926 | | 1 | $ | $ | $ |
| 1/31/07 | Occoquan, VA | 9:20 AM | 703-499-2040 | | 2 | $ | $ | $ |
| 1/31/07 | Alexandria, VA | 11:15 AM | 703-678-7926 | | 13 | $ | $ | $ |
| 1/31/07 | Washington, DC | 12:05 PM | 202-879-1009 | | 2 | $ | $ | $ |
| 1/31/07 | Washington, DC | 12:08 PM | 202-879-1133 | | 9 | $ | $ | $ |
| 1/31/07 | Mt Gilead, VA | 1:06 PM | 540-338-2851 | | 1 | $ | $ | $ |
| 1/31/07 | Arlington, VA | 1:15 PM | 703-841-7013 | | 2 | $ | $ | $ |
| 1/31/07 | Martinsbg, WV | 1:19 PM | 304-260-0347 | | 8 | $ | $ | $ |
| 1/31/07 | Spring, TX | 1:32 PM | 281-287-9000 | | 2 | $ | $ | $ |
| 1/31/07 | Spring, TX | 1:54 PM | 281-287-9000 | | 7 | $ | $ | $ |
| 1/31/07 | Washington, DC | 3:46 PM | 202-879-1133 | | 1 | $ | $ | $ |
| 1/31/07 | Spring, TX | 5:13 PM | 281-287-9000 | | 5 | $ | $ | $ |
| 1/31/07 | Spring, TX | 7:59 PM | 281-287-9023 | | 1 | $ | $ | $ |
| 1/31/07 | 1-800 # | 8:00 PM | 800-880-8254 | | 1 | $ | $ | $ |
| 2/01/07 | 1-800 # | 12:16 AM | 800-880-8254 | | 1 | $ | $ | $ |
| 2/01/07 | Spring, TX | 12:34 AM | 281-287-9023 | | 1 | $ | $ | $ |
| 2/01/07 | 1-800 # | 1:15 AM | 800-880-8254 | | 2 | $ | $ | $ |
| 2/01/07 | 1-800 # | 8:35 AM | 800-880-8254 | | 21 | $ | $ | $ |
| 2/01/07 | Norfolk, VA | 9:02 AM | 757-545-4613 | | 3 | $ | $ | $ |
| 2/01/07 | Norfolk, VA | 9:40 AM | 757-545-4615 | | 2 | $ | $ | $ |
| 2/01/07 | Arlington, VA | 9:54 AM | 703-841-5200 | | 3 | $ | $ | $ |
| 2/01/07 | Arlington, VA | 9:59 AM | 703-841-5200 | | 20 | $ | $ | $ |
| 2/01/07 | Norfolk, VA | 10:37 AM | 757-545-4613 | | 1 | $ | $ | $ |
| 2/01/07 | Arlington, VA | 11:57 AM | 703-841-5287 | | 3 | $ | $ | $ |
| 2/01/07 | Incoming | 12:40 PM | 206-784-0514 | | 1 | $ | $ | $ |
| 2/01/07 | Fls Church, VA | 1:12 PM | 703-734-5000 | | 3 | $ | $ | $ |
| 2/01/07 | Leesburg, VA | 1:24 PM | 703-779-7069 | | 2 | $ | $ | $ |
| 2/01/07 | Norfolk, VA | 2:09 PM | 757-545-4613 | | 2 | $ | $ | $ |
| 2/01/07 | Occoquan, VA | 3:27 PM | 703-499-2040 | | 2 | $ | $ | $ |
| 2/01/07 | Norfolk, VA | 4:53 PM | 757-545-4613 | | 2 | $ | $ | $ |
| 2/01/07 | Incoming | 5:05 PM | 703-734-3871 | | 2 | $ | $ | $ |
| 2/01/07 | Washington, DC | 5:24 PM | 202-879-1009 | | 1 | $ | $ | $ |
| 2/01/07 | Washington, DC | 5:26 PM | 202-879-1009 | | 1 | $ | $ | $ |
| 2/01/07 | Incoming | 6:23 PM | 206-784-0514 | | 1 | $ | $ | $ |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) m/Faves Call

# T··Mobile·

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

Feb 10, 2007

Customer Service Number 1-800-937-8997

Statement For     AMER IQBAL
Mobile Number   (571) 277-6216
Account Number  407100683

Page 12 of 15

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/05 | Falls Church VA | 6:33 PM | 703-734-5000 | | 1 | $ | $ | $ |
| 2/05 | Incoming | 6:37 PM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/05 | Alexandria, VA | 6:32 PM | 703-499-2040 | (A) | 17 | $ | $ | $ |
| 2/05 | Incoming | 7:31 PM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/06 | Alexandria, VA | 8:44 AM | 703-678-7926 | | 2 | $ | $ | $ |
| 2/06 | Arlington, VA | 9:59 AM | 703-841-5287 | | 4 | $ | $ | $ |
| 2/06 | Capitol Hts, MD | 10:02 AM | 240-882-5049 | | 2 | $ | $ | $ |
| 2/06 | Norfolk, VA | 10:25 AM | 757-545-4613 | | 2 | $ | $ | $ |
| 2/06 | Hyattsvl MD | 10:28 AM | 301-772-7282 | | 2 | $ | $ | $ |
| 2/06 | Incoming | 10:54 AM | 240-508-3285 | | 6 | $ | $ | $ |
| 2/06 | Alexandria, VA | 11:02 AM | 703-926-2450 | | 6 | $ | $ | $ |
| 2/06 | Alexandria, VA | 12:31 PM | 703-499-2040 | | 4 | $ | $ | $ |
| 2/06 | Washington, DC | 12:54 PM | 202-879-1009 | | 5 | $ | $ | $ |
| 2/06 | Alexandria, VA | 2:44 PM | 703-823-8700 | | 3 | $ | $ | $ |
| 2/06 | Norfolk, VA | 3:19 PM | 757-545-4613 | | 2 | $ | $ | $ |
| 2/06 | Arlington, VA | 3:36 PM | 703-841-5200 | | 2 | $ | $ | $ |
| 2/06 | Alexandria, VA | 3:58 PM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/06 | Cocoquan, VA | 7:15 PM | 703-499-2040 | | 2 | $ | $ | $ |
| 2/06 | Chicago, IL | 8:20 PM | 779-935-1621 | | 2 | $ | $ | $ |
| 2/07 | Incoming | 8:37 AM | 801-902-2091 | | 5 | $ | $ | $ |
| 2/07 | Kearns, UT | 8:44 AM | 801-902-2091 | | 1 | $ | $ | $ |
| 2/07 | Chicago, IL | 10:09 AM | 773-935-1865 | | 5 | $ | $ | $ |
| 2/07 | Incoming | 10:23 AM | 703-499-2040 | | 1 | $ | $ | $ |
| 2/07 | Alexandria, VA | 10:50 AM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/07 | Alexandria, VA | 10:56 AM | 703-678-7926 | | 1 | $ | $ | $ |
| 2/07 | Incoming | 11:02 AM | 703-678-7926 | | 1 | $ | $ | $ |
| 2/07 | Alexandria, VA | 11:33 AM | 703-678-7926 | | 1 | $ | $ | $ |
| 2/07 | Alexandria, VA | 11:51 AM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/07 | Incoming | 12:03 PM | 571-212-3177 | | 10 | $ | $ | $ |
| 2/07 | Incoming | 1:16 PM | 571-212-3177 | | 2 | $ | $ | $ |
| 2/07 | Cocoquan, VA | 1:29 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 2/07 | Cocoquan, VA | 2:54 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 2/07 | Cocoquan, VA | 2:56 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 2/07 | Cocoquan, VA | 4:07 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 2/07 | Alexandria, VA | 4:16 PM | 571-212-3177 | | 1 | $ | $ | $ |

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

Feb 10, 2007

Customer Service Number 1-800-937-8997

Statement For     AMER IQBAL
Mobile Number   (571) 277-6216
Account Number  407100683

Page 13 of 15

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/03/07 | Towson, MD | 4:21 PM | 443-465-2255 | | 7 | $ | $ | $ |
| 2/03/07 | Incoming | 4:32 PM | 703-499-2040 | | 2 | $ | $ | $ |
| 2/03/07 | Incoming | 4:36 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 2/03/07 | Towson, MD | 5:33 PM | 443-465-2255 | | 16 | $ | $ | $ |
| 2/03/07 | Alexandria, VA | 5:49 PM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/03/07 | Incoming | 6:03 PM | 703-678-7926 | | 7 | $ | $ | $ |
| 2/03/07 | Incoming | 7:08 PM | 703-678-7926 | | 5 | $ | $ | $ |
| 2/03/07 | Incoming | 7:16 PM | 540-338-1188 | | 5 | $ | $ | $ |
| 2/03/07 | Alexandria, VA | 7:21 PM | 703-678-7926 | | 5 | $ | $ | $ |
| 2/03/07 | Incoming | 8:09 PM | 703-678-7926 | | 3 | $ | $ | $ |
| 2/04/07 | Alexandria, VA | 8:20 AM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/04/07 | Alexandria, VA | 8:28 AM | 571-212-3177 | | 2 | $ | $ | $ |
| 2/04/07 | Incoming | 8:35 AM | 571-212-3177 | | 2 | $ | $ | $ |
| 2/04/07 | Alexandria, VA | 8:36 AM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/04/07 | Cocoquan, VA | 2:22 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 2/04/07 | Alexandria, VA | 3:39 PM | 703-499-2040 | | 1 | $ | $ | $ |
| 2/04/07 | Vienna, VA | 7:27 PM | 703-359-1256 | | 2 | $ | $ | $ |
| 2/04/07 | Vienna, VA | 7:27 PM | 703-359-1256 | | 2 | $ | $ | $ |
| 2/05/07 | Bethesda, MD | 8:24 AM | 301-272-8258 | | 3 | $ | $ | $ |
| 2/05/07 | Alexandria, VA | 8:40 AM | 703-838-4141 | | 2 | $ | $ | $ |
| 2/05/07 | Vienna, VA | 8:52 AM | 703-359-1256 | | 2 | $ | $ | $ |
| 2/05/07 | Incoming | 8:53 AM | 877-822-4612 | | 30 | $ | $ | $ |
| 2/05/07 | Vienna, VA | 9:30 AM | 703-324-7500 | | 2 | $ | $ | $ |
| 2/05/07 | Incoming | 9:33 AM | 877-822-4503 | | 8 | $ | $ | $ |
| 2/05/07 | Braddock, VA | 9:41 AM | 703-850-4044 | | 1 | $ | $ | $ |
| 2/05/07 | Incoming | 9:41 AM | 703-838-4044 | | 6 | $ | $ | $ |
| 2/05/07 | 1-877 # | 9:53 AM | 877-822-4612 | | 12 | $ | $ | $ |
| 2/05/07 | 1-877 # | 10:44 AM | 571-212-3177 | | 9 | $ | $ | $ |
| 2/05/07 | Alexandria, VA | 10:44 AM | 202-879-1133 | | 7 | $ | $ | $ |
| 2/05/07 | Washington, DC | 4:00 PM | 202-879-1133 | | 9 | $ | $ | $ |
| 2/05/07 | Washington, DC | 4:19 PM | 434-846-3184 | | 2 | $ | $ | $ |
| 2/05/07 | Lawrencevl, VA | 4:37 PM | 434-846-9574 | | 4 | $ | $ | $ |
| 2/05/07 | Washington, DC | 5:15 PM | 434-848-9574 | | 7 | $ | $ | $ |
| 2/05/07 | Incoming | 5:54 PM | 800-528-2810 | | 26 | $ | $ | $ |
| 2/05/07 | 1-800 # | 7:23 PM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/05/07 | Pakistan | 10:44 PM | 923016279796 | | 3 | $ | 4.92 | 4.92 |
| 2/05/07 | Incoming | 7:57 AM | 703-263-7414 | | 3 | $ | $ | $ |
| 2/06/07 | Arlington, VA | 8:27 AM | 703-841-5287 | | 2 | $ | $ | $ |

Call Type : (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call



**· · T · · Mobile ·**

Statement For: **AMER IQBAL**
Mobile Number: **(571) 277-6216**
Account Number: **407100683**

Customer Service Number 1-800-937-8997

Feb 10, 2007

Page 15 of 15

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/5/07 | Incoming | 8:31 AM | 801-902-2091 | | 4 | $ - | $ - | $ - |
| 2/5/07 | 1-877 # | 9:04 AM | 877-746-4479 | | 2 | $ - | $ - | $ - |
| 2/6/07 | Alexandria, VA | 10:05 AM | 703-838-4123 | | 5 | $ - | $ - | $ - |
| 2/6/07 | Incoming | 10:06 AM | 773-935-1621 | (A) | 1 | $ - | $ - | $ - |
| 2/6/07 | Chicago, IL | 10:10 AM | 773-935-1621 | | 15 | $ 3.60 | $ - | $ 3.60 |
| 2/6/07 | Chicago, IL | 10:37 AM | 773-935-1621 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/6/07 | Bethesda, MD | 10:44 AM | 301-272-8346 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/6/07 | Alexandria, VA | 11:20 AM | 703-678-7926 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/6/07 | Lawrenceville, VA | 11:50 AM | 434-848-9574 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/6/07 | Incoming | 12:19 PM | 929015279796 | | 3 | $ - | $ - | $ - |
| 2/6/07 | Bethesda, MD | 12:53 PM | 301-272-8346 | | 3 | $ 1.20 | $ - | $ 1.20 |
| 2/7/07 | Occoquan, VA | 2:53 PM | 703-266-0275 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/7/07 | Incoming | 3:02 PM | 703-266-0275 | | 2 | $ - | $ - | $ - |
| 2/7/07 | Occoquan, VA | 3:19 PM | 703-499-2040 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/7/07 | Occoquan, VA | 3:22 PM | 703-499-2040 | | 3 | $ 1.20 | $ - | $ 1.20 |
| 2/7/07 | Occoquan, VA | 3:43 PM | 703-499-2040 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/7/07 | Arlington, VA | 3:46 PM | 703-841-5287 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/7/07 | Cadotins, MD | 4:26 PM | 240-882-5349 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/7/07 | Alexandria, VA | 4:50 PM | 703-928-8653 | | 3 | $ 1.20 | $ - | $ 1.20 |
| 2/7/07 | Vm Retrieval | 5:00 PM | 123 | (G) | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/7/07 | Arlington, VA | 5:17 PM | 703-841-7013 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/7/07 | Fls Church, VA | 7:21 PM | 703-451-2080 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/8/07 | Norfolk, VA | 8:10 AM | 757-622-0374 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/8/07 | Fls Church, VA | 8:14 AM | 703-734-5000 | | 7 | $ - | $ - | $ - |
| 2/8/07 | Fls Church, VA | 8:59 AM | 703-734-5000 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/8/07 | Fls Church, VA | 9:11 AM | 703-451-2080 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/8/07 | Vienna, VA | 10:49 AM | 703-359-8034 | | 3 | $ 1.20 | $ - | $ 1.20 |
| 2/8/07 | Washington DC | 11:40 AM | 202-879-1009 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/8/07 | Washington DC | 12:35 PM | 202-879-1600 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/8/07 | Washington DC | 12:36 PM | 202-879-1282 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/8/07 | Fls Church, VA | 12:54 PM | 703-451-2080 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/8/07 | 1-877 # | 2:44 PM | 877-296-1018 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/8/07 | Cust Care | 2:44 PM | 800-937-8997 | (H) | 7 | $ - | $ - | $ - |
| 2/8/07 | Vm Retrieval | 2:51 PM | 123 | (G) | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/8/07 | Vm Retrieval | 4:21 PM | 123 | (G) | 3 | $ 1.20 | $ - | $ 1.20 |
| 2/8/07 | Alexandria, VA | 4:58 PM | 571-212-3177 | | 1 | $ 0.40 | $ - | $ 0.40 |

Page 14 of 15

Call Type: (A) Call Waiting (U) Other (V) myFaves Call

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/9/07 | Kensington, MD | 9:33 AM | 301-231-5200 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/9/07 | Fls Church, VA | 10:17 AM | 703-734-5000 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/9/07 | Alexandria, VA | 10:20 AM | 703-838-4123 | | 3 | $ 1.20 | $ - | $ 1.20 |
| 2/9/07 | Arlington, VA | 10:25 AM | 703-841-5287 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/9/07 | Washington, DC | 10:31 AM | 202-446-1215 | | 29 | $ 11.60 | $ - | $ 11.60 |
| 2/9/07 | Alexandria, VA | 11:01 AM | 571-212-3177 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/9/07 | Chicago, IL | 11:04 AM | 773-935-1621 | | 28 | $ 11.20 | $ - | $ 11.20 |
| 2/9/07 | Leesburg, VA | 11:33 AM | 703-779-7069 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/9/07 | Kensington, MD | 11:41 AM | 301-231-5200 | | 3 | $ 1.20 | $ - | $ 1.20 |
| 2/9/07 | Incoming | 12:07 PM | 301-231-5200 | | 3 | $ 1.20 | $ - | $ 1.20 |
| 2/9/07 | Incoming | 12:44 PM | Blocked NBR | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/9/07 | 1-800 # | 2:54 PM | 800-880-8254 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/9/07 | 1-800 # | 2:55 PM | 800-880-8254 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/9/07 | 1-800 # | 2:57 PM | 800-880-8254 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/9/07 | 1-866 # | 3:31 PM | 866-689-5687 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/9/07 | Incoming | 3:35 PM | 703-499-2040 | | 3 | $ 1.20 | $ - | $ 1.20 |
| 2/9/07 | 1-800 # | 3:43 PM | 800-234-2340 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 2/9/07 | Incoming | 3:54 PM | 800-234-2340 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 2/9/07 | 1-866 # | 3:56 PM | 866-689-5687 | | 5 | $ 2.00 | $ - | $ 2.00 |
| 2/9/07 | 1-800 # | 4:12 PM | 800-567-6789 | | 14 | $ 5.60 | $ - | $ 5.60 |
| 2/9/07 | Verizon Co, VA | 4:25 PM | 540-954-6222 | | 12 | $ 4.80 | $ - | $ 4.80 |
| 2/9/07 | Towson, MD | 6:13 PM | 443-465-2255 | | 1 | $ 0.40 | $ - | $ 0.40 |
| | Included VM Usage | | | | | | | |
| | **SUBTOTAL** | | | | **1,472** | **$ 72.80** | **$ 4.92** | **$ 77.72** |

## MESSAGING CHARGES

| Date | Service Time | Destination | Message Type | Messages | Direction | Total |
|---|---|---|---|---|---|---|
| 1/2/2007 | 10:34 AM | My Album Picture | | 1 | Outgoing | $ 0.79 |
| 1/2/2007 | 10:35 AM | My Album Picture | | 1 | Outgoing | $ 0.25 |
| 1/2/2007 | 10:35 AM | My Album Picture | | 1 | Outgoing | $ - |
| | **SUBTOTAL** | | | **3** | | **$ 0.79** |

**Total of All Usage Charges** $ 78.47

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call



Statement For:   **AMER IQBAL**
Mobile Number :  **(571) 277-6216**
Account Number:   **407100683**

## Important Information

Thank you for using EasyPay. Amount will be forwarded for automatic processing. Do not pay this bill or mail remittance.

Page    1  of    16

AT 02 060994 64680H310 A**3DGT

AMER IQBAL
17648 TEDLER CIR
ROUND HILL VA 20141-2171

## Summary of Charges

| | | |
|---|---|---|
| Previous Balance | $ | 128.08 |
| Pmt Rec'd -Thank You | $ | (128.08) |
| Monthly Service Charges | $ | 67.65 |

| | | |
|---|---|---|
| **Total Amount Due** | **$** | **67.65** |
| **Total Amount Due by** | | **4/06/07** |

## Monthly Service Summary

Monthly service charges from  2/10/07  -  3/09/07

| Mobile Number | Monthly Service Charges | Adjustments | Usage Charges | One Time Charges | Other Charges | Taxes & Surcharges | Total Charges |
|---|---|---|---|---|---|---|---|
| **571-277-6216** | $ 39.99 | $ - | $ 21.85 | $ - | $ - | $ 5.81 | $ 67.65 |

| Available Service | | Type | **WHENEVER** | | | **WEEKEND** |
|---|---|---|---|---|---|---|
| **Preferred GM Nts** | Free Minutes | Minutes | 1,000 | | | - |
| | Use Them Or Lose Them | Minutes | - | | | Unlimited |

| Used Service | | Type | **WHENEVER** | **PEAK** | **OFF PEAK** | **WEEKEND** |
|---|---|---|---|---|---|---|
| | Included Plan Minutes | Minutes | - | 1,001 | 61 | 232 |

PLEASE DETACH THIS PORTION AND RETURN WITH YOUR PAYMENT PLEASE MAKE SURE ADDRESS SHOWS THROUGH WINDOW.

# T··Mobile·

Statement For: **AMER IQBAL**
Mobile Number:  (571) 277-6216
Account Number: 407100683

| Amount Due By 4/06/07 | Amount Enclosed |
|---|---|
| $67.65 | EasyPay |

T-MOBILE
PO BOX 742596
CINCINNATI OH 45274-2596

☐ To pay this invoice using your credit card - check box and complete the reverse side

☐ For EasyPay Option - check box and complete the reverse side

☐ If you have changed your address - check box and record new address on the reverse side.

04040710068304060700000676522014 12171

Statement For:  **AMER IQBAL**
Mobile Number :  **(571) 277-6216**
Account Number:   **407100683**

**Customer Service Number     1-800-937-8997**

Mar 10, 2007

Page     2  of     16

**Taxes, Fees and Surcharges** - This section includes applicable federal, state and local taxes, fees and surcharges that have been imposed on you or us for your service. We collect these taxes, fees and surcharges and, unless otherwise noted, remit them to the appropriate governmental entity.

**Universal Service assessments** - Although not taxes or government assessments imposed directly on the customer, these charges recover contributions we make to federal and state funds related to universal service. These funds generally support telecommunications services in high-cost areas, for low-income customers, or for specialized users such as schools and rural health care providers. These charges change as contributions to the funds change.

**Regulatory Programs Fee** -  We elect to collect and retain this Fee to help recover a portion of our costs incurred to satisfy certain federal government mandates and programs related to customers, including, without limit, wireless number pooling, local number portability and E911. We may impose the Fee whether or not all or some services are used, or available to you, or in your location.

**Late Fee** -  Pursuant to the T-Mobile Terms and Conditions, we may apply a late fee charge per month of $5 or 1.5%, or the most permitted by law on any past due balance not paid by the date shown on page 1 of your statement. Late fee charges are liquidated damages and are not a penalty.

**Easy Pay Option-Automatic Monthly Payment Terms and Conditions** - With Easy Pay you authorize us to collect payment for your monthly bill by automatically withdrawing the amount due from your bank account or charging a designated credit/debit card. To enroll: 1) visit www.T-Mobile.com; 2) complete and mail the application form below; or 3) call 1-800-937-8997 or 611 from your T-Mobile phone. You agree to review each bill and give us timely notice of any disputed charges. Funds will be transferred from your account or charges will be made to your card 3 days before your bill due date (settlement date). You may stop an electronic fund transfer (EFT) by giving us or your bank or card issuer at least 3 business days notice before the settlement date. We are not liable for losses of any kind as a result of an error in your bill or a delayed transfer or card charge. You must immediately notify us in writing of any changes to your EasyPay information. We are not liable for losses incurred due to your failure to notify us and our only liability to you is to make appropriate changes after we receive your written notice. We may change these EasyPay Terms and Conditions at any time. Notice may be given on or with your bill or by other means. You or we may terminate Easy Pay at any time by giving written notice to the other reasonably in advance of the termination date and of any settlement date. Termination will not reverse a debit transaction authorized before a termination notice. You may be bound by your bank or card issuer rules regarding pre-authorized EFT or card charges. Ask your bank if they charge fees for this type of payment.

**Disputed Charges** -  You waive your right to dispute a charge (including taxes, fees and surcharges), unless you notify us within 60 days from the date of the first bill containing the disputed charge.

**Questions about your bill?**  Please call (800) 937-8997 or 611 from your T-Mobile phone. You may also write to T-Mobile Customer Relations, PO Box 37380, Albuquerque, NM 87176-7380 or send an email via our website at http://www.t-mobile.com/contact.   **CA customers,**  if you have a complaint you cannot resolve with us, write the California Public Utilities Commission at Consumer Affairs Branch, 505 Van Ness Ave., San Francisco, CA 94102, or at www.cpuc.ca.gov, or call 1-800-649-7570 or TDD 1-800-229-6846. If your complaint concerns interstate or international calling, write the FCC at Consumer Complaints, 445 12th Street SW, Washington, D.C. 20554, or at fccinfo@fcc.gov, or call 1-888-225-5322, or TTY 1-888-835-5322. Note: The CPUC handles complaints of both interstate and intrastate unauthorized carrier changes ( slamming ). The California consumer protection rules are available online, at www.cpuc.ca.gov. **NM customers** may also contact the New Mexico Public Regulation Commission at (800) 663-9782.)

**3rd Party Contact Information** -    Asurion Insurance Services, inc. 866-268-7221 P.O. Box 110656, Nashville, TN 37222-0656.

**Visit us at www.t-mobile.com**

---

## Change Of Address:

Effective Date _____/_____/_____

Address
|__|__|__|__|__|__|__|__|__|__|__|__|__|__|__|__|
|__|__|__|__|__|__|__|__|__|__|__|__|__|__|__|__|
City
|__|__|__|__|__| |__|__|__|__|__|__|__|__|__|__|
State |__|__|
Zip |__|__|__|__|__| - |__|__|__|__|

Home # ( ) _____

Business # ( ) _____

[ ] **EasyPay Checking**        [ ] **EasyPay Credit Card**
[ ] **EasyPay Saving**          [ ] **One Time Credit Card Charge**

Bank Account Number: |__|__|__|__|__|__|__|__|__|__|__|__|__|__|
Routing and Transit Number:|__|__|__|__|__|__|__|__|
Credit Card:   [ ] Visa  [ ] Mastercard   [ ] Discover  [ ] American Express
Credit Card No:|__|__|__|__|__|__|__|__|__|__|__|__|__|__|__|  Expiration____/____

Name as it appears on your credit card _____

EasyPay Agreement. I hereby agree that I have fully read and understand the Easy Pay account terms and conditions and that I authorize T-Mobile to debit the specified bank account or charge the specified credit card for payment of my T-Mobile bill(s). I understand that my participation in Easy Pay is to remain in effect until cancelled in writing by me, the credit card issuer, financial institution or T-Mobile. I understand that all terms and conditions of my T-Mobile Service Agreement remain in full force and effect.

Please sign and date here for EasyPay :

Signature_____Date____/____/____

Statement For:  **AMER IQBAL**
Mobile Number :  **(571) 277-6216**
Account Number:  **407100683**

**Customer Service Number    1-800-937-8997**

Mar 10, 2007

Page   3 of   16

| Used Service - (Continued) | | Type | WHENEVER | PEAK | OFF PEAK | WEEKEND |
|---|---|---|---|---|---|---|
| | My Album | Messages | 1 | - | - | - |
| | T-Mobile to T-Mobile | Minutes | - | 53 | 2 | - |

## *Account Service Detail*

| | | Amount | Totals |
|---|---|---|---|
| Previous Balance | | $  128.08 | |
| Payment Received On | 3/04/07 | $  (128.08) | |
| **Monthly Service Charges** | | | $    39.99 |
| Preferred GM Nts | | $    39.99 | |
| **Usage Charges** | | | $    21.85 |
| LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES | | $    21.60 | |
| MESSAGING CHARGES | | $     0.25 | |
| **Taxes, Fees and Surcharges** | | | $     5.81 |
| Government Fees and Taxes | | | |
| Federal Universal Service Fund | | $     0.96 | |
| Communications Sales Tax | | $     3.18 | |
| Regulatory Surcharge | | $     0.06 | |
| State 911 | | $     0.75 | |
| Regulatory Programs Fee* | | $     0.86 | |

*Fee we collect and retain to help cover our costs related to funding and complying with government mandates, programs and obligations.

| **Total Charges** | $    67.65 |
|---|---|

·T· ·Mobile·

Statement For:    AMER IQBAL
Mobile Number:    (571) 277-6216
Account Number:    407100683

Customer Service Number  1-800-937-8997

Mar 10, 2007

Page  4 of  16

### LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/10/07 | Towson MD | 8:50 AM | 443-465-2255 | | 1 | $  · | $  · | $  · |
| 2/10/07 | Incoming | 8:53 AM | Blocked NBR | | 1 | $  · | $  · | $  · |
| 2/10/07 | Incoming | 9:25 AM | Blocked NBR | | 1 | $  · | $  · | $  · |
| 2/10/07 | 1-866-# | 5:06 PM | 866-254-9078 | | 25 | $  · | $  · | $  · |
| 2/10/07 | Chicago, IL | 5:47 PM | 773-935-1621 | | 2 | $  · | $  · | $  · |
| 2/11/07 | 1-877-# | 11:39 AM | 877-746-4479 | | 1 | $  · | $  · | $  · |
| 2/11/07 | Alexandria, VA | 1:39 PM | 703-678-7926 | | 1 | $  · | $  · | $  · |
| 2/11/07 | Alexandria, VA | 1:54 PM | 703-678-7926 | | 9 | $  · | $  · | $  · |
| 2/11/07 | Chicago, IL | 2:06 PM | 773-935-1621 | | 2 | $  · | $  · | $  · |
| 2/11/07 | 1-877-# | 3:30 PM | 877-513-3866 | | 1 | $  · | $  · | $  · |
| 2/11/07 | Alexandria, VA | 3:39 PM | 703-678-7926 | | 2 | $  · | $  · | $  · |
| 2/12/07 | Washington, DC | 1:06 AM | 202-879-1600 | | 11 | $  · | $  · | $  · |
| 2/12/07 | Alexandria, VA | 11:33 AM | 703-928-8953 | | 2 | $  · | $  · | $  · |
| 2/12/07 | Washington, DC | 12:33 PM | 202-879-1252 | | 2 | $  · | $  · | $  · |
| 2/12/07 | Fls Church, VA | 12:43 PM | 703-451-2080 | | 8 | $  · | $  · | $  · |
| 2/12/07 | Fls Church, VA | 1:06 PM | 703-451-2080 | | 1 | $  · | $  · | $  · |
| 2/12/07 | Incoming | 1:36 PM | Blocked NBR | | 1 | $  · | $  · | $  · |
| 2/12/07 | Alexandria, VA | 2:01 PM | 703-838-4123 | | 5 | $  · | $  · | $  · |
| 2/12/07 | Fls Church, VA | 2:12 PM | 703-734-5000 | | 1 | $  · | $  · | $  · |
| 2/12/07 | Alexandria, VA | 2:17 PM | 703-838-4123 | | 2 | $  · | $  · | $  · |
| 2/12/07 | Sevemapxk, MD | 2:40 PM | 410-793-4441 | | 2 | $  · | $  · | $  · |
| 2/12/07 | Oxon Hill, MD | 2:41 PM | 301-870-9555 | | 2 | $  · | $  · | $  · |
| 2/12/07 | Silver Spg, MD | 2:44 PM | 301-434-8472 | | 5 | $  · | $  · | $  · |
| 2/12/07 | Washington, DC | 2:54 PM | 202-528-6556 | (F) | 2 | $  · | $  · | $  · |
| 2/12/07 | Vienna, VA | 2:55 PM | 703-369-8084 | | 1 | $  · | $  · | $  · |
| 2/12/07 | Incoming | 2:56 PM | 202-528-6556 | (F) | 2 | $  · | $  · | $  · |
| 2/12/07 | 1-800-# | 2:57 PM | 800-222-9197 | | 15 | $  · | $  · | $  · |
| 2/12/07 | Vienna, VA | 4:05 PM | 703-369-8084 | | 2 | $  · | $  · | $  · |
| 2/12/07 | Alexandria, VA | 4:06 PM | 703-838-4123 | | 3 | $  · | $  · | $  · |
| 2/12/07 | Washington, DC | 4:36 PM | 202-812-8016 | | 3 | $  · | $  · | $  · |
| 2/12/07 | Alexandria, VA | 5:08 PM | 703-928-8953 | | 2 | $  · | $  · | $  · |
| 2/12/07 | 1-888-# | 5:16 PM | 888-889-7201 | | 19 | $  · | $  · | $  · |
| 2/12/07 | Incoming | 5:35 PM | Blocked NBR | (A) | 1 | $  · | $  · | $  · |
| 2/12/07 | 1-888-# | 5:37 PM | 888-549-6881 | | 2 | $  · | $  · | $  · |
| 2/12/07 | 1-888-# | 5:39 PM | 888-549-6881 | | 3 | $  · | $  · | $  · |
| 2/12/07 | 1-888-# | 5:42 PM | 888-889-7201 | | 20 | $  · | $  · | $  · |

Call Type (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls

(K) WPS Call (U) Other (V) myFaxes Call

---

·T· ·Mobile·

Statement For:    AMER IQBAL
Mobile Number:    (571) 277-6216
Account Number:    407100683

Customer Service Number  1-800-937-8997

Mar 10, 2007

Page  5 of  16

### LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/12/07 | Alexandria, VA | 6:32 PM | 703-678-7926 | | 5 | $  · | $  · | $  · |
| 2/12/07 | Alexandria, VA | 6:37 PM | 703-678-7926 | | 1 | $  · | $  · | $  · |
| 2/12/07 | Towson, MD | 9:07 PM | 443-465-2255 | | 1 | $  · | $  · | $  · |
| 2/13/07 | 1-800-# | 8:24 AM | 800-331-5453 | | 2 | $  · | $  · | $  · |
| 2/13/07 | Fls Church, VA | 8:29 AM | 703-846-9000 | | 2 | $  · | $  · | $  · |
| 2/13/07 | Fls Church, VA | 8:31 AM | 703-846-9000 | | 2 | $  · | $  · | $  · |
| 2/13/07 | Incoming | 9:07 AM | 703-934-5146 | | 2 | $  · | $  · | $  · |
| 2/13/07 | Vienna, VA | 9:12 AM | 703-359-1246 | | 8 | $  · | $  · | $  · |
| 2/13/07 | Alexandria, VA | 9:39 AM | 703-838-4044 | | 7 | $  · | $  · | $  · |
| 2/13/07 | Vienna, VA | 9:48 AM | 703-359-8084 | | 3 | $  · | $  · | $  · |
| 2/13/07 | Washington, DC | 9:59 AM | 202-812-8016 | | 4 | $  · | $  · | $  · |
| 2/13/07 | Washington, DC | 11:49 AM | 202-879-1252 | | 1 | $  · | $  · | $  · |
| 2/13/07 | Washington, DC | 11:49 AM | 202-879-1450 | | 1 | $  · | $  · | $  · |
| 2/13/07 | Washington, DC | 11:50 AM | 202-879-1252 | | 4 | $  · | $  · | $  · |
| 2/13/07 | Washington, DC | 12:19 PM | 202-812-8016 | | 1 | $  · | $  · | $  · |
| 2/13/07 | Washington, DC | 12:19 PM | 202-812-8016 | | 1 | $  · | $  · | $  · |
| 2/13/07 | 1-800-# | 2:16 PM | 800-331-5453 | | 5 | $  · | $  · | $  · |
| 2/13/07 | Incoming | 2:35 PM | 443-474-9764 | | 2 | $  · | $  · | $  · |
| 2/13/07 | 1-800-# | 2:42 PM | 800-331-5453 | | 4 | $  · | $  · | $  · |
| 2/13/07 | Catonsvl, MD | 3:09 PM | 443-474-9764 | | 2 | $  · | $  · | $  · |
| 2/13/07 | Catonsvl, MD | 3:13 PM | 443-474-9764 | | 2 | $  · | $  · | $  · |
| 2/13/07 | Incoming | 3:14 PM | 443-474-9764 | (A) | 2 | $  · | $  · | $  · |
| 2/13/07 | Washington, DC | 3:39 PM | 202-879-1252 | | 2 | $  · | $  · | $  · |
| 2/13/07 | Incoming | 3:45 PM | 703-779-7063 | | 4 | $  · | $  · | $  · |
| 2/13/07 | Incoming | 3:55 PM | 703-779-7063 | | 2 | $  · | $  · | $  · |
| 2/13/07 | Leesburg, VA | 4:09 PM | 703-779-7063 | | 1 | $  · | $  · | $  · |
| 2/13/07 | Leesburg, VA | 4:11 PM | 703-779-7063 | | 2 | $  · | $  · | $  · |
| 2/13/07 | Leesburg, VA | 4:39 PM | 703-779-7063 | | 3 | $  · | $  · | $  · |
| 2/13/07 | Leesburg, VA | 4:35 PM | 703-779-7069 | | 4 | $  · | $  · | $  · |
| 2/13/07 | Fls Church, VA | 4:39 PM | 703-451-2080 | | 7 | $  · | $  · | $  · |
| 2/14/07 | Alexandria, VA | 6:15 PM | 571-212-3177 | | 3 | $  · | $  · | $  · |
| 2/14/07 | Arlington, VA | 7:55 AM | 703-841-5200 | | 1 | $  · | $  · | $  · |
| 2/14/07 | Incoming | 8:15 AM | 92301827 9796 | | 3 | $  · | $  · | $  · |
| 2/14/07 | Incoming | 8:18 AM | 92301827 9796 | | 8 | $  · | $  · | $  · |
| 2/14/07 | Bethesda, MD | 9:12 AM | 301-272-8129 | | 2 | $  · | $  · | $  · |
| 2/14/07 | Silver Spg, MD | 11:55 AM | 301-434-8472 | | 2 | $  · | $  · | $  · |

Call Type (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls

(K) WPS Call (U) Other (V) myFaxes Call

Statement For: **AMER IQBAL**
Mobile Number: **(571) 277-6216**
Account Number: **407100683**

Customer Service Number   1-800-937-8997

Mar 10, 2007

### LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/15/07 | Washington, DC | 11:10 AM | 202-879-1400 | | 13 | $ | $ | $ |
| 2/15/07 | Washington, DC | 11:23 AM | 202-879-1134 | | 10 | $ | $ | $ |
| 2/15/07 | Washington, DC | 12:17 PM | 202-879-1600 | | 3 | $ | $ | $ |
| 2/15/07 | 1-800 # | 12:27 PM | 800-347-5540 | | 17 | $ | $ | $ |
| 2/15/07 | Washington, DC | 1:02 PM | 202-686-0010 | | 1 | $ | $ | $ |
| 2/15/07 | Washington, DC | 1:03 PM | 202-686-0010 | | 3 | $ | $ | $ |
| 2/15/07 | Washington, DC | 1:08 PM | 202-879-1600 | | 3 | $ | $ | $ |
| 2/15/07 | Fls Church, VA | 1:11 PM | 703-846-9000 | | 1 | $ | $ | $ |
| 2/15/07 | 1-800 # | 1:19 PM | 800-229-9197 | | 4 | $ | $ | $ |
| 2/15/07 | Silver Spg, MD | 1:25 PM | 301-495-0010 | | 2 | $ | $ | $ |
| 2/15/07 | Alexandria, VA | 1:29 PM | 703-928-8953 | | 1 | $ | $ | $ |
| 2/15/07 | Washington, DC | 2:01 PM | 202-536-2353 | | 1 | $ | $ | $ |
| 2/15/07 | Washington, DC | 2:03 PM | 202-496-2846 | | 1 | $ | $ | $ |
| 2/15/07 | Washington, DC | 2:04 PM | 202-237-6800 | | 9 | $ | $ | $ |
| 2/15/07 | Washington, DC | 2:13 PM | 202-452-9550 | | 2 | $ | $ | $ |
| 2/15/07 | Washington, DC | 2:15 PM | 202-628-1161 | | 2 | $ | $ | $ |
| 2/15/07 | Alexandria, VA | 2:22 PM | 703-928-8953 | | 3 | $ | $ | $ |
| 2/15/07 | Alexandria, VA | 2:25 PM | 703-838-4141 | | 1 | $ | $ | $ |
| 2/15/07 | Washington, DC | 2:44 PM | 202-812-8016 | | 1 | $ | $ | $ |
| 2/15/07 | Washington, DC | 2:49 PM | 202-812-8016 | | 4 | $ | $ | $ |
| 2/15/07 | Washington, DC | 2:53 PM | 202-398-4200 | | 3 | $ | $ | $ |
| 2/15/07 | Washington, DC | 2:58 PM | 202-237-6800 | | 1 | $ | $ | $ |
| 2/15/07 | Washington, DC | 3:16 PM | 202-398-4200 | | 2 | $ | $ | $ |
| 2/15/07 | Incoming | 3:39 PM | 202-398-4200 | | 2 | $ | $ | $ |
| 2/15/07 | Washington, DC | 3:58 PM | 202-398-4200 | | 2 | $ | $ | $ |
| 2/15/07 | Washington, DC | 4:02 PM | 202-879-1600 | | 1 | $ | $ | $ |
| 2/15/07 | 1-866 # | 6:20 PM | 866-556-9964 | | 1 | $ | $ | $ |
| 2/15/07 | Chicago, IL | 6:43 PM | 773-935-1865 | | 13 | $ | $ | $ |
| 2/15/07 | 1-877 # | 6:44 PM | 877-746-4479 | | 1 | $ | $ | $ |
| 2/15/07 | 1-877 # | 7:22 PM | 877-746-4479 | | 14 | $ | $ | $ |
| 2/16/07 | Alexandria, VA | 10:42 AM | 703-838-4141 | | 2 | $ | $ | $ |
| 2/16/07 | Washington, DC | 11:28 AM | 202-398-4200 | | 2 | $ | $ | $ |
| 2/16/07 | Alexandria, VA | 12:59 PM | 703-928-8953 | | 1 | $ | $ | $ |
| 2/16/07 | Incoming | 1:55 PM | 202-812-8016 | | 2 | $ | $ | $ |
| 2/16/07 | Washington, DC | 2:30 PM | 202-812-8016 | | 3 | $ | $ | $ |
| 2/16/07 | Incoming | 2:41 PM | 571-212-3177 | | 6 | $ | $ | $ |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

---

Statement For: **AMER IQBAL**
Mobile Number: **(571) 277-6216**
Account Number: **407100683**

Customer Service Number   1-800-937-8997

Mar 10, 2007

### LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/14/07 | Washington, DC | 2:26 PM | 202-737-4700 | | 2 | $ | $ | $ |
| 2/14/07 | Washington, DC | 2:29 PM | 202-223-6600 | | 5 | $ | $ | $ |
| 2/14/07 | Washington, DC | 2:34 PM | 202-628-1161 | | 2 | $ | $ | $ |
| 2/14/07 | 1-800 # | 2:36 PM | 800-358-8840 | | 1 | $ | $ | $ |
| 2/14/07 | 1-800 # | 2:36 PM | 800-358-8840 | | 1 | $ | $ | $ |
| 2/14/07 | Washington, DC | 2:36 PM | 202-452-9550 | | 1 | $ | $ | $ |
| 2/14/07 | Washington, DC | 2:37 PM | 202-319-6788 | | 1 | $ | $ | $ |
| 2/14/07 | Incoming | 3:00 PM | 202-686-0702 | | 6 | $ | $ | $ |
| 2/14/07 | Washington, DC | 3:08 PM | 202-686-0010 | | 4 | $ | $ | $ |
| 2/14/07 | Washington, DC | 3:13 PM | 202-686-0010 | | 1 | $ | $ | $ |
| 2/14/07 | Washington, DC | 3:17 PM | 202-686-0010 | | 1 | $ | $ | $ |
| 2/14/07 | Arlington, VA | 3:48 PM | 703-841-7034 | | 1 | $ | $ | $ |
| 2/14/07 | Arlington, VA | 3:57 PM | 703-615-3771 | | 3 | $ | $ | $ |
| 2/14/07 | Washington, DC | 3:59 PM | 202-686-0010 | | 2 | $ | $ | $ |
| 2/14/07 | Washington, DC | 7:05 PM | 443-474-9764 | | 17 | $ | $ | $ |
| 2/14/07 | Catonsvl, MD | 7:45 PM | 443-474-9764 | | 2 | $ | $ | $ |
| 2/15/07 | Washington, DC | 9:17 PM | 202-536-2353 | | 2 | $ | $ | $ |
| 2/15/07 | Alexandria, VA | 8:52 AM | 703-838-4141 | | 5 | $ | $ | $ |
| 2/15/07 | Silver Spg, MD | 8:57 AM | 301-434-8472 | | 1 | $ | $ | $ |
| 2/15/07 | Arlington, VA | 9:01 AM | 703-841-5566 | | 4 | $ | $ | $ |
| 2/15/07 | Alexandria, VA | 9:39 AM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/15/07 | Alexandria, VA | 9:43 AM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/15/07 | Alexandria, VA | 9:45 AM | 202-536-2353 | | 1 | $ | $ | $ |
| 2/15/07 | Arlington, VA | 9:47 AM | 703-841-5566 | | 2 | $ | $ | $ |
| 2/15/07 | Washington, DC | 9:51 AM | 202-686-0010 | | 1 | $ | $ | $ |
| 2/15/07 | Alexandria, VA | 9:53 AM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/15/07 | Alexandria, VA | 10:00 AM | 703-838-4141 | | 2 | $ | $ | $ |
| 2/15/07 | Alexandria, VA | 10:12 AM | 703-838-4123 | | 11 | $ | $ | $ |
| 2/15/07 | Silver Spg, MD | 10:16 AM | 301-434-8472 | | 5 | $ | $ | $ |
| 2/15/07 | Silver Spg, MD | 10:21 AM | 301-439-5400 | | 2 | $ | $ | $ |
| 2/15/07 | Washington, DC | 10:41 AM | 202-879-1680 | | 3 | $ | $ | $ |
| 2/15/07 | Washington, DC | 10:45 AM | 202-548-0016 | | 1 | $ | $ | $ |
| 2/15/07 | Washington, DC | 10:52 AM | 202-463-1260 | | 1 | $ | $ | $ |
| 2/15/07 | Washington, DC | 11:00 AM | 202-879-1133 | | 11 | $ | $ | $ |
| 2/15/07 | Washington, DC | 11:10 AM | 202-879-1400 | | 1 | $ | $ | $ |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

Statement For:  AMER IQBAL
Mobile Number:  (571) 277-6216
Account Number:  407100683

Customer Service Number  1-800-937-8997

Mar 10, 2007

Page 8 of 16

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/16/07 | Durham, NC | 2:55 PM | 919-668-1004 | | 2 | $ - | $ - | $ - |
| 2/16/07 | Washington, DC | 4:13 PM | 202-812-8016 | | 3 | $ - | $ - | $ - |
| 2/16/07 | Washington, DC | 7:24 PM | 202-398-4200 | | 1 | $ - | $ - | $ - |
| 2/17/07 | Alexandria, VA | 9:56 AM | 703-928-8953 | | 1 | $ - | $ - | $ - |
| 2/17/07 | Alexandria, VA | 10:11 AM | 571-212-3177 | | 1 | $ - | $ - | $ - |
| 2/17/07 | Alexandria, VA | 11:08 AM | 703-928-8953 | | 1 | $ - | $ - | $ - |
| 2/17/07 | Incoming | 11:16 AM | 703-928-8953 | | 2 | $ - | $ - | $ - |
| 2/17/07 | Alexandria, VA | 11:18 AM | 571-232-0477 | | 2 | $ - | $ - | $ - |
| 2/17/07 | Silver Spg, MD | 12:35 PM | 301-495-0010 | | 5 | $ - | $ - | $ - |
| 2/17/07 | Alexandria, VA | 1:54 PM | 571-212-3177 | | 1 | $ - | $ - | $ - |
| 2/17/07 | Alexandria, VA | 2:59 PM | 571-232-0477 | | 1 | $ - | $ - | $ - |
| 2/17/07 | Alexandria, VA | 3:09 PM | 571-232-0477 | | 1 | $ - | $ - | $ - |
| 2/17/07 | Alexandria, VA | 3:12 PM | 571-232-0477 | | 2 | $ - | $ - | $ - |
| 2/17/07 | Catonsvl, MD | 3:39 PM | 443-474-9784 | | 1 | $ - | $ - | $ - |
| 2/17/07 | Incoming | 3:41 PM | 571-232-0477 | | 1 | $ - | $ - | $ - |
| 2/17/07 | Mt Gilead, VA | 10:12 PM | 540-338-1188 | | 3 | $ - | $ - | $ - |
| 2/18/07 | Alexandria, VA | 9:42 AM | 571-212-3177 | | 2 | $ - | $ - | $ - |
| 2/18/07 | Alexandria, VA | 10:55 AM | 571-212-3177 | | 1 | $ - | $ - | $ - |
| 2/18/07 | Alexandria, VA | 12:14 PM | 571-212-3177 | | 1 | $ - | $ - | $ - |
| 2/18/07 | Alexandria, VA | 12:16 PM | 571-212-3177 | | 1 | $ - | $ - | $ - |
| 2/18/07 | Alexandria, VA | 12:35 PM | 571-212-3177 | | 1 | $ - | $ - | $ - |
| 2/18/07 | Alexandria, VA | 12:55 PM | 571-212-3177 | | 3 | $ - | $ - | $ - |
| 2/18/07 | Alexandria, VA | 3:46 PM | 571-212-3177 | | 1 | $ - | $ - | $ - |
| 2/18/07 | Incoming | 3:49 PM | 571-212-3177 | | 1 | $ - | $ - | $ - |
| 2/18/07 | Alexandria, VA | 4:26 PM | 571-212-3177 | | 4 | $ - | $ - | $ - |
| 2/18/07 | Mt Gilead, VA | 4:51 PM | 540-338-1188 | | 2 | $ - | $ - | $ - |
| 2/18/07 | Washington, DC | 11:02 PM | 202-879-1133 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Fls Church, VA | 7:22 AM | 703-846-9000 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Lawrencevl, VA | 7:37 AM | 434-846-2315 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 7:49 AM | 202-879-1600 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 7:51 AM | 202-879-1600 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 7:54 AM | 202-879-1600 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 7:57 AM | 202-879-1600 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 8:00 AM | 202-879-1600 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 8:07 AM | 202-879-1600 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 8:10 AM | 202-879-7830 | | 1 | $ - | $ - | $ - |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

Page 9 of 16

Statement For:  AMER IQBAL
Mobile Number:  (571) 277-6216
Account Number:  407100683

Customer Service Number  1-800-937-8997

Mar 10, 2007

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/19/07 | Washington, DC | 8:11 AM | 202-879-1100 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 8:13 AM | 202-879-1252 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 8:15 AM | 202-879-1600 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 8:20 AM | 202-879-1600 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Catonsvl, MD | 8:35 AM | 443-474-9784 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Durham, NC | 8:43 AM | 919-668-1119 | | 2 | $ - | $ - | $ - |
| 2/19/07 | Arlington, VA | 9:08 AM | 709-841-7013 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 9:31 AM | 202-879-1600 | | 3 | $ - | $ - | $ - |
| 2/19/07 | Lawrencevl, VA | 12:01 PM | 434-846-2315 | | 2 | $ - | $ - | $ - |
| 2/19/07 | Bethesda, MD | 12:15 PM | 301-272-8259 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Bethesda, MD | 12:15 PM | 301-272-8200 | | 2 | $ - | $ - | $ - |
| 2/19/07 | Occoquan, VA | 12:21 PM | 703-296-0275 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Occoquan, VA | 12:22 PM | 703-499-2040 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Alexandria, VA | 12:44 PM | 571-212-3177 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Silver Spg, MD | 12:37 PM | 301-495-0010 | | 5 | $ - | $ - | $ - |
| 2/19/07 | Mt Gilead, VA | 12:50 PM | 540-338-6310 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Alexandria, VA | 12:51 PM | 703-678-7926 | | 2 | $ - | $ - | $ - |
| 2/19/07 | Silver Spg, MD | 12:53 PM | 301-495-0010 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 12:58 PM | 202-789-8460 | | 2 | $ - | $ - | $ - |
| 2/19/07 | Bethesda, MD | 1:17 PM | 301-272-8129 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Silver Spg, MD | 1:26 PM | 301-409-5400 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Washington, DC | 1:56 PM | 202-448-1215 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Incoming | 1:59 PM | 301-272-8259 | | 5 | $ - | $ - | $ - |
| 2/19/07 | Alexandria, VA | 4:05 PM | 571-232-0477 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Occoquan, VA | 4:19 PM | 703-296-0275 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Alexandria, VA | 4:24 PM | 703-928-8953 | | 2 | $ - | $ - | $ - |
| 2/19/07 | Alexandria, VA | 4:28 PM | 571-232-0477 | | 4 | $ - | $ - | $ - |
| 2/19/07 | Alexandria, VA | 4:45 PM | 202-879-4840 | | 3 | $ - | $ - | $ - |
| 2/19/07 | Alexandria, VA | 8:41 PM | 703-678-7926 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Incoming | 9:24 PM | 703-678-7926 | | 1 | $ - | $ - | $ - |
| 2/19/07 | Incoming | 10:03 PM | 703-678-7926 | | 1 | $ - | $ - | $ - |
| 2/20/07 | Bronx Nyc, NY | 8:02 AM | 718-823-4028 | | 8 | $ - | $ - | $ - |
| 2/20/07 | Silver Spg, MD | 8:22 AM | 301-495-0010 | | 2 | $ - | $ - | $ - |
| 2/20/07 | Bethesda, MD | 9:03 AM | 301-272-8259 | | 2 | $ - | $ - | $ - |
| 2/20/07 | Bethesda, MD | 9:05 AM | 301-272-8200 | | 2 | $ - | $ - | $ - |
| 2/20/07 | Washington, DC | 9:05 AM | 202-879-4840 | | 3 | $ - | $ - | $ - |
| 2/20/07 | Silver Spg, MD | 9:10 AM | 301-439-5400 | | 2 | $ - | $ - | $ - |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

Statement For:  AMER IQBAL
Mobile Number:  (571) 277-6216
Account Number:  407100683

Customer Service Number  1-800-937-8997

Mar 10, 2007

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/20/07 | Washington, DC | 9:11 AM | 202-536-2353 | | 2 | $ | $ | $ |
| 2/20/07 | Bethesda, MD | 9:18 AM | 301-272-8129 | | 1 | $ | $ | $ |
| 2/20/07 | Arlington, VA | 9:30 AM | 703-841-5200 | | 6 | $ | $ | $ |
| 2/20/07 | Incoming | 9:38 AM | 443-538-1596 | (F) | 4 | $ | $ | $ |
| 2/20/07 | Incoming | 9:41 AM | 202-536-2353 | (A) | 1 | $ | $ | $ |
| 2/20/07 | Washington, DC | 9:42 AM | 202-536-2353 | | 1 | $ | $ | $ |
| 2/20/07 | Columbia, MD | 9:45 AM | 443-538-1596 | (F) | 2 | $ | $ | $ |
| 2/20/07 | Columbia, MD | 9:47 AM | 443-538-1596 | (F) | 5 | $ | $ | $ |
| 2/20/07 | Incoming | 9:51 AM | 443-538-1596 | (F) | 4 | $ | $ | $ |
| 2/20/07 | Arlington, VA | 10:00 AM | 703-684-5566 | | 2 | $ | $ | $ |
| 2/20/07 | Washington, DC | 10:05 AM | 202-536-2353 | | 5 | $ | $ | $ |
| 2/20/07 | Washington, DC | 10:16 AM | 202-536-2353 | | 4 | $ | $ | $ |
| 2/20/07 | Washington, DC | 10:33 AM | 202-879-1600 | | 4 | $ | $ | $ |
| 2/20/07 | Washington, DC | 10:37 AM | 202-536-2353 | | 4 | $ | $ | $ |
| 2/20/07 | Alexandria, VA | 10:43 AM | 703-928-8953 | | 3 | $ | $ | $ |
| 2/20/07 | Silver Sbg, MD | 10:48 AM | 301-439-5400 | | 1 | $ | $ | $ |
| 2/20/07 | Alexandria, VA | 10:53 AM | 571-232-2477 | | 2 | $ | $ | $ |
| 2/20/07 | Arlington, VA | 11:03 AM | 703-684-5566 | | 2 | $ | $ | $ |
| 2/20/07 | Incoming | 11:07 AM | 703-499-2040 | | 2 | $ | $ | $ |
| 2/20/07 | Occoquan, VA | 11:09 AM | 703-499-2040 | | 1 | $ | $ | $ |
| 2/20/07 | Washington, DC | 11:43 AM | 202-686-0010 | | 3 | $ | $ | $ |
| 2/20/07 | Silver Sbg, MD | 11:47 AM | 301-485-0010 | | 3 | $ | $ | $ |
| 2/20/07 | Incoming | 12:14 PM | 571-232-2477 | | 9 | $ | $ | $ |
| 2/20/07 | Washington, DC | 12:33 PM | 202-879-1600 | | 4 | $ | $ | $ |
| 2/20/07 | Washington, DC | 12:37 PM | 202-879-1600 | | 3 | $ | $ | $ |
| 2/20/07 | Lawrencevl, VA | 12:48 PM | 434-848-2315 | | 2 | $ | $ | $ |
| 2/20/07 | Silver Sbg, MD | 1:54 PM | 703-841-5200 | | 1 | $ | $ | $ |
| 2/20/07 | Arlington, VA | 1:10 PM | 703-684-5566 | | 1 | $ | $ | $ |
| 2/23/07 | Norfolk, VA | 1:28 PM | 757-622-0374 | | 4 | $ | $ | $ |
| 2/23/07 | Bethesda, MD | 1:57 PM | 301-272-8259 | | 1 | $ | $ | $ |
| 2/23/07 | Lawrencevl, VA | 1:59 PM | 434-848-2315 | | 3 | $ | $ | $ |
| 2/20/07 | Bethesda, MD | 2:06 PM | 301-272-8259 | | 3 | $ | $ | $ |
| 2/20/07 | Bethesda, MD | 2:22 PM | 301-272-8259 | | 2 | $ | $ | $ |
| 2/20/07 | Arlington, VA | 2:39 PM | 703-841-7034 | | 1 | $ | $ | $ |
| 2/23/07 | Bethesda, MD | 2:42 PM | 301-272-8346 | | 1 | $ | $ | $ |
| 2/23/07 | Arlington, VA | 2:59 PM | 703-615-3771 | | 2 | $ | $ | $ |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

Statement For:  AMER IQBAL
Mobile Number:  (571) 277-6216
Account Number:  407100683

Customer Service Number  1-800-937-8997

Mar 10, 2007

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/20/07 | Arlington, VA | 3:09 PM | 703-684-5566 | | 1 | $ | $ | $ |
| 2/20/07 | Alexandria, VA | 3:17 PM | 703-600-2328 | | 2 | $ | $ | $ |
| 2/20/07 | Fls Church, VA | 3:19 PM | 703-846-9000 | | 2 | $ | $ | $ |
| 2/20/07 | Washington, DC | 3:32 PM | 202-879-1600 | | 5 | $ | $ | $ |
| 2/20/07 | Incoming | 3:56 PM | 301-272-8346 | | 2 | $ | $ | $ |
| 2/20/07 | Silver Sbg, MD | 4:17 PM | 301-439-5400 | | 4 | $ | $ | $ |
| 2/20/07 | Washington, DC | 4:58 PM | 202-879-1600 | | 2 | $ | $ | $ |
| 2/20/07 | Washington, DC | 5:40 PM | 202-879-1133 | | 1 | $ | $ | $ |
| 2/20/07 | Arlington, VA | 5:44 PM | 703-841-7034 | | 1 | $ | $ | $ |
| 2/20/07 | Alexandria, VA | 6:52 PM | 703-928-8953 | | 1 | $ | $ | $ |
| 2/21/07 | Arlington, VA | 7:04 PM | 703-841-7034 | | 10 | $ | $ | $ |
| 2/21/07 | 1-888 # | 10:44 AM | 888-913-8784 | | 1 | $ | $ | $ |
| 2/21/07 | 1-888 # | 10:45 AM | 888-913-8784 | | 2 | $ | $ | $ |
| 2/21/07 | 1-888 # | 10:48 AM | 888-913-8784 | | 4 | $ | $ | $ |
| 2/21/07 | Washington, DC | 10:54 AM | 202-879-1133 | | 15 | $ | $ | $ |
| 2/21/07 | 1-888 # | 11:19 AM | 888-913-8784 | | 2 | $ | $ | $ |
| 2/21/07 | Silver Sbg, MD | 11:30 AM | 301-439-5400 | | 3 | $ | $ | $ |
| 2/21/07 | Lawrencevl, VA | 11:33 AM | 434-848-2315 | | 1 | $ | $ | $ |
| 2/21/07 | Arlington, VA | 11:37 AM | 703-684-5566 | | 1 | $ | $ | $ |
| 2/21/07 | Lawrencevl, VA | 12:18 PM | 434-848-2215 | | 1 | $ | $ | $ |
| 2/21/07 | Bolivia, NC | 12:23 PM | 910-253-8509 | | 1 | $ | $ | $ |
| 2/21/07 | Incoming | 12:38 PM | 724-861-3401 | | 16 | $ | $ | $ |
| 2/21/07 | Washington, DC | 2:14 PM | 202-686-0010 | | 3 | $ | $ | $ |
| 2/21/07 | Washington, DC | 2:17 PM | 202-686-0010 | | 1 | $ | $ | $ |
| 2/21/07 | Silver Sbg, MD | 4:32 PM | 301-439-5400 | | 2 | $ | $ | $ |
| 2/21/07 | Silver Sbg, MD | 5:03 PM | 301-439-5400 | | 1 | $ | $ | $ |
| 2/21/07 | Occoquan, VA | 5:49 PM | 703-499-2040 | | 2 | $ | $ | $ |
| 2/22/07 | Washington, DC | 9:45 AM | 202-686-0010 | | 2 | $ | $ | $ |
| 2/22/07 | Lawrencevl, VA | 10:07 AM | 434-848-8376 | | 3 | $ | $ | $ |
| 2/22/07 | Washington, DC | 10:12 AM | 202-686-0010 | | 2 | $ | $ | $ |
| 2/22/07 | Bethesda, MD | 10:23 AM | 301-272-8129 | | 2 | $ | $ | $ |
| 2/22/07 | Arlington, VA | 10:25 AM | 703-841-7034 | | 1 | $ | $ | $ |
| 2/22/07 | Arlington, VA | 10:46 AM | 703-841-5200 | | 3 | $ | $ | $ |
| 2/22/07 | Arlington, VA | 10:48 AM | 703-841-5200 | | 3 | $ | $ | $ |
| 2/23/07 | Bethesda, MD | 10:55 AM | 301-272-8129 | | 3 | $ | $ | $ |
| 2/23/07 | Incoming | 11:30 AM | 724-861-3401 | | 3 | $ | $ | $ |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call



·**T**··**Mobile**·

Case 1:07-cv-00408-RMU    Document 9-14    Filed 03/29/2007    Page 19 of 21

## Left Statement

Statement For:  AMER IQBAL
Mobile Number:  (571) 277-6216
Account Number:  407100683

Customer Service Number  1-800-937-8897

Mar 10 2007

Page 12 of 16

**LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)**

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/22/07 | Bethesda, MD | 11:40 AM | 301-272-8346 | | 1 | $ | $ | $ |
| 2/22/07 | Silver Spg, MD | 6:24 PM | 301-439-5400 | | 2 | $ | $ | $ |
| 2/22/07 | Verizon Ca, VA | 9:00 PM | 540-954-6222 | | 3 | $ | $ | $ |
| 2/23/07 | Washington, DC | 9:31 AM | 202-398-4200 | | 1 | $ | $ | $ |
| 2/23/07 | Incoming | 9:36 AM | 202-812-8017 | | 3 | $ | $ | $ |
| 2/23/07 | Bethesda, MD | 9:40 AM | 301-272-8129 | | 1 | $ | $ | $ |
| 2/23/07 | Washington, DC | 10:07 AM | 202-879-1600 | | 1 | $ | $ | $ |
| 2/23/07 | Washington, DC | 10:15 AM | 202-879-1600 | | 3 | $ | $ | $ |
| 2/23/07 | Durham, NC | 10:26 AM | 919-668-1004 | | 3 | $ | $ | $ |
| 2/23/07 | Alexandria, VA | 10:30 AM | 703-929-2450 | | 1 | $ | $ | $ |
| 2/23/07 | Incoming | 10:37 AM | 703-929-2450 | | 2 | $ | $ | $ |
| 2/23/07 | Incoming | 1:47 PM | 301-252-6512 | | 1 | $ | $ | $ |
| 2/23/07 | Columbia, MD | 2:27 PM | 443-538-1596 | (F) | 3 | $ | $ | $ |
| 2/23/07 | Columbia, MD | 3:10 PM | 443-538-1596 | (F) | 2 | $ | $ | $ |
| 2/23/07 | Silver Spg, MD | 3:42 PM | 301-439-5400 | | 1 | $ | $ | $ |
| 2/23/07 | Columbia, MD | 3:43 PM | 443-538-1596 | (F) | 1 | $ | $ | $ |
| 2/23/07 | Columbia, MD | 3:56 PM | 443-538-1596 | (F) | 1 | $ | $ | $ |
| 2/23/07 | Columbia, MD | 4:14 PM | 202-354-3165 | | 2 | $ | $ | $ |
| 2/23/07 | Silver Spg, MD | 4:15 PM | 301-439-5400 | | 1 | $ | $ | $ |
| 2/23/07 | Silver Spg, MD | 4:17 PM | 301-434-8472 | | 2 | $ | $ | $ |
| 2/23/07 | Columbia, MD | 4:19 PM | 443-538-1596 | (F) | 1 | $ | $ | $ |
| 2/23/07 | Columbia, MD | 4:31 PM | 443-538-1596 | (F) | 2 | $ | $ | $ |
| 2/23/07 | Incoming | 4:49 PM | 254-309-9879 | | 1 | $ | $ | $ |
| 2/23/07 | Washington, DC | 4:58 PM | 202-538-9454 | | 15 | $ | $ | $ |
| 2/23/07 | Incoming | 4:59 PM | 202-538-9454 | | 1 | $ | $ | $ |
| 2/23/07 | Washington, DC | 5:14 PM | 202-354-3000 | | 2 | $ | $ | $ |
| 2/23/07 | Washington, DC | 5:16 PM | 202-353-0600 | | 2 | $ | $ | $ |
| 2/23/07 | Washington, DC | 5:27 PM | 202-538-9454 | | 3 | $ | $ | $ |
| 2/23/07 | Silver Spg, MD | 5:43 PM | 301-439-5400 | | 3 | $ | $ | $ |
| 2/23/07 | Alexandria, VA | 7:12 PM | 703-928-8693 | | 8 | $ | $ | $ |
| 2/24/07 | Dust Care | 1:18 PM | 800-937-8997 | (H) | 3 | $ | $ | $ |
| 2/24/07 | Dust Care | 1:21 PM | 800-937-8997 | (H) | 28 | $ | $ | $ |
| 2/24/07 | Occoquan, VA | 5:28 PM | 703-499-2260 | | 1 | $ | $ | $ |
| 2/25/07 | Incoming | 10:52 AM | 92301627976 | | 5 | $ | $ | $ |
| 2/26/07 | Washington, DC | 6:54 AM | 202-686-0010 | | 2 | $ | $ | $ |
| 2/26/07 | Gaithersbg, MD | 6:56 AM | 301-252-6512 | | 1 | $ | $ | $ |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

## Right Statement

Statement For:  AMER IQBAL
Mobile Number:  (571) 277-6216
Account Number:  407100683

Customer Service Number  1-800-937-8897

Mar 10 2007

Page 13 of 16

**LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)**

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 2/26/07 | Incoming | 7:38 AM | 301-252-6512 | | 2 | $ | $ | $ |
| 2/26/07 | Incoming | 7:58 AM | 301-252-6512 | | 1 | $ | $ | $ |
| 2/26/07 | Incoming | 9:47 AM | 301-252-6512 | | 1 | $ | $ | $ |
| 2/26/07 | Alexandria, VA | 3:37 PM | 703-838-4123 | | 6 | $ | $ | $ |
| 2/26/07 | Gaithersbg, MD | 5:14 PM | 301-252-6512 | | 1 | $ | $ | $ |
| 2/26/07 | Washington, DC | 5:21 PM | 202-686-0010 | | 2 | $ | $ | $ |
| 2/26/07 | Alexandria, VA | 6:44 PM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/26/07 | Alexandria, VA | 7:29 PM | 571-212-3177 | | 2 | $ | $ | $ |
| 2/26/07 | Incoming | 7:34 PM | 571-212-3177 | | 1 | $ | $ | $ |
| 2/27/07 | Incoming | 7:01 AM | 301-252-6512 | | 1 | $ | $ | $ |
| 2/27/07 | Incoming | 7:14 AM | 92301627976 | | 1 | $ | $ | $ |
| 2/27/07 | Washington, DC | 1:12 PM | 202-812-8016 | | 2 | $ | $ | $ |
| 2/27/07 | Washington, DC | 1:31 PM | 301-252-6512 | | 1 | $ | $ | $ |
| 2/27/07 | Washington, DC | 1:54 PM | 202-841-9382 | | 2 | $ | $ | $ |
| 2/27/07 | Bethesda, MD | 2:57 PM | 301-272-8259 | | 1 | $ | $ | $ |
| 2/27/07 | Bethesda, MD | 3:01 PM | 301-272-8259 | | 1 | $ | $ | $ |
| 2/27/07 | Incoming | 3:10 PM | 301-272-8259 | | 4 | $ | $ | $ |
| 2/27/07 | Washington, DC | 3:50 PM | 202-841-9382 | | 3 | $ | $ | $ |
| 2/27/07 | Washington, DC | 4:32 PM | 202-398-4200 | | 1 | $ | $ | $ |
| 2/27/07 | Incoming | 4:37 PM | 202-812-8017 | | 2 | $ | $ | $ |
| 2/27/07 | Washington, DC | 5:40 PM | 202-841-9382 | | 2 | $ | $ | $ |
| 2/27/07 | Gaithersbg, MD | 5:41 PM | 301-252-6512 | | 1 | $ | $ | $ |
| 2/27/07 | Gaithersbg, MD | 5:44 PM | 301-252-6512 | | 1 | $ | $ | $ |
| 2/27/07 | 1-800 # | 6:32 PM | 800-922-4684 | | 1 | $ | $ | $ |
| 2/28/07 | Washington, DC | 7:58 AM | 202-841-9382 | | 1 | $ | $ | $ |
| 2/28/07 | Incoming | 9:44 AM | 301-252-6512 | | 1 | $ | $ | $ |
| 2/28/07 | Gaithersbg, MD | 10:00 AM | 301-252-6512 | | 1 | $ | $ | $ |
| 2/28/07 | Washington, DC | 2:00 PM | 202-354-3050 | | 5 | $ | $ | $ |
| 2/28/07 | Washington, DC | 2:17 PM | 202-354-3370 | | 2 | $ | $ | $ |
| 2/28/07 | Gaithersbg, MD | 6:23 PM | 301-252-6512 | | 1 | $ | $ | $ |
| 2/28/07 | Alexandria, VA | 7:52 PM | 571-212-3177 | | 2 | $ | $ | $ |
| 3/01/07 | 1-800 # | 6:31 AM | 800-922-4684 | | 2 | $ | $ | $ |
| 3/01/07 | 1-800 # | 6:33 AM | 800-922-4684 | | 13 | $ | $ | $ |
| 3/02/07 | Washington, DC | 7:57 AM | 202-686-0010 | | 1 | $ | $ | $ |
| 3/02/07 | Gaithersbg, MD | 7:59 AM | 301-252-6512 | | 2 | $ | $ | $ |
| 3/02/07 | Incoming | 8:14 AM | 301-252-6512 | | 3 | $ | $ | $ |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

T - - rrrrorral

Statement For:   AMER IQBAL
Mobile Number :  (571) 277-6216
Account Number:  407100683

Customer Service Number  1-800-937-8997

Mar 10, 2007



**LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)**

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges |
|---|---|---|---|---|---|---|---|
| 3/05/07 | Incoming | 11:19 AM | 301-468-0123 | | 5 | $ - | $ - |
| 3/05/07 | Kensington, MD | 11:24 AM | 301-468-0123 | | 1 | $ - | $ - |
| 3/05/07 | Alexandria, VA | 3:43 PM | 709-838-4144 | | 1 | $ - | $ - |
| 3/05/07 | Gaithersburg, MD | 3:44 PM | 709-838-4044 | | 3 | $ - | $ - |
| 3/05/07 | Alexandria, VA | 3:47 PM | 709-838-4044 | | 1 | $ - | $ - |
| 3/05/07 | Incoming | 3:53 PM | | | 5 | $ - | $ - |
| 3/05/07 | Washington, DC | 12:01 PM | 301-872-8259 | | 2 | $ 0.40 | $ - |
| 3/06/07 | Incoming | 12:01 PM | 202-354-3050 | | 11 | $ 4.40 | $ - |
| 3/06/07 | Catonsvl, MD | 5:41 PM | 443-474-9764 | | 1 | $ 0.40 | $ - |
| 3/06/07 | Catonsvl, MD | 5:42 PM | 443-474-9764 | | | $ 0.40 | $ - |
| 3/06/07 | Towson, MD | 5:43 PM | 443-465-2218 | | 1 | $ 0.40 | $ - |
| 3/06/07 | Catonsvl, MD | 5:48 PM | 443-474-9764 | | 1 | $ 0.40 | $ - |
| 3/06/07 | Incoming | 6:03 PM | 443-474-9764 | | 1 | $ 0.40 | $ - |
| 3/06/07 | Catonsvl, MD | 6:07 PM | 443-474-9764 | | 1 | $ 0.40 | $ - |
| 3/06/07 | Catonsvl, MD | 6:12 PM | 443-474-9764 | | 1 | $ 0.40 | $ - |
| 3/06/07 | Incoming | 6:15 PM | 443-474-9764 | | 2 | $ 0.80 | $ - |
| 3/07/07 | Gathersbg, MD | 10:13 AM | 301-252-6512 | | 1 | $ 0.40 | $ - |
| 3/07/07 | Incoming | 10:26 AM | 301-252-6512 | | 1 | $ 0.40 | $ - |
| 3/07/07 | Incoming | 11:39 AM | 301-252-6512 | | 2 | $ 0.80 | $ - |
| 3/07/07 | Incoming | 11:47 AM | 301-252-6512 | | 1 | $ 0.40 | $ - |
| 3/07/07 | Incoming | 8:20 PM | 919-684-6811 | | 1 | $ 0.40 | $ - |
| 3/07/07 | Alexandria, VA | 9:37 PM | 571-212-3177 | | 5 | $ - | $ - |
| 3/07/07 | Alexandria, VA | 9:44 PM | 571-212-3177 | | 1 | $ - | $ - |
| 3/07/07 | Alexandria, VA | 9:50 PM | 571-212-3177 | | 1 | $ - | $ - |
| 3/07/07 | Incoming | 10:04 PM | 571-212-3177 | | 3 | $ - | $ - |
| 3/07/07 | Incoming | 10:07 PM | 571-212-3177 | | 1 | $ - | $ - |
| 3/07/07 | Incoming | 10:08 PM | 571-212-3177 | | 1 | $ - | $ - |
| 3/07/07 | Alexandria, VA | 10:10 PM | 571-212-3177 | | 1 | $ - | $ - |
| 3/07/07 | Incoming | 10:10 PM | 571-212-3177 | | 2 | $ - | $ - |
| 3/08/07 | Washington, DC | 8:28 AM | 202-538-9454 | | 2 | $ 0.80 | $ - |
| 3/08/07 | Incoming | 5:17 PM | 301-252-6512 | | 2 | $ 0.80 | $ - |
| 3/08/07 | Alexandria, VA | 5:34 PM | 571-212-3177 | | 1 | $ 0.40 | $ - |
| 3/08/07 | Incoming | 5:36 PM | 571-212-3177 | | 4 | $ 1.60 | $ - |
| 3/08/07 | Durham, NC | 5:47 PM | 919-688-1004 | | 1 | $ 0.40 | $ - |
| 3/08/07 | Alexandria, VA | 5:48 PM | 571-212-3177 | | 1 | $ 0.40 | $ - |
| 3/08/07 | Alexandria, VA | 5:50 PM | 571-212-3177 | | 3 | $ 1.20 | $ - |
| 3/08/07 | Alexandria, VA | 6:33 PM | 571-212-3177 | | 1 | $ 0.40 | $ - |

Call Type: (A) WPS Call (U) Other (V) myFaves Call



---

Statement For:   AMER IQBAL
Mobile Number :  (571) 277-6216
Account Number:  407100683

Customer Service Number  1-800-937-8997

Mar 10, 2007

**LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)**

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 3/02/07 | Incoming | 9:22 AM | 301-252-6512 | | 2 | $ - | $ - | $ - |
| 3/02/07 | Washington, DC | 10:51 AM | 202-879-1680 | | 4 | $ - | $ - | $ - |
| 3/02/07 | Washington, DC | 11:35 AM | 202-879-1600 | | 1 | $ - | $ - | $ - |
| 3/02/07 | Gathersbg, MD | 12:20 PM | 301-252-6512 | | 2 | $ - | $ - | $ - |
| 3/02/07 | Washington, DC | 2:12 PM | 202-354-3050 | | 3 | $ - | $ - | $ - |
| 3/02/07 | Washington, DC | 3:07 PM | 202-354-3050 | | 3 | $ - | $ - | $ - |
| 3/02/07 | Washington, DC | 3:24 PM | 202-812-8016 | | 7 | $ - | $ - | $ - |
| 3/02/07 | Alexandria, VA | 3:43 PM | 571-212-3177 | | 2 | $ - | $ - | $ - |
| 3/02/07 | Arlington, VA | 3:53 PM | 703-841-5200 | | 1 | $ - | $ - | $ - |
| 3/02/07 | Washington, DC | 4:45 PM | 202-538-9454 | | 9 | $ - | $ - | $ - |
| 3/02/07 | Incoming | 5:39 PM | 571-212-3177 | | 3 | $ - | $ - | $ - |
| 3/02/07 | Catonsvl, MD | 9:34 PM | 443-474-9764 | | 3 | $ - | $ - | $ - |
| 3/03/07 | Catonsvl, MD | 9:44 AM | 443-474-9764 | | 2 | $ - | $ - | $ - |
| 3/03/07 | Incoming | 10:07 AM | 443-474-9764 | | 23 | $ - | $ - | $ - |
| 3/03/07 | Alexandria, VA | 10:42 AM | 571-212-3177 | | 17 | $ - | $ - | $ - |
| 3/03/07 | Incoming | 11:18 AM | 9252212548 | | 4 | $ - | $ - | $ - |
| 3/03/07 | Alexandria, VA | 11:55 AM | 571-212-3177 | | 2 | $ - | $ - | $ - |
| 3/03/07 | Incoming | 12:21 PM | Blocked NBR | | 43 | $ - | $ - | $ - |
| 3/03/07 | Occoquan, VA | 4:10 PM | 703-296-0275 | | 1 | $ - | $ - | $ - |
| 3/03/07 | Silver Spg, MD | 6:26 PM | 301-495-0010 | | 1 | $ - | $ - | $ - |
| 3/03/07 | Silver Spg, MD | 7:25 PM | 301-495-0010 | | 2 | $ - | $ - | $ - |
| 3/03/07 | Incoming | 9:02 PM | 703-678-7926 | | 4 | $ - | $ - | $ - |
| 3/03/07 | Alexandria, VA | 9:27 PM | 703-678-7926 | | 1 | $ - | $ - | $ - |
| 3/04/07 | Incoming | 9:41 AM | 703-678-7926 | | 1 | $ - | $ - | $ - |
| 3/04/07 | Alexandria, VA | 10:25 AM | 703-928-8953 | | 1 | $ - | $ - | $ - |
| 3/04/07 | Alexandria, VA | 10:27 AM | 571-232-0477 | | 2 | $ - | $ - | $ - |
| 3/04/07 | Fis Church, VA | 12:02 PM | 703-569-7700 | | 2 | $ - | $ - | $ - |
| 3/04/07 | Incoming | 12:10 PM | 703-569-7700 | | 4 | $ - | $ - | $ - |
| 3/04/07 | Fis Church, VA | 12:54 PM | 703-569-7700 | | 7 | $ - | $ - | $ - |
| 3/04/07 | Alexandria, VA | 1:27 PM | 703-678-7926 | | 1 | $ - | $ - | $ - |
| 3/04/07 | Catonsvl, MD | 1:30 PM | 443-474-9764 | | 1 | $ - | $ - | $ - |
| 3/04/07 | Incoming | 2:20 PM | 443-474-9764 | | 18 | $ - | $ - | $ - |
| 3/04/07 | Alexandria, VA | 3:18 PM | 703-928-8953 | | 2 | $ - | $ - | $ - |
| 3/05/07 | Incoming | 9:48 AM | 571-212-3177 (A) | | 4 | $ - | $ - | $ - |
| 3/05/07 | Frederick, MD | 9:56 AM | 301-663-0600 | | 33 | $ - | $ - | $ - |
| 3/05/07 | Gathersbg, MD | 10:33 AM | 301-252-6512 | | 1 | $ - | $ - | $ - |

Call Type: (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

Statement For:    AMER IQBAL
Mobile Number:    (571) 277-6216
Account Number:    407100683

Customer Service Number  1-800-937-8997

Mar 10, 2007

## LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES - (Continued)

| Date | Call Destination | Time | Number Called | Call Type | Minutes | Airtime Charges | Toll Charges | Total |
|---|---|---|---|---|---|---|---|---|
| 3/08/07 | Alexandria, VA | 6:41 PM | 571-212-3177 | | 4 | $ 1.60 | $ - | $ 1.60 |
| 3/09/07 | Gaithersbg, MD | 7:50 AM | 301-252-6512 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 3/09/07 | Incoming | 8:29 AM | 301-252-6512 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 3/09/07 | Gaithersbg, MD | 1:22 PM | 301-252-6512 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 3/09/07 | Gaithersbg, MD | 1:44 PM | 301-252-6512 | | 1 | $ 0.40 | $ - | $ 0.40 |
| 3/09/07 | Gaithersbg, MD | 3:27 PM | 301-252-6512 | | 2 | $ 0.80 | $ - | $ 0.80 |
| 3/09/07 | Gaithersbg, MD | 9:14 PM | 301-252-6512 | | 1 | $ - | $ - | $ - |
| 3/09/07 | Incoming | 9:27 PM | 301-252-6512 | | 10 | $ - | $ - | $ - |
| 3/09/07 | Gaithersbg, MD | 9:38 PM | 301-252-6512 | | 1 | $ - | $ - | $ - |
| 3/09/07 | Incoming | 9:38 PM | 301-252-6512 | | 2 | $ - | $ - | $ - |
| 3/09/07 | Alexandria, VA | 9:43 PM | 703-924-6640 | | 2 | $ - | $ - | $ - |
| 3/09/07 | Fls Church, VA | 9:45 PM | 571-332-5872 | | 1 | $ - | $ - | $ - |
| Included VM Usage | | | | | 27 | $ - | $ - | $ - |
| SUBTOTAL | | | | | 1,349 | $ 21.60 | $ - | $ 21.60 |

## MESSAGING CHARGES

| Date | Service | Time | Destination | Message Type | Messages | Direction | Total |
|---|---|---|---|---|---|---|---|
| 2/18/07 | | 10:01 AM | My Album Picture | | 1 | Outgoing | $ 0.25 |
| SUBTOTAL | | | | | 1 | | $ 0.25 |

| Total of All Usage Charges | $ 21.85 |
|---|---|

Call Type : (A) Call Waiting (B) Call Forward (C) Conference Call (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls
(K) WPS Call (U) Other (V) myFaves Call

# EXHIBIT P

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |  |
|---|---|---|
| **TRICIA ANN RILEY** | : | **Civil Action No.  2007 CA 000113B** |
| Plaintiff | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| **AMER IQBAL** | : | **Judge Lynn Leibovitz** |
| Defendant | : |  |
|  | : |  |

## <u>ORDER</u>

Upon consideration of Plaintiff's Petition for Contempt of Court, filed on

February 27, 2007, it is this _19th___ day of March 2007,

   **ORDERED** that the parties shall appear for a hearing on the Petition on March

29th, 2007, at 3:00 p.m. in Courtroom 312.



**Lynn Leibovitz**
**Associate Judge**
**(signed in chambers)**

cc:

Amer Iqbal
17648 Tedler Circle
Roundhill, VA 20141

Bradford J. Roegge
101 South Washington Street
Rockville, MD 20850

```
***************************
***  ACTIVITY REPORT   ***
***************************
```

| ST. TIME | DESTINATION NUMBER | DESTINATION ID | NO. | MODE | | PGS. | RESULT | |
|---|---|---|---|---|---|---|---|---|
| '03/13 11:53 | 12026860050 | | 0107 | TRANSMIT | ECM | 3 | OK | 00'24 |
| '03/13 15:32 | | | 5027 | AUTO RX | ECM | 2 | OK | 00'51 |
| '03/16 13:35 | 13154374508 | | 0108 | TRANSMIT | | 0 | NG | 00'00 |
| | | | | | | 0 | STOP | |
| '03/16 13:37 | 13154374508 | | 0109 | TRANSMIT | ECM | 12 | OK | 04'14 |
| '03/16 13:47 | | | 5028 | AUTO RX | ECM | 1 | OK | 00'38 |
| '03/16 14:51 | 12026860050 | | 0110 | TRANSMIT | ECM | 2 | OK | 00'39 |
| '03/18 12:01 | 12022721922 | | 0111 | TRANSMIT | | 0 | NG | 00'00 |
| | | | | | | 0 | STOP | |
| '03/18 12:07 | 13012721922 | | 0113 | TRANSMIT | ECM | 6 | OK | 01'24 |
| '03/18 12:08 | 12022727449 | | 0112 | TRANSMIT | | 0 | NG | 00'00 |
| | | | | | | 0 | STOP | |
| '03/18 20:56 | 2 | | 0114 | TRANSMIT | | 0 | NG | 00'00 |
| | | | | | | 0 | STOP | |
| '03/21 10:45 | | | 5029 | AUTO RX | ECM | 8 | OK | 01'38 |
| '03/22 10:09 | 17044276652 | | 0115 | TRANSMIT | ECM | 1 | OK | 00'25 |
| '03/22 10:10 | 17044276652 | | 0116 | TRANSMIT | ECM | 1 | OK | 00'25 |
| '03/22 10:45 | | | 5030 | MANUAL RX | | 0 | NG | 00'44 |
| | | | | | | 0 | #005 | |
| '03/22 15:30 | 13012727449 | | 0117 | TRANSMIT | ECM | 1 | OK | 00'18 |
| '03/22 16:09 | 13012721922 | Transfer of case / docket info | 0118 | TRANSMIT | ECM | 1 | OK | 00'22 |
| '03/22 17:08 | 12027890444 | | 0119 | TRANSMIT | | 0 | NG | 00'00 |
| | | | | | | 0 | #018 | |
| '03/22 17:09 | 12028790444 | | 0120 | TRANSMIT | ECM | 3 | OK | 01'15 |
| '03/23 11:00 | | | 5031 | AUTO RX | ECM | 1 | OK | 00'20 |
| '03/26 14:01 | 12028790444 | | 0121 | TRANSMIT | ECM | 7 | OK | 02'02 |

Notice of Removal
docket info & Notice

faxed to Natalie
Judge Lynn chambers clerk
Leibbitz

𝔖uperior 𝔔ourt of the 𝔇istrict of 𝔔olumbia
𝔚ashington, 𝔇.𝔔. 20001

𝔔hambers of
𝔕obert 𝔖. 𝔗ignor
𝔖enior 𝔍udge

February 26, 2007

Bradford J. Roegge, Esquire

Dear Mr. Roegge,

In response to your telephone message on February 23, 2007, a party may file a motion for contempt specifying the prohibition in the court order alleged to have been violated and detailing the specific conduct alleged to have been in violation.

A transcript of your message is attached hereto.

Henceforth please ensure that all communication relating to substantive matters be submitted in writing.

Sincerely,

Robert S. Tignor, Senior Judge

Copy:

Mr. Amer Iqbal

TRANSCRIPT OF MESSAGE RECEIVED 3:49 PM, FEBRUARY 23, 2007

Hi my name is Brad Roegge. I'm an attorney who represented Tricia Ann Riley in a temporary restraining order matter, on January 18, 2007. The hearing resulted or the meeting resulted in a consent order under which Amer Iqbal would not communicate, directly or indirectly, with Ms. Riley. And there's been some pretty bizarre behavior by him in the last week or so. I think Judge Tignor is aware of the fact that he moved to have this consent order overturned. And my client today just informed me that he applied for a marriage license in DC and she was contacted by the Marriage Bureau. I would like to talk to Judge Tignor's clerk to get an idea about what needs to happen in this case. I mean obviously I think something needs to be done, because this gentleman is certainly indirectly communicating with my client by virtue of all of his bizarre behavior. My number is 301-424-1060. If someone could give me a call when they can I'd appreciate it.

TRANSCRIBED BY ANICA HOBSON, LAW CLERK



UNITED STATES POSTAGE
$ 00.390
07408804  FEB 26 2007
MAILED FROM ZIP CODE 20001

Superior Court of the District of Columbia
Chambers of Senior Judge Robert S. Tignor
Washington, D.C. 20001

Amer Iqbal
17648 Tedler Circle
Roundhill, VA 20141

20141321174  PC004

# EXHIBIT Q

## **Greeting Card and My Email**

Greeting card was mailed after I was told by a doctor friend that Tricia was interested in meeting with me. She had also mentioned that Tricia was interested in doing Nikah with me. The card was mailed in late December. Her one of relative also mentioned about it, how she or Tricia knew is clear from my write up in our three meetings. Her relative also told me that she had waited for me on that weekend and that I was late. She also told me to rent in the same apartments and my answer was –ve. Also she said to get on with her right away and that we are letting you do this, because she is also in love with you. My reason to send her the email was the same, since I was told that she was interested in meeting with me.

These both exhibits should not be a basis for <u>"violation of the court order"</u>, since they both are prior to the TRO hearing.